Jason Ross, OSB No. 231074
jason.ross@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: 202-942-5000

Jami Vibbert (pro hac vice submitted)
jami.vibbert@arnoldporter.com
David B. Schwartz (pro hac vice submitted)
david.schwartz@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel: 212-836-8000

Daniel E. Raymond (pro hac vice submitted)
daniel.raymond@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
300 N. LaSalle Dr.
Suite 3500
Chicago, IL 60654
Tel: 312-583-2379

*Attorneys for Defendant Providence Health & Services*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| DEBRA MCCLELLAN, ELIZABETH JEAN BRADY, REBECCA MAJOR, ANTHONY OMER, LASHANTE TAYLOR, and LISA EBNER, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>PROVIDENCE HEATH & SERVICES,<br><br>*Defendant*. | Case No. 3:26-cv-00540-AR<br><br>**DEFENDANT'S MOTION TO DISMISS COMPLAINT**<br><br>ORAL ARGUMENT REQUESTED |

## LR 7-1 CERTIFICATION

In compliance with L.R. 7-1, counsel for Defendant Providence Health & Services ("Providence") certifies that the parties met and conferred in good faith through a telephone conference but were unable to resolve the disputes at issue in this motion.

## MOTION

Providence respectfully requests the Court dismiss Plaintiffs' Class Action Allegation Complaint ("Complaint") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). This Motion is supported by the following memorandum of points and authorities and the concurrently filed Request for Judicial Notice.

# TABLE OF CONTENTS

Page


INTRODUCTION ........ 1

FACTUAL BACKGROUND ........ 3

LEGAL STANDARD ........ 5

ARGUMENT ........ 5

I. PLAINTIFFS CONSENTED TO THE ALLEGED DATA PRACTICES, WHICH BARS ALL CLAIMS. ........ 5

A. Plaintiffs Agreed to Providence's Privacy Policy and Terms. ........ 6

B. The Privacy Policy Expressly Discloses the Very Data Practices Plaintiffs Challenge. ........ 9

II. PLAINTIFFS' ECPA CLAIM (COUNT I) SHOULD BE DISMISSED. ........ 10

A. Providence Was a Party to the Communications and Is Thus Exempt From Liability. ........ 11

B. The Crime-Tort Exception Does Not Apply Here. ........ 12

*1. Plaintiffs Fail to Plead a Criminal Violation of HIPAA Because They Offer No Plaintiff-Specific Allegations of Disclosure of IIHI.* ........ 13

*2. Plaintiffs Fail to Plead Any Criminal or Tortious Purpose or a Crime or Tort Independent of the Alleged Interception.* ........ 16

C. Plaintiffs Fail to Plausibly Allege any Interception of "Contents" of Electronic Communications ........ 19

III. PLAINTIFFS' COMMON LAW CLAIMS (COUNTS II-IV) SHOULD BE DISMISSED ........ 20

A. Plaintiffs' Breach of Confidence Claim (Count II) Fails ........ 21

B. Plaintiffs' Intrusion Upon Seclusion Claim (Count III) Fails ........ 22

C. Plaintiffs' Unjust Enrichment Claim (Count IV) Fails ........ 23

CONCLUSION ........ 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A. B. v. Or. Clinic*, 321 Or. App. 60 (2022) ....................21

*Adair v. Cigna Corp. Servs., LLC*, No. 26-2384, 2026 WL 295744 (E.D. Pa. Feb. 4, 2026) ....................5

*American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224 (9th Cir. 1988) ....................9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................5, 15

*Atencio v. TuneCore, Inc.*, 843 F. App'x 42 (9th Cir. 2021) ....................9

*B.K. v. Eisenhower Med. Ctr.*, 721 F.Supp.3d 1056 (C.D. Cal. 2024) ....................15, 17, 25

*B.N. v. Or. Reprod. Med., LLC*, No. 3:25-cv-00202-IM, 2025 WL 3165965 (D. Or. Nov. 12, 2025) ....................15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................5, 15

*Cron v. Zimmer*, 255 Or. App. 114 (2013) ....................6, 24

*Cumming v. Nipping*, 310 Or. App. 780 (2021) ....................24, 25

*Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-cv-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ....................18

*Easterbrook v. LinkedIn Corp.*, No. 6:22-cv-01108-MC, 2023 WL 3022497 (D. Or. 2023) ....................24

*Hammerling v. Google LLC*, 615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................23

*Humphers v. First Interstate Bank of Or.*, 298 Or. 706 (1985) .................... *passim*

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................11

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................19, 20

*K.L. v. Legacy Health*,
No. 23-cv-1886, 2024 WL 4794657 (D. Or. Nov. 14, 2024) .................... *passim*

*Karwowski v. Gen Digit., Inc.*,
No. 24-7213, 2025 WL 3002610 (9th Cir. Oct. 27, 2025) ....................11

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ....................17

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ....................6

*Krainski v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*,
616 F.3d 963 (9th Cir. 2010) ....................26

*Larisa's Home Care, LLC v. Nichols-Shields*,
362 Or. 115 (2017)....................24

*Leggett v. First Interstate Bank of Or., N.A.*,
86 Or. App. 523 (1987)....................6

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................23

*M.R. v. Salem Health Hosps. & Clinics*,
No. 6:23-cv-01691-AA, 2024 WL 3970796 (D. Or. Aug. 28, 2024) ....................21, 22, 24

*Martell v. Gen. Motors LLC*,
492 F. Supp. 3d 1131 (D. Or. 2020) ....................24

*Mauri v. Smith*,
324 Or. 476 (1996)....................22

*McAllister Constr. Co. v. Liu*,
343 Or. App. 53 (2025)....................25

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ....................7, 9

*Nichols v. Peacehealth Networks on Demand LLC*,
No. 2:25-cv-01831-JHC, 2026 WL 607763 (W.D. Wash. Mar. 4, 2026) ....................10

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024), No. 2:23-cv-01159-TL, 2025 WL 692097 (W.D. Wash. Mar. 4, 2025) ....................11, 15, 18

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ....................7

*Okash v. Essentia Health*,
No. 23-482, 2024 WL 1285779 (D. Minn. Mar. 26, 2024) ....................18

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ....................16, 17

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ....................23

*Reddy v. Litton Indus., Inc.*,
912 F.2d 291 (9th Cir. 1990) ....................25

*Silver v. Stripe Inc.*,
No. 4:20-cv-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021) ....................7

*Smart v. Main Line Health*,
No. 22-cv-5239, 2024 WL 2943760 (E.D. Pa. June 10, 2024)....................16

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ....................5

*Stevens v. First Interstate Bank of Cal.*,
167 Or. App. 280 (2000)....................6, 21

*Sussman v. Am. Broad. Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999) ....................17, 18

*T.D. v. Piedmont Healthcare, Inc.*,
No. 1:23-cv-05416-TWT, 2024 WL 3972984 (N.D. Ga. Aug. 28, 2024)....................12

*Weston v. Lefiti*,
No. 24-541, 2024 WL 4579237 (9th Cir. Oct. 25, 2024) ....................18

*Winters v. County of Clatsop*,
210 Or. App. 417 (2007)....................24

**Statutes**

18 U.S.C. § 2510(8) ....................19, 20

18 U.S.C. § 2511(1)(a)....................10

18 U.S.C. § 2511(2)(d) ........ *passim*

42 U.S.C. § 1320d–6(a) ........ 14, 18

42 U.S.C. § 1320d–6(a)(3) ........ 13

42 U.S.C. § 1320d(6) ........ 13

ECPA ........ *passim*

HIPAA ........ *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ........ 2, 5, 6

Fed. R. Civ. P. 8(d) ........ 24

## INTRODUCTION

Plaintiffs' 85-page Complaint is a case study in the difference between volume and substance. The Complaint devotes tens of thousands of words to describing how widely used, commercially available website analytics tools ***generally*** operate. It reproduces screenshots of HTTP request headers, JavaScript code, and metadata. And it offers page after page of background on the internet's tracking ecosystem. But for all of that ostensible detail, the Complaint is remarkably thin where it matters most—it fails to allege what actually happened to ***these Plaintiffs*** or what ***these Plaintiffs*** actually did on Providence's publicly accessible website at www.providence.org (the "Website") or the MyChart patient portal (the "Portal"). Not one of the Complaint's "Figures" is alleged to depict the browsing activity of any Plaintiff. Not a single Plaintiff identifies which pages they visited, what data was purportedly intercepted from their sessions, which of the four third-party vendors allegedly received that Plaintiff's data, or when any interception is supposed to have occurred. Instead, each of the six Plaintiffs offers little more than a one-sentence, boilerplate allegation that they "used the Website" and the Portal—five to review health information, and one (Plaintiff Ebner) to do the same, plus message providers, attend virtual visits, and pay bills. Compl. ¶¶ 36–41. Those generic recitals are the sum total of the Plaintiff-specific factual content in the 85-page Complaint.

The Complaint's technical exhibits only underscore the deficiency. The screenshots and network-traffic demonstrations that form the bulk of the Complaint's factual allegations are untethered from any Plaintiff's experience. They presumably depict what Plaintiffs' counsel observed during an independent investigation of the Website and Portal source code—not what any Plaintiff ***actually did*** on the Website or in the Portal. The Complaint's own footnotes confirm this: screenshot after screenshot is described as "taken on the Portal," "taken on the Portal landing page," or "taken after being redirected from the Portal onto the public-facing page of the

Website"—without any allegation that a Plaintiff was the user depicted. *See id.* ¶¶ 186–225 & nn.66–104. As pleaded, this is a case about ***hypothetical*** browsing activity and the ***generic*** capabilities of ubiquitous online tools, not about any actual action of or harm to any Plaintiff. Therefore, the Complaint should be dismissed in its entirety.

*First*, Plaintiffs consented to Providence's data practices as disclosed in Providence's privacy policy, which bars all claims. The Website and Portal are subject to and governed by Providence's Terms of Use ("Terms") and privacy policy ("Privacy Policy"), a fact Plaintiffs acknowledge by quoting and reproducing them in the Complaint. The Privacy Policy expressly discloses the precise data practices they now challenge. Specifically, the Privacy Policy clearly discloses that Providence will use third-party advertising partners to serve interest-based advertisements, including through the use of information collected through cookies. That is a plain-language description of the very conduct Plaintiffs label "surreptitious" and "unauthorized." Plaintiffs allege they had actual knowledge of the Privacy Policy and affirmatively rely on the parties' agreement to the integrated Terms and Privacy Policy to establish this Court's jurisdiction and venue. In addition, Plaintiffs allege they accessed and used the Portal and, to do so, must have checked a box consenting to the Privacy Policy during their account creation.

*Second*, Plaintiffs' wiretap claim (under the Electronic Communications Privacy Act ("ECPA")) fails because Providence is a party to the communications at issue, the exception to this (i.e., the crime-tort exception) does not apply, and Plaintiffs have not alleged that Providence intercepted the "contents" of electronic communications.

*Third*, the state-law claims for breach of confidence, intrusion upon seclusion, and unjust enrichment each fail because Plaintiffs' consent negates any breach of confidence or privacy and the Complaint's conclusory, unattributed allegations cannot satisfy the elements of any claim.

Accordingly, Providence respectfully requests that this Court dismiss the Complaint in its entirety and with prejudice.

## FACTUAL BACKGROUND

Providence is a nonprofit health system operating more than 50 hospitals and 1,000 clinics. Compl. ¶¶ 42–43 & n.1. Providence maintains the publicly facing Website and separately the password-protected Portal. *Id.* ¶¶ 7, 169. The Portal requires login credentials and, once authenticated, allows patients to access test results, communicate with providers, pay bills, and review visit summaries. *Id.* ¶ 170. The Website and Portal are governed by Providence's Terms and Privacy Policy. *See id.* ¶¶ 50–53, 226–29, 244–46. Accessing the Portal requires creating an account, during which each user must click a box confirming that they have "read, understand, and agree to the Privacy Policy and the Terms of Use," where "Privacy Policy" and "Terms of Use" are in blue lettering set against a white background and hyperlinked to the Privacy Policy and Terms. *See* Providence's Request for Judicial Notice ("RJN"), Ex. 2.

The Complaint identifies four third-party vendors whose technologies are allegedly embedded on the Website: (1) Tealium, a San Diego-based tag management platform that helps websites organize and control analytics tools, Compl. ¶¶ 181–85; (2) Amplitude, a San Francisco-based analytics platform offering product analytics and session replay services, *id.* ¶¶ 199–201; (3) Kameleoon, a multinational A/B testing and personalization platform, *id.* ¶¶ 208–11; and (4) Google, whose Google Analytics software is embedded on the Website, *id.* ¶¶ 218–21. None of these vendors is a party to this action.

The Complaint reproduces extensive portions of the Privacy Policy, which, in a section entitled "Third-party advertising partners," discloses that Providence uses "cookies and related technologies" and "third-party service providers to serve interest-based advertisements for Providence products and services across the Internet." *Id.* ¶¶ 227, 244, Fig. 24, Fig. 32. The Privacy

Policy further explains that these service providers "may collect non-identifiable information about your interactions with our Web site through the use of these technologies," "may place or recognize a unique cookie on your computer," and "may record information to these cookies based upon your activities on any of our sites and/or services and on third-party websites." *Id.* ¶ 227, Fig. 24. The Privacy Policy provides an express opt-out mechanism, directing users who "do not wish to have this information used for the purpose of serving you interest-based advertisements" to opt out at thenai.org/opt-out and acknowledging Do Not Track browser signals. *Id.* ¶ 227, Fig. 24. No Plaintiff alleges that they opted out or used any browser-based tool to limit tracking. *See generally id.* ¶¶ 226–55.

The Complaint names six Plaintiffs, each of whom alleges only vague boilerplate assertions about their use of Providence's web platforms that amount to nothing more than they "used [or visited the] Website . . . to [re]view [their] private health information, including in the MyChart portal." *Id.* ¶¶ 37 (Omer), 38 (Brady), 39 (Taylor), 40 (Major); *see also id.* ¶¶ 36 (McClellan "used the Website, including the MyChart portal, to review her private health information related to her treatment and payment for it"), 41 (Ebner "used the Website and MyChart portal to review her private health information, message care providers, attend virtual office visits, and pay her bills"). Plaintiffs, as alleged users of the Portal, had to agree that they read, understood, and accepted the Privacy Policy when they created their accounts. *See* RJN, Ex. 2. Not a single Plaintiff identifies which specific pages they visited, what specific data was intercepted from their sessions, which of the four third-party vendors received that Plaintiff's data, when the alleged interceptions occurred, or what concrete, particularized injury they suffered. The Complaint's technical screenshots and network-traffic demonstrations—which form the bulk of the factual allegations—are not tied to

any Plaintiff's browsing activity and reflect Plaintiffs' counsel's independent investigation of the Website's and Portal's source code. *See* Compl. ¶¶ 186–225, Figs. 5–22.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. The Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," nor "unwarranted deductions of fact." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988, 990 (9th Cir. 2001) (internal citations omitted).

## ARGUMENT

### I. PLAINTIFFS CONSENTED TO THE ALLEGED DATA PRACTICES, WHICH BARS ALL CLAIMS.

Plaintiffs' claims are foreclosed by their consent to the use of tracking technologies and cookies expressly disclosed in the Privacy Policy. ECPA exempts from liability any interception where "one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d). This includes consent based upon a defendant's website privacy policy, as applicable here. *See* *Adair v. Cigna Corp. Servs., LLC*, No. 26-2384, 2026 WL 295744, at *17 (E.D. Pa. Feb. 4, 2026) ("Plaintiffs agreed to Defendants' Privacy Notice in addition to their Terms of Use, thereby giving Defendants permission to use the third-party tracking technologies . . . [T]his consent is dispositive of Plaintiffs' ECPA . . . and invasion of privacy claims."). Plaintiffs' consent to Providence's disclosed data practices is equally fatal to their remaining state common

law claims for breach of confidence (Count II), intrusion upon seclusion (Count III), and unjust enrichment (Count IV).[1]

### A. Plaintiffs Agreed to Providence's Privacy Policy and Terms.

Plaintiffs' allegations demonstrate that they consented to Providence's Terms and Privacy Policy. Plaintiffs' Complaint extensively cites, quotes, and relies upon Providence's Terms and Privacy Policy. *See* Compl. ¶¶ 50–53, 226–29, 244–46. The Terms and the Privacy Policy are not two separate documents. They are published together on the same webpage, at the same URL, under the unified heading "Terms of Use & Privacy Policy." *Id.* ¶ 233; *see also id.* ¶¶ 50 & n.9, 51 & n.10, 226–28 & nn.105–07, 244 & nn.115–16 (citing the identical URL—https://www.providence.org/utility-pages/privacy-policy—for both the Terms provisions and the Privacy Policy provisions); *see* RJN, Ex. 1.[2]

---

[1] For breach of confidence, the Oregon Supreme Court, in first recognizing the tort, framed it as the "*unauthorized* and unprivileged disclosure of confidential information obtained in a confidential relationship." *Humphers v. First Interstate Bank of Or.*, 298 Or. 706, 717, (1985) (emphasis added). Oregon appellate courts have likewise held that the "gravamen" of the tort is the "the *affirmative disclosure* of information by a person to whom the confidential information has been *entrusted*." *Stevens v. First Interstate Bank of Cal.*, 167 Or. App. 280, 286 (2000) (second emphasis added). Plaintiffs' consent authorized the disclosures that underlie their claim, and information shared with consent to disclose it to third parties is not "entrusted" within the meaning of the tort.

For intrusion upon seclusion, under Oregon law, "*lack* of consent is an element of the tort, and there is no actionable invasion of privacy if the plaintiff has consented, the consent has not been revoked, and the defendant has acted within the scope of the consent." *Leggett v. First Interstate Bank of Or., N.A.*, 86 Or. App. 523, 528 (1987).

Unjust enrichment under Oregon law requires: "(1) a benefit conferred, (2) awareness by the recipient that she has received the benefit, and (3) it would be unjust to allow the recipient to retain the benefit without requiring her to pay for it." *Cron v. Zimmer*, 255 Or. App. 114, 130 (2013). Where, as here, plaintiffs knowingly convey information to a defendant under terms disclosed by the defendant and consented to by plaintiffs, retention is not "unjust"—it is exactly what the parties agreed to.

[2] Because Plaintiffs' claims are "necessarily" founded upon these documents, the Terms and Privacy Policy are incorporated by reference into the Complaint and may be considered on a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

The Ninth Circuit has held that the enforceability of an online agreement depends on whether the website provides "reasonably conspicuous notice" of its terms and whether the user takes some action that constitutes "an unambiguous manifestation of assent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 514 (9th Cir. 2023); *see* *Silver v. Stripe Inc.*, No. 4:20-cv-08196-YGR, 2021 WL 3191752, at *3 (N.D. Cal. July 28, 2021) (same standard to find agreement to privacy policy). Where the user has *actual knowledge* of the terms, rather than merely constructive notice, continuing to use the service can constitute a manifestation of assent. *See* *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (distinguishing between cases where users had "actual notice of the agreement" and those involving mere constructive notice).

Here, Plaintiffs agreed to be bound by the Terms and Privacy Policy. Plaintiffs allege they accessed and used the Portal and, to do so, all must have checked a box acknowledging that they "read, understand, and agree to the Privacy Policy and the Terms of Use," where "Privacy Policy" and "Terms of Use" are in blue lettering set against a white background and hyperlinked to the Privacy Policy and Terms. *See* RJN, Ex. 2. They thus received reasonably conspicuous notice of the Terms and Privacy Policy and, by clicking the box, unambiguously consented to them. *See* *Oberstein*, 60 F.4th at 515–16 (finding enforceable agreement from user clicking "confirmation button" on sign in page with language directly above stating: "[b]y continuing past this page, you agree to the Terms of Use," where "Terms of Use" appeared in blue text and linked to terms); *Silver*, 2021 WL 3191752, at *3 (same where "hyperlink to the privacy policy is displayed in a bright green font against a white background . . . located close to the 'place order' button").

---

Accordingly, the Court can and should consider the Terms and Privacy Policy in full—including their express disclosures of the very third party tracking practices at issue in the Complaint—in evaluating this motion. *See* RJN at 1-2.

Confirming this reality, the Complaint affirmatively ***invokes*** the Terms and Privacy Policy. Specifically, Plaintiffs rely on the Terms' forum-selection clause to establish that "[j]urisdiction and venue for any dispute arising from or pertaining to these Terms of Use shall be in … the U.S. District Court for the District of Oregon." Compl. ¶ 51. Plaintiffs likewise rely on the Terms' choice-of-law provision to establish that "state law issues shall be exclusively interpreted according to the laws of the State of Oregon." *Id.* And Plaintiffs quote extensively from the Privacy Policy's substantive disclosure provisions, reproducing block quotations from its "Use and disclosure of personal information" and "Third-party advertising partners" sections. *Id.* ¶¶ 226–28, 244. By invoking the Terms and Privacy Policy for jurisdiction and venue and quoting these documents extensively, Plaintiffs acknowledge they agreed to the terms of the Terms and Privacy Policy. Having alleged that the Terms and Privacy Policy are binding for purposes of forum and choice of law, Plaintiffs have admitted that they are bound by the entirety of the agreements.

Critically, despite complaints that links to the Terms and Privacy Policy are purportedly "buried in the footer" of the homepage, *see id.* ¶ 233, Plaintiffs allege that they had ***actual knowledge*** of the Privacy Policy. Plaintiffs make conclusory allegations that general statements in the Privacy Policy about Providence's commitments to privacy are somehow contradictory to specific, actual disclosures of the practices at issue here. *See, e.g.*, *id.* ¶¶ 228–29. In doing so, Plaintiffs admit that they had actual knowledge of the Privacy Policy. *See id.* ¶ 229 (alleging that certain "representations [in the Privacy Policy] ***led patients like Plaintiffs*** to reasonably believe that Defendant does not share or disclose sensitive health-related information or Website Communications to third parties without *express* authorization) (first emphasis added)). Because Plaintiffs had actual knowledge of the Privacy Policy, the Court can and should determine that

their continued use of the Website and Portal constituted constructive consent to the data privacy practices described therein. *See* Nguyen, 763 F.3d at 1176.

Simply put, by invoking the Terms and Privacy Policy in the Complaint, Plaintiffs have admitted their consent to the data practices disclosed therein. *See, e.g.*, *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them."); *Atencio v. TuneCore, Inc.*, 843 F. App'x 42, 44 (9th Cir. 2021) (same).

### B. The Privacy Policy Expressly Discloses the Very Data Practices Plaintiffs Challenge.

The very conduct that Plaintiffs characterize as "surreptitious" and "unauthorized" is, in fact, expressly disclosed in plain terms on the face of the Privacy Policy. In a section titled "Third-party advertising partners," the Privacy Policy states:

> In addition to using cookies and related technologies as described above, **we use third-party service providers to serve interest-based advertisements for Providence products and services across the Internet**. These service providers may collect non-identifiable information about your interactions with our Web site through the use of these technologies. **In the course of serving these advertisements, these third party companies may place or recognize a unique cookie on your computer, and may record information to these cookies based upon your activities on any of our sites and/or services and on third-party websites**.

Compl. ¶ 227, Fig. 24 (emphasis added). This disclosure appears on the very page of the Privacy Policy that Plaintiffs themselves quote in their Complaint. *Id.* ¶¶ 227–28, 244.

The Privacy Policy's disclosures track the conduct alleged in the Complaint: (1) the collection of "information about your interactions with our Web site" through "the use of these technologies"; (2) the placement of "a unique cookie on your computer" by "third party companies"; and (3) the recording of "information to these cookies based upon your activities on any of our sites and/or services and on third-party websites." *Id.* That is precisely what Plaintiffs

allege the "Tracking Technologies" do. *See id.* ¶¶ 9–12, 180–81, 199, 208, 218. The Privacy Policy also expressly provides users with the ability to opt out of interest-based advertising, directing them to visit "thenai.org/opt-out." *Id.* ¶ 227, Fig. 24. No Plaintiff alleges they exercised that opt-out mechanism—or even that they attempted to do so. *See generally* Compl. This further confirms that Providence's data practices were neither concealed nor unconsented to.

In sum, the Complaint establishes that Providence publicly disclosed—in the very Privacy Policy that Plaintiffs quote and rely upon—the collection of website-interaction data through third party tracking technologies and cookies. Plaintiffs allege they accessed and used the Portal and, to do so, must have consented to the Privacy Policy during their account creation; Plaintiffs expressly invoke that Policy in the Complaint; and no Plaintiff alleges having opted out. Plaintiffs' consent to the Privacy Policy is fatal to every claim in this action. Counts I through IV should be dismissed with prejudice as a result.

## II. PLAINTIFFS' ECPA CLAIM (COUNT I) SHOULD BE DISMISSED.

ECPA provides liability against any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). To state a claim under the relevant provisions of ECPA, Plaintiffs must plausibly allege facts showing Providence: "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *Nichols v. Peacehealth Networks on Demand LLC*, No. 2:25-cv-01831-JHC, 2026 WL 607763, at *2 (W.D. Wash. Mar. 4, 2026) (quotation marks omitted). ECPA expressly exempts "a party to the communication" from liability. 18 U.S.C. § 2511(2)(d).

Here, Plaintiffs' ECPA claim should be dismissed with prejudice because (A) Providence is exempt from liability as a party to the communications, (B) the crime-tort exception does not

apply to these allegations, and (C) Plaintiffs do not plausibly allege Providence intercepted the "contents" of any of Plaintiffs' electronic communications.

### A. **Providence Was a Party to the Communications and Is Thus Exempt From Liability.**

Providence cannot, as a matter of law, be liable under ECPA for "intercepting" Plaintiffs' communications on the Website or Portal because Providence was an intended recipient and, therefore, a party to any such communications. That is, Plaintiffs' communications with the Website and Portal were communications with Providence. Plaintiffs' allegations are in accord. The Complaint defines the purportedly intercepted data as "Website Communications"—i.e., Plaintiffs' "keystrokes (text entered into a search box or information box), web addresses (i.e., 'URLs') of individual pages visited, mouse movements, clicks, and/or other electronic communications" transmitted while interacting with the Website and Portal. Compl. ¶ 10. These are communications between Plaintiffs and Providence.

ECPA exempts "a party to the communication" from liability. 18 U.S.C. § 2511(2)(d); *see In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014) ("[T]he consent of one party is a complete defense to a[n] [ECPA] claim."). Courts in this Circuit and across the country have consistently held that a website operator, like Providence, is a "party" to the electronic communications that users transmit to its website. *See, e.g.*, *Karwowski v. Gen Digit., Inc.*, No. 24-7213, 2025 WL 3002610, at *1-2 (9th Cir. Oct. 27, 2025) (affirming dismissal of ECPA claim based upon defendant's status as a party to the communications); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1094–96 (W.D. Wash. 2024) (dismissing ECPA claim and holding "[t]o the extent that Plaintiff alleges that Defendant surreptitiously recorded its own communications with Plaintiff, the Court finds that the one-party consent exemption applies."), *on motion to dismiss second amended complaint*, No. 2:23-cv-01159-TL, 2025 WL 692097, at *12–

13 (W.D. Wash. Mar. 4, 2025) (dismissing ECPA claim with prejudice); *T.D. v. Piedmont Healthcare, Inc.*, No. 1:23-cv-05416-TWT, 2024 WL 3972984, at *4 (N.D. Ga. Aug. 28, 2024) (collecting cases and holding that "the weight of persuasive authority in similar pixel tracking cases supports" position that defendant "could not have intercepted the same transmission it received on its website"). Since Providence is a "party to the communication," 18 U.S.C. § 2511(2)(d), Plaintiffs' ECPA claim should be dismissed with prejudice.

**B. The Crime-Tort Exception Does Not Apply Here.**

Anticipating the party exemption, Plaintiffs seek to avail themselves of the "crime-tort exception," which provides that a party to the communication can still be liable if the communication is intercepted "for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). Plaintiffs conclude that the party exception is "invalid" because Providence allegedly "committed a federal crime of 'knowingly' disclosing 'individually identifiable health information' to third parties" and "committed torts" like "intrusion upon seclusion." Compl. ¶¶ 301-02.

As discussed below, the criminal provision in the Health Insurance Portability and Accountability Act of 1996, as amended, ("HIPAA"), cannot serve as the predicate "crime" because the Complaint does not plausibly allege disclosure of individually identifiable health information ("IIHI").[3] In any event, Plaintiffs must show that Providence had a criminal or tortious *purpose* at the time of interception and that the intended crime or tort is *independent* of the act of interception itself—but Plaintiffs do neither.

[3] Plaintiffs' common law claims cannot serve as predicate torts because consent bars their claims (*see* Section I) and because they fail to adequately allege the requisite elements (*see* Section III).

### 1. *Plaintiffs Fail to Plead a Criminal Violation of HIPAA Because They Offer No Plaintiff-Specific Allegations of Disclosure of IIHI.*

Plaintiffs attempt to plead the crime-tort exception based on their bare assertion that Providence violated 42 U.S.C. § 1320d–6(a)(3), which imposes a criminal penalty for knowingly disclosing IIHI. Compl. ¶ 301. HIPAA defines IIHI as a subset of "health information" that either "identifies the individual" or "with respect to which there is a reasonable basis to believe the information can be used to identify the individual." 42 U.S.C. § 1320d(6). Both the elements that it is "health information" and that it is "individually identifiable" are necessary. That is, the information must (i) relate to an individual's health condition, provision of care, or payment for care (health information), *and* (ii) identify, or be reasonably usable to identify, the specific individual (individually identifiable information). *Id.* The Complaint's allegations fail to satisfy this standard as to any Plaintiff, whether the data allegedly intercepted originates from Providence's public-facing Website, from the authenticated Portal, or from public-facing pages to which Portal users were redirected.

The totality of the Complaint's Plaintiff-specific allegations are as follows. Plaintiff McClellan "used the Website, including the MyChart portal, to review her private health information related to her treatment and payment for it." Compl. ¶ 36. Omer, Brady, Taylor, and Major all "used [or visited the] Website . . . to [re]view [their] private health information, including in the MyChart portal." *Id.* ¶¶ 37–40. And Ebner "used the Website and MyChart portal to review her private health information, message care providers, attend virtual office visits, and pay her bills." *Id.* ¶ 41. That is it. The Complaint's narrative sections (¶¶ 167–225) describe what "a patient" or "the patient" may experience—never what any Plaintiff actually experienced.

Critically, the Complaint's screenshot "Figures" do not bridge this gap. Alongside these generic Plaintiff allegations, the Complaint presents screenshots depicting network traffic, tracking

requests, and website content. The Complaint's Figures depict data collected from three distinct sources: (a) Providence's public-facing Website, (b) the authenticated Portal, and (c) certain public-facing pages to which Portal users were allegedly redirected. Regardless of the source, every Figure suffers the same dispositive deficiency: ***not a single one is attributed to any Plaintiff***. By the Figures' own footnotes, they depict counsel's independent investigation of Providence's source code, or the conduct of an unnamed "patient," or anonymous tracking activity on Providence's public-facing pages and on third party domains reached by redirect—never reflecting or matching an act taken by any of the six Plaintiffs in this case. *See* Compl. ¶¶ 186–225 & nn.65–104. The Figures show, at most, what ***could*** happen during a hypothetical browsing session—not what ***did*** happen during any Plaintiff's session. That defect is dispositive.

Indeed, no Plaintiff alleges undertaking ***any*** activity depicted in any of the Complaint's screenshot Figures. No Plaintiff alleges they searched for a particular medical condition, reviewed a specific lab result, looked up a prescription, clicked a "Learn More" link, were redirected to a public-facing page, viewed allergy information, searched for a pharmacy, or undertook any other specific activity on the Website or Portal shown in the Complaint's Figures. No Plaintiff identifies what health condition, diagnosis, or treatment information was displayed during any Website or Portal session. And no Plaintiff alleges what specific data—if any—was transmitted to any third party vendor as a result of their use of the Website or Portal.

This is not a pleading technicality. The HIPAA criminal statute requires that an individual's IIHI be disclosed for liability to attach. *See* 42 U.S.C. § 1320d–6(a). To state a claim based on that statute, Plaintiffs must allege facts plausibly showing that ***their*** IIHI was among the data allegedly transmitted to third parties. Generic allegations that each Plaintiff "used" the Website or Portal, coupled with hypothetical browsing sessions untethered to any Plaintiffs' activity, do not satisfy

this requirement. The leap from "I used the Portal" to "my individually identifiable health information was disclosed to a third party vendor" requires factual allegations nowhere to be found in the Complaint. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 570 (requiring "enough facts to state a claim to relief that is plausible on its face").

This Court, addressing analogous pixel-tracking claims, has required Plaintiffs to plead a connection between their actual activity and the data allegedly disclosed—generic or hypothetical allegations of what tracking tools are capable of disclosing, like those pled here, are insufficient to withstand a motion to dismiss. *See*, *B.N. v. Or. Reprod. Med., LLC*, No. 3:25-cv-00202-IM, 2025 WL 3165965, at *6 (D. Or. Nov. 12, 2025) ("Because the Complaint does not supply facts that connect any disclosure of PHI shared with ORM's Website to LinkedIn, Plaintiff's ECPA claim cannot survive a motion to dismiss."); *cf. K.L. v. Legacy Health*, No. 23-cv-1886, 2024 WL 4794657, at *4–5 (D. Or. Nov. 14, 2024) (granting motion to dismiss for public website activity and denying as to patient portal activity where "Plaintiff provides in her complaint a screenshot of Google Analytics running on *her* Patient Portal (as opposed to the page of a hypothetical patient) and states with particularity that she received advertisements about the same medical conditions that were the subject of her activities on her portal"). Other federal district courts in this Circuit and across the country have reached the same conclusion. *See, e.g.*, *Nienaber*, 733 F. Supp. 3d at 1083–84 ("Plaintiff provides no additional factual information tying her actual activities to the allegations made by the hypothetical purportedly demonstrating disclosure of Private Information . . . Plaintiff's two sentences of specific allegations coupled with the hypotheticals offered is simply not enough."); *B.K. v. Eisenhower Med. Ctr.*, 721 F.Supp.3d 1056, 1064 (C.D. Cal. 2024) ("Plaintiffs' Complaint is 90 pages long but includes less than four pages of vague allegations

about Plaintiffs and their experiences with Defendant. The Complaint is replete with conjectures and hypothetical scenarios and patients. Plaintiffs fail to allege any specificity as to what medical information was allegedly disclosed or when it was disclosed."); *Smart v. Main Line Health*, No. 22-cv-5239, 2024 WL 2943760, at *3 (E.D. Pa. June 10, 2024) ("[A]lthough the Amended Complaint provides an example of a search by a *hypothetical visitor* to the Main Line Health webpage, Plaintiff fails to state what specific HIPPA-protected information Plaintiff *himself* provided to Defendant via his browsing activity that was subsequently disclosed to Meta. Without such factual allegations, the Amended Complaint consists of nothing more than bare-bone conclusions which are insufficient to withstand dismissal." (internal record citation omitted)). Plaintiffs here have provided no such connection. That gap cannot be bridged by conclusory assertions or unattributed screenshots depicting the generic capabilities of online tracking tools.[4]

*2. Plaintiffs Fail to Plead Any Criminal or Tortious Purpose or a Crime or Tort Independent of the Alleged Interception.*

To avail themselves of the crime-tort exception, Plaintiffs must plead facts that Providence intercepted communications "for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). This statutory text actually creates two independent pleading requirements.

*First,* Plaintiffs must show that the alleged offender had a criminal or tortious purpose at the time of interception. The Ninth Circuit has expressly clarified, on multiple occasions, that "[t]he focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious." *Planned Parenthood*

[4] Even if there were sufficient Plaintiff-specific allegations (and there are not), instead of pleading that Providence violated HIPAA, Plaintiffs actually plead the opposite. Specifically, they allege that the third-party tracking technology providers comply with HIPAA. For example, they allege that that "Tealium's webpage titled 'Tealium for Healthcare,' . . . details [Tealium's] HIPAA compliance." Compl. ¶ 184. Similarly they allege that Kameleoon has a "webpage dedicated to 'HIPAA-compliant' personalization tools, titled 'Kameleoon for Healthcare.'" *Id.* ¶ 210.

*Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) (quoting *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999). Merely intending to record Plaintiffs' communications is not enough. If, at the moment the interception occurs, the offender does not intend to use the intercepted communications for a ***different*** criminal or tortious purpose, there is no violation of the crime-tort exception. *See* B.K., 721 F. Supp. 3d at 1065–66 (dismissing ECPA claim because the purpose alleged—commercial advantage—was not "independently illegal or actionable conduct").

Here, Plaintiffs do not allege that Providence intended to commit any crime or tort at the time of the alleged interception. Like a snake eating its tail, Plaintiffs allege in circular and conclusory fashion that "Tracking Technologies load immediately on both public-facing pages of Defendant's Website and within the purportedly secure MyChart portal for the purpose of covertly tracking, intercepting, and recording patients' communications with Defendant." Compl. ¶ 10. That allegation runs headlong into binding Ninth Circuit precedent instructing that "the criminal or tortious purpose must be separate and independent from the" interception itself. *Newman*, 51 F.4th at 1136 ("This criminal or tortious purpose must be separate and independent from the act of recording."). Elsewhere, Plaintiffs vaguely allege that Providence "use[s] these Website Communications for purposes that benefit and enrich" it. Compl. ¶ 11. To the extent this can be construed as alleging a profit motive, that too is insufficient: courts have regularly and repeatedly found the crime-tort exception inapplicable based on this allegation. *See, e.g.*, *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (dismissing ECPA claim because defendant's desire to "make money" is not a tortious or criminal intent).

*Second*, Plaintiffs must plead that the intended crime or tort is ***independent*** of the act of interception itself. That is, the "criminal or tortious acts contemplated by § 2511(2)(d) are acts

secondary to the acquisition of the communication involving tortious or criminal use of the interception's fruits." *Nienaber.*, 733 F. Supp. 3d at 1095–96 (quotation marks omitted); *see also id.* at 1096 (holding that crime-tort exception does not apply because "Plaintiff fails to plead a tortious or criminal use of the acquired communications, separate from the recording, interception, or transmission"); *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-cv-02865-EMC, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (dismissing ECPA claim because "the act of interception itself cannot be the crime or the tort"). In other words, an ECPA plaintiff must "adequately allege that the interception was done 'for the purpose of facilitating some further impropriety, such as blackmail.'" *Weston v. Lefiti*, No. 24-541, 2024 WL 4579237, at *2 (9th Cir. Oct. 25, 2024) (quoting *Sussman*, 186 F.3d at 1202).

Here, Plaintiffs fail to allege any independent criminal or tortious conduct. The Complaint impermissibly collapses the alleged interception and the supposed predicate offense into the same act. Specifically, Plaintiffs allege that the crime-tort exception applies because Providence committed the federal crime of "knowingly" disclosing IIHI to third parties in violation of 42 U.S.C. § 1320d–6(a) and committed the tort of intrusion upon seclusion. Compl. ¶¶ 301–02. But these allegations describe only the ***simultaneous*** interception and disclosure of Plaintiffs' information—they are one and the same act as the alleged interception. Plaintiffs allege that the "Tracking Technologies" intercepted their "Website Communications" and transmitted them "in real time, simultaneously with their transmission to Defendant." *Id.* ¶ 300. Plaintiffs' allegations that Providence violated the law encompass only the simultaneous interception and disclosure of information to third parties. *See id.* ¶¶ 299–300. The fatal flaw in Plaintiffs' allegations is that the alleged acts of "disclosure" and "interception" are one and the same. *See, e.g.*, *Okash v. Essentia Health*, No. 23-482, 2024 WL 1285779, at *4–5 (D. Minn. Mar. 26, 2024) (dismissing ECPA

claim because allegations that defendant "violated HIPAA and privacy torts encompass only the simultaneous interception and disclosure of information to Meta"). Based on Plaintiffs' own allegations, the crime-tort exception is not applicable.

### C. Plaintiffs Fail to Plausibly Allege any Interception of "Contents" of Electronic Communications.

Even if the Court were to find that the Complaint adequately alleges an "interception" and an "electronic communication," Plaintiffs' ECPA claim still fails for an independent and dispositive reason: the Complaint does not plausibly allege the interception of any "contents" of a communication. The ECPA prohibits only the interception of "contents"—defined as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8).

The Ninth Circuit has drawn a clear line between "content," which concerns the substance of what is being communicated, and "record information," which concerns the existence, timing, or routing of the communication. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (holding "that under ECPA, the term 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication"). This distinction is dispositive here.

The Complaint and the Figures reveal the data the online tools allegedly collected: URLs of visited pages, IP addresses, device and session identifiers, cookies, geographic coordinates derived from IP geolocation, HTTP request and response headers, and similar metadata. Compl. ¶¶ 10, 186–225, Figs. 5–22. Every one of these data points is "record information" that identifies the ***fact*** that a communication occurred and the ***address*** to which it was directed—not the

"substance, purport, or meaning" of the communication itself. *In re Zynga Priv. Litig.*, 750 F.3d at 1106.

More importantly, even if any of the data alleged in the Complaint and its Figures amounted to the "contents" of communications (it does not), none of this "content" is actually tied to any specific Plaintiff's experience. To the contrary, the Complaint's allegations and Figures are all taken from and relate to anonymous, generic browsing sessions on Providence's public-facing Website, the authenticated Portal, or public-facing pages to which Portal users were redirected. Not a single screenshot is attributed to any Plaintiff's account or web session. *See* Section II.B.1 *supra*.

Because the Complaint does not, and cannot, allege that the online tools allegedly employed by Providence intercepted the ***contents*** of any communication, Plaintiffs' ECPA claim fails as a matter of law. 18 U.S.C. § 2510(8).

## III. PLAINTIFFS' COMMON LAW CLAIMS (COUNTS II-IV) SHOULD BE DISMISSED.

Each of Plaintiffs' derivative common law[5] claims merely repackages the same insufficient allegations and the same alleged wrong as their ECPA claim under a different (tort) label. Plaintiffs' common law claims fail as a matter of law because they consented to the very data

[5] Plaintiffs plead each of their state common law claims under Oregon law. *See* Compl. ¶¶ 307–08, 312 (citing Oregon statutes and Oregon Supreme Court authority for breach of confidence), 317 (invoking the Oregon formulation of intrusion upon seclusion), 329 (citing the Oregon standard for unjust enrichment); *id.* at Request for Relief ¶ B (seeking a finding that Providence's conduct violates "Oregon Common Law"). The Terms, which Plaintiffs invoke as the basis for jurisdiction and venue in this District, independently require the same result: "state law issues shall be exclusively interpreted according to the laws of the State of Oregon, without regard to choice of law principles." *Id.* ¶ 51. Providence accordingly applies Oregon law to the common law claims throughout this motion.

practices they now challenge, as explained in Section I, and for the independent reasons set forth below.

A. **Plaintiffs' Breach of Confidence Claim (Count II) Fails.**

To state a claim for breach of confidence under Oregon law, a plaintiff must allege an "unauthorized and unprivileged disclosure of confidential information obtained in a confidential relationship." *Humphers*, 298 Or. at 717. Such a duty, however, "is not determined by 'custom or reasonable expectations'; rather, the 'contours of the asserted duty of confidentiality are determined by a legal source external to the tort claim itself,' and a plaintiff asserting such a duty 'must identify its source and terms.'" *A. B. v. Or. Clinic*, 321 Or. App. 60, 70 (2022) (quoting *Humphers*, 298 Or. at 718-19). The "gravamen" of the tort is "the *affirmative disclosure* of information by a person to whom the confidential information has been entrusted." *Stevens*, 167 Or. App. at 286.

Count II fails for at least two independent reasons. *First*, for a breach of confidence claim to survive a motion to dismiss, this Court has required Plaintiff-specific allegations that their personal health information was disclosed. *See* *K.L.*, 2024 WL 4794657, at *4–5, *n.10 (allowing breach of confidence claim to proceed where the plaintiff provided evidence of Google Analytics on her own private patient portal, identified her specific protected health information available to Google as a result, and alleged that portal and public website data "combined" to produce targeted advertising); *M.R. v. Salem Health Hosps. & Clinics*, No. 6:23-cv-01691-AA, 2024 WL 3970796, at *4 (D. Or. Aug. 28, 2024) (allowing breach of confidence claim to proceed where plaintiff identified six specific categories of PHI disclosed and provided images showing "the user's status as a patient and that the patient is seeking financial assistance" was disclosed). As discussed in Section II, the Complaint does not identify any confidential health information belonging to any

Plaintiff that was disclosed to the third-party vendors. *Second*, even if there were a disclosure, Plaintiffs consented to the disclosure for the reasons set forth in Section I. The tort only extends to "unauthorized" disclosures, and thus, Plaintiffs' breach of confidence claim fails as a matter of law. *Humphers*, 298 Or. at 717.

B. **Plaintiffs' Intrusion Upon Seclusion Claim (Count III) Fails.**

Under Oregon law, intrusion upon seclusion requires "(1) an intentional intrusion, physical or otherwise, (2) upon the plaintiff's solitude or seclusion or private affairs or concerns, (3) which would be highly offensive to a reasonable person." *Mauri v. Smith*, 324 Or. 476, 483 (1996). The claim protects against offensive prying, not downstream disclosures. *Humphers*, 298 Or. at 711, 717. Count III fails on each element.

*First*, Providence did not "intrude" upon Plaintiffs. In *K.L. v. Legacy Health*, this Court applied *Humphers* and dismissed the intrusion upon seclusion claim, holding that where a healthcare provider is "a party to Plaintiff's confidential data and its custodian, not an unknown accessor or pilferer of data," the claim "comport[s] with a theory of breach of confidentiality . . . not intrusion upon seclusion." 2024 WL 4794657, at *7.[6] The same analysis applies here: Plaintiffs voluntarily entrusted their information to Providence—Providence did not pry into any private domain to obtain it. Compl. ¶¶ 36–41. And Providence's Privacy Policy disclosed its tracking practices and offered an opt-out mechanism; no Plaintiff alleges unawareness or attempted opt-out. *Id.* ¶¶ 227, 244. An operator who discloses its practices cannot "desire[] to cause an unauthorized intrusion." *Mauri*, 324 Or. at 484.

[6] The court expressly declined to follow *M.R. v. Salem Health Hospitals & Clinics*, noting it "[did] not find the analysis in *M.R.* to be persuasive in analyzing this claim because *M.R.* did not address *Humphers* in reaching its conclusion." *Id.* at *7 n. 12.

*Second*, no intrusion into a private matter is alleged as to any Plaintiff. Indeed, the Complaint's own allegations establish that much of the activity occurs on publicly accessible pages—the "Learn More" redirects, Compl. ¶¶ 172–75, 222–23, the "Find Help" tool, *id.* ¶ 176, and the urgent care locator *id.* ¶¶ 178–79. Activity on unauthenticated, public pages is not a private affair. *K.L.*, 2024 WL 4794657, at *4. And as for the Portal, the tracking described in the Complaint is generic, without ties to any particular Plaintiff, as explained in Section I. *See*, Compl. ¶¶ 186–225.

*Third*, the alleged conduct is not "highly offensive." Rather, deploying analytics tools is standard commercial practice. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (collecting browser history and personal data is not "highly offensive" but instead "routine commercial behavior"); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (disclosure of unique user ID and browsing data was not highly offensive). That Providence operates a healthcare Website and Portal does not transform routine commercial behavior into "highly offensive" conduct, particularly where no identifiable health information about any Plaintiff was alleged to have been collected. *Cf.* *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 891–94 (C.D. Cal. 2024) (finding disclosure of protected health information highly offensive where it involved medication and treatment related to specific health conditions). Further, a reasonable person who uses a website that discloses its data practices cannot claim those practices are "highly offensive." To the contrary, by agreeing to the Privacy Policy, Plaintiffs waived the right to claim that such disclosed practices, which they do not allege to have opted out of, were highly offensive.

### C. Plaintiffs' Unjust Enrichment Claim (Count IV) Fails.

To prevail on an unjust enrichment claim, a plaintiff "must establish that (1) the plaintiff conferred a benefit on the defendant; (2) the defendant was aware that it had received a benefit; and (3) under the circumstances, it would be unjust for the defendant to retain the benefit without

paying for it." *Winters v. County of Clatsop*, 210 Or. App. 417, 421 (2007); *see also* Cron, 255 Or. App. at 130 (similar). The Oregon Supreme Court has clarified that courts "should examine the established legal categories of unjust enrichment as reflected in Oregon case law" rather than apply a free-floating equitable inquiry. *Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or. 115, 124–32 (2017). Accordingly, the alleged wrongfulness "must be grounded in recognized legal principles, rather than abstract notions of morality." *Cumming v. Nipping*, 310 Or. App. 780, 785 (2021) (quotation marks omitted). Plaintiffs' unjust enrichment claim fails for multiple reasons.

*First*, as a threshold matter, Plaintiffs have not pleaded the absence of an adequate remedy at law. That is fatal. As this Court has explained, "equitable remedies are appropriate only when there is no adequate remedy of law—that is, when there is no 'practical, efficient, and adequate' solution in the law." *K.L.*, 2024 WL 4794657, at *9 (quoting *Martell v. Gen. Motors LLC*, 492 F. Supp. 3d 1131, 1148 (D. Or. 2020)).[7] Here, Plaintiffs have not pled their unjust enrichment claim in the alternative. And the Complaint seeks actual, statutory, compensatory, and punitive damages as well as restitution and disgorgement. Compl. at Request for Relief ¶¶ C–E, G. It is inconsistent to pursue these legal remedies and equitable relief simultaneously without pleading that the former are inadequate. *Easterbrook v. LinkedIn Corp.*, No. 6:22-cv-01108-MC, 2023 WL 3022497, at *4 (D. Or. 2023). The unjust enrichment claim should be dismissed for that reason alone.

*Second*, Plaintiffs did not adequately allege they conferred a "benefit" on Providence. This Court has held that "medical information of patients" can be a benefit conferred. *M.R.*, 2024 WL 3970796, at *7 (D. Or. Aug. 28, 2024). But as explained above, Plaintiffs did not plausibly allege ***their*** medical information was disclosed as part of the online activity they allege undertaking, but

[7] In *K.L.*, this Court permitted an unjust enrichment claim to proceed in an analogous wiretapping action only because Plaintiffs, in accordance with Federal Rule of Civil Procedure 8(d), pled their unjust enrichment claim in the alternative. *Id.*

instead rely on allegations of what the online tracking tools are theoretically capable of disclosing for a hypothetical patient. That pleading failure dooms all of their claims, including for unjust enrichment. *See* B.K., 721 F. Supp. 3d 1056, 1070 (C.D. Cal. 2024) ("Without specific allegations about the underlying information that was allegedly disclosed, it is unclear to the Court how, if at all, Defendant was unjustly enriched. . . . [T]he Complaint does not include facts specific to unjust enrichment of Defendant resulting from Plaintiffs' information.").

*Third*, even if Plaintiffs had adequately alleged that they conferred a benefit on Providence (which they have not), the retention of that benefit is not "unjust." Plaintiffs' theory of "unjustness" depends on the premise that Providence's data practices violated the law. For the reasons set forth above, Plaintiffs' claims fail. Where the underlying claims collapse, a derivative unjust enrichment claim cannot survive independently. *McAllister Constr. Co. v. Liu*, 343 Or. App. 53, 63 (2025). The Complaint's invocation of "principles of fairness and equity," Compl. ¶ 331, is the "abstract notion[] of morality" Oregon courts have held insufficient. *Cumming*, 310 Or. App. at 785.

Accordingly, Plaintiffs' unjust enrichment claim (Count IV) fails as a matter of law and should therefore be dismissed.

## **CONCLUSION**

For the foregoing reasons, Providence respectfully requests that the Court dismiss Plaintiffs' Complaint in its entirety and with prejudice.[8]

[8] Dismissal with prejudice is warranted because, as detailed above, "any proposed amendment would be futile." *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990) (holding that dismissal with prejudice is appropriate where it is not possible for plaintiff to amend "without contradicting any of the allegations of his original complaint" and explaining that an "amended complaint may only allege 'other facts consistent with the challenged pleading'"); *see also* *Krainski v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 972 (9th Cir. 2010) (finding district court did not abuse its discretion in denying leave to amend complaint because "there were no new facts that [plaintiff] would include in her complaint to overcome its shortcomings").

**Dated**: May 8, 2026

/s/ Jason Ross

Jason Ross, OSB No. 231074
jason.ross@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Tel: 202-942-5000

Jami Vibbert (*pro hac vice submitted*)
jami.vibbert@arnoldporter.com
David B. Schwartz (*pro hac vice submitted*)
david.schwartz@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel: 212-836-8000

Daniel E. Raymond (*pro hac vice submitted*)
daniel.raymond@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
300 N. LaSalle Dr.
Suite 3500
Chicago, IL 60654
Tel: 312-583-2379

*Attorneys for Defendant Providence Health & Services*