Andrew D. Schlichter (*pro hac vice*)
Alexander L. Braitberg (*pro hac vice*)
Chen Kasher (*pro hac vice*)
Cort VanOstran (*pro hac vice*)
SCHLICHTER BOGARD LLC
100 South Fourth Street, Suite 1200
St. Louis, MO 63102
(314) 621-6115
(314) 621-5934 (fax)
aschlichter@uselaws.com
abraitberg@uselaws.com
ckasher@uselaws.com
cvanostran@uselaws.com

Zoe E. Seaman-Grant
Schlichter Bogard LLC
33 N Dearborn, Suite 1170
Chicago, IL 60602
(630) 919-9301
zseamangrant@uselaws.com

Paul Bovarnick, Bar No. 791654
pbovarnick@rsblaw.net
Rose, Senders & Bovarnick, LLC
1205 N.W. 25th Avenue
Portland, Oregon 97210-2592
503-227-2486

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**PORTLAND DIVISION**

| | |
|---|---|
| DEBRA MCCLELLAN, ELIZABETH JEAN BRADY, REBECCA MAJOR, ANTHONY OMER, LASHANTE TAYLOR, LISA EBNER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PROVIDENCE HEALTH & SERVICES,<br><br>Defendant. | Case No. 3:26-cv-00540-MTK<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT** |

**Table of Contents**

PRELIMINARY STATEMENT .......... 1
BACKGROUND .......... 2
A. Defendant's Interception and Disclosure of Plaintiffs' Private Health Information .......... 2
1. Plaintiffs' Use of Defendant's Website .......... 3
2. Defendant's Interception of Plaintiffs' Communications on Defendant's Website .......... 3
B. Defendant's Inconspicuous and Inaccurate Disclosures .......... 4
LEGAL STANDARD .......... 5
ARGUMENT .......... 5
I. Defendant's Consent Defense Is Improper and Baseless .......... 5
A. Defendant's Fact-Based Consent Defense Is Premature and Improper .......... 5
B. Defendant's Consent Defense Is Directly Contrary to Plaintiffs' Allegations .......... 8
1. The complaint does not allege that Plaintiffs had actual knowledge of Defendant's privacy policies. .......... 9
2. The complaint does not allege that Plaintiffs had constructive knowledge of Defendant's privacy policies. .......... 9
C. Defendant's Consent Defense Fails Because Defendant's Privacy Policies Did Not Disclose the At-Issue Conduct .......... 10
II. Plaintiffs Plausibly State Claims Upon Which Relief Can Be Granted .......... 12
A. Plaintiffs State a Claim Under the Federal Wiretap Act .......... 12
1. Plaintiffs plausibly allege that the ECPA's crime-tort exception applies to their claims. .......... 12
i. Plaintiffs allege that Defendant acted with a criminal or tortious purpose in disclosing their protected health information to Third-Party Vendors .......... 13
ii. Plaintiffs allege that Defendant disclosed their PHI in violation of HIPAA .......... 17
iii. Plaintiffs' IP addresses are individually identifiable information within the meaning of HIPAA .......... 20
iv. Defendant's demand that the Court draw inferences in its favor and conclude that unidentified business associate agreements immunize Defendant from liability is improper .......... 21
2. Plaintiffs plausibly allege that Defendant intercepted the "contents" of their electronic communications. .......... 23
B. Plaintiffs' Plausibly Allege Common Law Claims for Relief .......... 25

1. Plaintiffs plausibly state a claim for breach of confidence. ............................ 25
2. Plaintiffs plausibly state a claim for intrusion upon seclusion......................... 26
3. Plaintiffs plausibly state a claim for unjust enrichment. .................................. 27
CONCLUSION ........................................................................................................... 30

**Table of Authorities**

**Cases**

*A.B. v. Or. Clinic*,
321 Or. App. 60, 515 P.3d 387 (2022) .......... 25

*AHA v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) .......... 21

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. Feb. 29, 2024) .......... 20

*B.N. v. Or. Reprod. Med., LLC*,
No. 25-cv-00202, 2026 U.S. Dist. LEXIS 73607 (D. Or. April 3, 2026) .......... 13, 14, 20, 23

*B.N. v. Or. Reprod. Med., LLC*,
No. 25-cv-00202-IM, 2025 U.S. Dist. LEXIS 222638 (D. Or. Nov. 12, 2025) .......... 20

*Be In, Inc. v. Google Inc.*,
No. 12-CV-03373, 2013 U.S. Dist. LEXIS 147047 (N.D. Cal. Oct. 9, 2013) .......... 8

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... 10

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) .......... 5, 10, 11

*Camplisson v. Adidas Am., Inc.*,
809 F. Supp. 3d 1095 (S.D. Cal. 2025) .......... 10

*Cash Depot, Ltd. v. Commercial ATM Servs., LLC*,
No. 15-cv-0065, 2015 U.S. Dist. LEXIS 141660 (D. Alaska Oct. 19, 2015) .......... 28

*Castillo v. Costco Wholesale Corp.*,
No. 23-01548, 2024 U.S. Dist. LEXIS 207197 (W.D. Wash. Nov. 14, 2024) .......... 13, 14, 23

*Cheung v. Slickdeals, LLC*,
No. 26-cv-00519, 2026 U.S. Dist. LEXIS 143937 (C.D. Cal. June 29, 2026) .......... 14, 16

*Chodos v. W. Publ. Co.*,
292 F.3d 992 (9th Cir. 2002) .......... 30

*Close v. Penney OpCo LLC*,
787 F. Supp. 3d 1166 (W.D. Wash. 2025) .......... 10

*Coleman v. Standard Life Ins. Co.*,
288 F. Supp. 2d 1116 (E.D. Cal. 2003) .......... 28

*Cron v. Zimmer*,
255 Or. App. 114 (2013) .......... 28

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. March 28, 2024) .......... 7

*Doc's Dream, LLC v. Dolores Press, Inc.*,
766 F. App'x 467 (9th Cir. 2019) .......... 9

*Doe v. Google LLC*,
No. 23-cv-02431, 2025 U.S. Dist. LEXIS 108376 (N.D. Cal. June 6, 2025) .................... 21, 23

*Doe v. Meta Platforms, Inc.*,
No. 22-3580, 2023 U.S. Dist. LEXIS 158683 (N.D. Cal. Sept. 7, 2023) ................................ 16

*Doe v. Microsoft Corp.*,
No. 23-0718, 2023 U.S. Dist. LEXIS 226041 (W.D. Wash. Dec. 19, 2023) ........................... 24

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. June 9, 2025) ........................................................ 13, 14

*Doe v. Wellstar Health Sys., Inc.*,
799 F. Supp. 3d 1268 (N.D. Ga. 2025) ...................................................................... 16

*Franke v. Greene*,
No. 11-1860, 2012 U.S. Dist. LEXIS 108796 (E.D. Mo. Aug. 2, 2012) ................................ 28

*Gaige v. Exer Holding Co., LLC*,
No. 24-cv-06099, 2025 U.S. Dist. LEXIS 17146 (C.D. Cal. Jan. 30, 2025) ..................... 14, 21

*Gray v. Luxottica of Am., Inc.*,
No. 24-cv-00160, 2024 U.S. Dist. LEXIS 243633 (C.D. Cal. Dec. 16, 2024) ........................ 24

*Gutierrez v. Converse Inc.*,
No. 23-cv-06547, 2023 U.S. Dist. LEXIS 231056 (C.D. Cal. Oct. 27, 2023) ........................ 24

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ...................................................................... 27

*Hartley v. Univ. of Chi. Med. Ctr.*,
No. 22-cv-5891, 2025 U.S. Dist. LEXIS 194466 (N.D. Ill. Oct. 1, 2025) ........................ 19, 21

*Hines v. Overstock.com, Inc.*,
668 F. Supp. 2d 362 (E.D.N.Y. 2009) ........................................................................ 8

*Holman v. Indiana*,
211 F.3d 399 (7th Cir.) ........................................................................................ 28

*Humphers v. First Interstate Bank of Or.*,
298 Ore. 706, 696 P.2d 527 (1985) ........................................................................... 25

*I.T. v. ChoicePoint LLC*,
No. C25-00193, 2025 U.S. Dist. LEXIS 169202 (W.D. Wash. Aug. 29, 2025) ........... 13, 16, 20

*In re BetterHelp, Inc.*,
No. 23-01033, 2024 U.S. Dist. LEXIS 124321 (N.D. Cal. July 15, 2024) ............................ 17

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .................................................................................. 29

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ....................................................................... 12

*In re Google Inc.*,
No. 13-MD-02430, 2013 U.S. Dist. LEXIS 172784 (N.D. Cal. Sept. 26, 2013) .................... 10

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) .......... 23

*In re Meta Android Priv. Litig.*,
No. 25-cv-04674, 2026 U.S. Dist. LEXIS 104066 (N.D. Cal. May 11, 2026).......... 11

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 18, 23

*In re Zappos, Inc.*,
893 F. Supp. 2d 1058 (D. Nev. 2012) .......... 10

*In re Zynga*,
750 F.3d 1098 (9th Cir. 2014).......... 23

*K.L. v. Legacy Health*,
No. 23-cv-1886, 2024 U.S. Dist. LEXIS 206864 (D. Or. Nov. 14, 2014) .. 5, 13, 18, 19, 20, 25, 26, 28, 29, 30

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018).......... 5, 22

*Lindsay v. Shree Enterprises*,
No. 21-cv-00299, 2021 U.S. Dist. LEXIS 123753 (E.D. Cal. July 1, 2021).......... 7

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 27

*Lusnak v. Bank of Am., N.A.*,
883 F.3d 1185 (9th Cir. 2018).......... 6

*Lynch v. Express Scripts Holding Co.*,
No. 23-cv-01170, 2026 U.S. Dist. LEXIS 135441 (N.D. Cal. June 17, 2026).......... 12

*M.R. v. Salem Health Hosps. & Clinics*,
No. 23-cv-01691, 2024 U.S. Dist. LEXIS 155513 (D. Or. Aug. 28, 2024) 13, 19, 25, 26, 27, 29

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008).......... 22

*Martin v. Sephora USA, Inc.*,
No. 22-cv-01355, 2023 U.S. Dist. LEXIS 55930 (E.D. Cal. March 30, 2023).......... 7

*Matera v. Google Inc.*,
No. 15-cv-04062, 2016 U.S. Dist. LEXIS 130778 (N.D. Cal. Sept. 23, 2016).......... 6

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) .......... 15

*Newcal Indus. v. Ikon Off. Sol.*,
513 F.3d 1038 (9th Cir. 2008) .......... 5

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014).......... 8, 9

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024).......... 18

*Perez-Denison v. Kaiser Found. Health Plan of the Nw.*,
868 F. Supp. 2d 1065 (D. Or. 2012) ........ 27

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ........ 16

*Plata v. Lands' End, Inc.*,
No. 24-cv-00723, 2024 U.S. Dist. LEXIS 237722 (C.D. Cal. Dec. 19, 2024) ........ 10

*Ploof v. Ariz.*,
No. 22-15061, 2023 U.S. App. LEXIS 8837 (9th Cir. Apr. 13, 2023) ........ 6, 22

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ........ 21

*R.S. v. Prime Healthcare Servs.*,
No. 24-00330, 2025 U.S. Dist. LEXIS 6338 (C.D. Cal. Jan. 13, 2025) ........ 13, 14, 15, 16

*Ramirez v. Lasikmd USA, Inc.*,
No. 24-cv-2221, 2026 U.S. Dist. LEXIS 14108 (S.D. Cal. Jan. 26, 2026) ........ 14

*Reed v. Toyota Motor Credit Corp.*,
301 Or App 825 (2020) ........ 26

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ........ 14

*Schwartz v. D Miller, P.A.*,
153 F.4th 918 (9th Cir. 2025) ........ 30

*Scott v. Kuhlmann*,
746 F.2d 1377 (9th Cir. 1984) ........ 6

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ........ 21

*Shroyer v. New Cingular Wireless Servs. Inc.*,
622 F.3d 1035 (9th Cir. 2010) ........ 5

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ........ 11

*Smith v. Rack Room Shoes, Inc.*,
No. 24-cv-06709, 2025 U.S. Dist. LEXIS 149750 (Aug. 4, 2025) ........ 17

*Stein v. Edward-Elmhurst Health*,
No. 23-cv-14515, 2025 U.S. Dist. LEXIS 31273 (N.D. Ill. Feb. 21, 2025) ........ 15

*Sussman v. ABC*,
186 F.3d 1200 (9th Cir. 1999) ........ 14

*Tsao v. Desert Palace, Inc.*,
698 F.3d 1128 (9th Cir. 2012) ........ 11

*Van Tassell v. United Mktg. Grp., LLC*,
795 F. Supp. 2d 770 (N.D. Ill. 2011) ........ 8

*Weizman v. Talkspace*,
705 F. Supp. 3d 984 (N.D. Cal. Dec. 6, 2023) ..................................................................... 7

*Weston v. Lefiti*,
No. 24-541, 2024 U.S. App. LEXIS 27181 (9th Cir. Oct. 25, 2024)........................................ 15

*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012) ............................................................................................. 5, 7

**Statutes**

18 U.S.C. § 2511 ........................................................................................................................ 2

18 U.S.C. § 2511(2)(d)................................................................................................................ 13

**Rules**

Fed. R. Civ. P. 8(a)(1) ............................................................................................................... 19

**Regulations**

45 C.F.R. § 160.103 ............................................................................................................... 4, 18

45 C.F.R. § 164.502(e)(1)(i) ........................................................................................................ 22

45 C.F.R. § 164.508(a)(3) ............................................................................................................ 22

45 C.F.R. § 164.514(b)(2) ............................................................................................................ 21

**PRELIMINARY STATEMENT**

The Court should deny Defendant's motion to dismiss ("Mot."), which is premised almost entirely on the baseless argument that Plaintiffs' 88-page Amended Complaint ("AC") fails to adequately allege that Defendant tracked, disclosed, and profited from Plaintiffs' private health information. In taking this position, Defendant ignores the *extensive* allegations of Plaintiffs' complaint, which describes in significant detail Defendant's surreptitious installation of third-party tracking technologies that intercepted Plaintiffs' private health-related interactions with Defendant's website – including from within Defendant's purportedly secure patient portal. Defendant additionally asks the Court to improperly adjudicate fact issues at the motion-to-dismiss stage, draw inferences in its favor (rather than in Plaintiffs' favor, as required at this stage), and accept arguments that are directly contrary to well-settled law in this Circuit. Because each of Defendant's arguments is groundless, the Court should deny Defendant's motion to dismiss in its entirety.

*First*, Defendant's premature argument that Plaintiffs consented to the transmission of their private health date is entirely without merit. To be clear: Plaintiffs unambiguously allege that Defendant affirmatively represented that it would not transmit Plaintiffs' personal health information to third parties for marketing purposes, but nevertheless did so. Under controlling Ninth Circuit authority, moreover, Plaintiffs cannot have consented to conduct that Defendant never disclosed. In any event, the Court should not rely on the outside-the-pleadings material on which Defendant's argument rests.

*Second*, Defendant's assertion that the complaint lacks sufficient allegations that Plaintiffs' personal health information was tracked and disclosed, and therefore fails to plausibly state claims upon which relief can be granted, ignores the complaint's 353 paragraphs detailing the precise manner in which Defendant configured its website and portal to track and disclose

*every single user interaction* – including all of Plaintiffs' health-related communications. Among other things, these paragraphs include detailed, specific allegations regarding Plaintiffs' use of the website and patient portal, and more than a dozen screenshots of source code showing that Defendant embedded tracking technologies from third parties into its website and patient portal and used these technologies to harvest and disclose patients' private health information. These and other allegations state plausible claims for violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511 ("ECPA"), breach of confidence, intrusion upon seclusion, and unjust enrichment.

## BACKGROUND

### A. Defendant's Interception and Disclosure of Plaintiffs' Private Health Information

Plaintiffs are patients of Defendant whose electronic communications were surreptitiously intercepted by Defendant. AC ¶¶ 7–19. Defendant is one of the largest health systems in the United States, owning and operating "more than 50 hospitals and 1,000 clinics, as well as urgent care centers and digital health platforms throughout" the Pacific Northwest. *Id.* ¶¶ 57–58. Plaintiffs allege Defendant maintains both a website (the "Website") and a password-protected portal (the "Portal") through which "patients access claims, past treatment, and review medical conditions[.]" *Id.* ¶ 10. Plaintiffs allege that Defendant embedded on the Website and the accompanying portal various tracking technologies – including tracking pixels and session replay code (the "Tracking Technologies")[1] – provided by third-party vendors (the "Third-Party Vendors"). These Tracking Technologies captured Plaintiffs' private communications, including keystrokes, search queries, and portal activity, and transmitted data concerning Plaintiffs'

---

[1] A tracking pixel is a piece of code that tracks users' interactions with a website, including their pages visited, any buttons clicked, and the full text of any search queries entered. AC ¶ 230. Session replay is code that "logs and tracks *everything* a user does on a webpage, including mouse movements, clicks, scrolls, and taps[.]" *Id.* ¶ 118 (original emphasis).

communications to Defendant and the Third-Party Vendors.

1. Plaintiffs' Use of Defendant's Website

Each Plaintiff alleges the precise way in which they used Defendant's Website and Portal:

- Plaintiff Debra McClellan used Defendant's Website and Portal "to review her private health information related to her treatment and payment for it." AC ¶ 36.

- Plaintiff Anthony Omer "used Defendant's Website to view his private health information, including in the MyChart portal," *id.* ¶ 37, and the screenshots in the complaint reflect "his *actual browsing*, including . . . his search for an eye condition." *Id.* ¶ 38 (emphasis added).

- Plaintiff Elizabeth Jean Brady used both Defendant's Website and Portal, including the Portal's "Learn More" option "obtain additional information regarding her specific medical conditions" including "a digestion condition." *Id.* ¶¶ 39–42.

- Plaintiff LaShante Taylor used Defendant's Website and Portal to, among other things, "check[] appointment times, schedul[e] appointments, messag[e] healthcare providers, refill[] prescriptions, review[] billing information, and send[] documents." *Id.* ¶¶ 44–48.

- Plaintiff Rebecca Major used Defendant's Portal "to review and manage healthcare-related information, including appointments, provider communications, prescription refills, diagnostic imaging, and hospital outpatient visits." *Id.* ¶ 49.

- Plaintiff Lisa Ebner used Defendant's Website and Portal "to review her private health information, message care providers, attend virtual office visits, and pay her bills," including for "genetic testing." *Id.* ¶¶ 55–56.

Each Plaintiff expressly alleges that they accessed Defendant's Portal, which required Plaintiffs to enter user-specific login information to access. *Id.* ¶ 7.

2. Defendant's Interception of Plaintiffs' Communications on Defendant's Website

Plaintiffs allege that the tracking technologies embedded on Defendants' Website allow Defendant and the Third-Party Vendors to intercept the health-related communications of Plaintiffs and other patients. *Id.* ¶¶ 7–19. For instance, Plaintiff Omer alleges that his search for

information about an eye condition was transmitted, in detail, to Google. *Id.* ¶¶ 38, 241. Similarly, Plaintiff Major alleges that her "use of the Website transmitted data to [a Third-Party Vendor], including persistent identifiers, page URLs, provider-search activity, filter selections, and healthcare-related search terms including the name of her condition." *Id.* ¶ 53. Plaintiffs further allege that, because accessing the Portal established Plaintiffs' status as patients of Defendant, Defendant disclosed Plaintiffs' patient status to Third-Party Vendors. *Id.* ¶ 186. Further, Defendant transmitted Plaintiffs' IP addresses to Third-Party Vendors alongside this sensitive health information. *Id.* ¶¶ 10, 206, 215, 224, 234, 278.

Plaintiffs allege that each Plaintiff was tracked in the ordinary course of managing his or her healthcare on the Website and in the patient portal, and that the intercepted information falls within the Health Insurance Portability and Accountability Act's ("HIPAA") definition of "protected health information." *Id.* ¶¶ 272–83. This is because Plaintiffs allege that the mere act of logging into the Portal constitutes protected health information ("PHI") within the meaning of HIPAA, as it discloses Plaintiffs' status as patients of Defendant. *Id.* ¶ 186. Further, Plaintiffs allege that the detailed URLs documenting Plaintiffs' page navigation and queries are individually identifiable and "relate[] to the past, present, or future physical or mental health condition of an individual; the provision of health care to an individual, or the payment for health care." 45 C.F.R. § 160.103; AC ¶¶ 177, 201, 229, 232.

**B. Defendant's Inconspicuous and Inaccurate Disclosures**

Plaintiffs additionally allege that Defendant's purported disclosures are inconspicuous and inaccurate. Defendant's disclosures are located at the very bottom of its Website and presented in font that is identical to surrounding font, including non-hyperlinked font. AC ¶¶ 251–54. Defendant never asked Plaintiffs for express consent to any of the privacy policies or the Terms of Use located on its Website. *Id.* ¶ 251. Even if a Plaintiff were able to locate

Defendant's privacy policies, Defendant expressly represents in its "Notice of Privacy Practices" that it will *not* disclose PHI for "marketing purposes" without a patient's "written permission." *Id*. Fig. 30. Defendant only mentions the existence of "Third-party advertising partners" in a separate Privacy Policy that does not purport to pertain to PHI. *Id*. Fig. 32.

## LEGAL STANDARD

"A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief." *K.L. v. Legacy Health*, No. 23-cv-1886, 2024 U.S. Dist. LEXIS 206864, at *2 (D. Or. Nov. 14, 2014) (citing *Shroyer v. New Cingular Wireless Servs. Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010)). "In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). "The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff." *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). In deciding a motion to dismiss, a court "may not rely on material outside the pleadings." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

## ARGUMENT

### I. Defendant's Consent Defense Is Improper and Baseless

#### A. Defendant's Fact-Based Consent Defense Is Premature and Improper

Defendants' baseless assertion that Plaintiffs consented to the disclosure of their private health-related information, and that this consent bars Plaintiffs' claims, is a fact-based affirmative defense that is wholly improper at the motion-to-dismiss stage. *See Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) ("[C]onsent is an affirmative defense for which defendant bears

the burden of proof.") (internal quotations and citation omitted); *see also Matera v. Google Inc.*, No. 15-cv-04062, 2016 U.S. Dist. LEXIS 130778, at *17 (N.D. Cal. Sept. 23, 2016) ("Under the Wiretap Act, the question of express consent is usually a question of fact, where a fact-finder needs to interpret the express terms of any agreements to determine whether these agreements adequately notify individuals regarding the interceptions."). "Ordinarily, affirmative defenses . . . may not be raised on a motion to dismiss." *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194 n.6 (9th Cir. 2018); *see also Ploof v. Ariz.*, No. 22-15061, 2023 U.S. App. LEXIS 8837, at *1 (9th Cir. Apr. 13, 2023) (plaintiffs "generally need not plead around affirmative defenses."). Indeed, an affirmative defense may only be considered on a motion to dismiss when "the defense raises no disputed issues of fact." *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).

Defendant's consent defense improperly raises many factual issues, as illustrated by Defendant's Request for Judicial Notice (ECF No. 33), which purports to attach screenshots of Defendant's Terms of Use & Privacy Policy and account-creation process that Defendant argues support the *merits* of its claims. However, even if it were proper for a court to consider factual materials extrinsic to a complaint on a motion to dismiss – and it unequivocally is not – Defendant fails to include any evidence demonstrating that the screenshots are accurate depictions of Defendant's Terms of Use & Privacy Policy and/or account-creation process *throughout* the relevant period. Defendant instead merely asserts that its screenshots depict the *current* iterations of Defendant's Terms of Use & Privacy Policy and account-creation process. *See* ECF No. 33 at 1 (acknowledging that the screenshots are depictions of Defendant's Website as of May 8, 2026). But Defendant does not contend that Plaintiffs would have encountered the *current* iteration of Defendant's Website throughout the relevant period. Nor can the Court infer from Plaintiffs' complaint that Plaintiffs would have done so; indeed, Plaintiffs specifically

allege that encountered *different* features. *Cf.* AC ¶ 247 ("Defendant's Website does not display a pop-up, banner, or consent prompt when patients begin interacting with provider searches or other health-related features."). At this stage, it is fundamental that the allegations of Plaintiffs' complaint must be taken as true. *See, e.g.*, *Wilson*, 668 F.3d at 1140.

Moreover, courts confronted with similar allegations routinely reject the exact sort of extrinsic fact evidence that Defendant seeks to introduce at the motion-to-dismiss stage. For example, in *Weizman v. Talkspace*, a defendant submitted a screenshot that purportedly depicted its terms of use, but the court concluded that the defendant "[did] not demonstrate that the screenshot containing the Terms of Use was the exact webpage that [plaintiff] saw when she signed up on the platform, meaning she may never have consented to those particular Terms." 705 F. Supp. 3d 984, 991–92 (N.D. Cal. Dec. 6, 2023). The court declined to decide the issue of consent. *Id.* Similarly, in *Lindsay v. Shree Enterprises*, the court declined to take judicial notice of website screenshots when "[n]one of the proffered screenshots date[d] from the relevant time period." No. 21-cv-00299, 2021 U.S. Dist. LEXIS 123753, at *7 (E.D. Cal. July 1, 2021); *see also D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1197 (S.D. Cal. March 28, 2024) (declining to take judicial notice of screenshot taken after complaint was filed, which did not purport to represent what the plaintiff saw); *Martin v. Sephora USA, Inc.*, No. 22-cv-01355, 2023 U.S. Dist. LEXIS 55930, at *11–13 (E.D. Cal. March 30, 2023) (declining to infer consent from screenshots submitted by defendant when "there [was] no way to verify whether the screenshot in Defendant's brief constitute[d] an accurate portrayal of the chat box Plaintiff used at the time of the incident"). As these courts reasoned, the question of consent is plainly a fact question that is appropriately resolved *after* the motion-to-dismiss stage, once a factual record has been developed.

B. <u>Defendant's Consent Defense Is Directly Contrary to Plaintiffs' Allegations</u>

Defendant's consent defense is also meritless because the complaint is replete with allegations, which at this stage must be taken as true, that Plaintiffs did *not* consent to Defendants' disclosure of their private data to third parties and had no actual or constructive knowledge of Defendant's privacy policies.

As alleged in the complaint, because Defendant did not require Plaintiffs to click or check any box or provide any affirmative indication of consent to Defendant's privacy policies, *see* AC ¶¶ 251–52,[2] those policies at most function as a "browsewrap agreement" – i.e., an "agreement" whereby "'[a] party . . . gives his assent simply by using the website.'" *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (quoting *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 366-67 (E.D.N.Y. 2009)). "The defining feature of browsewrap agreements is that the user can continue to use the website or its services without visiting the page hosting the browsewrap agreement or even knowing that such a webpage exists." *Be In, Inc. v. Google Inc.*, No. 12-CV-03373, 2013 U.S. Dist. LEXIS 147047, at *6 (N.D. Cal. Oct. 9, 2013). "'Because no affirmative action is required by the website user to agree to the terms of a contract other than his or her use of the website, the determination of the validity of the browsewrap contract depends on whether the user has actual or constructive knowledge of a website's terms and conditions.'" *Nguyen*, 763 F.3d at 1176 (quoting *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 790 (N.D. Ill. 2011)). Here, neither is alleged in Plaintiffs' complaint.

[2] Defendant's only basis for claiming the existence of a clickwrap agreement – i.e., a website design where a user clicks a box manifesting express consent to terms of use – is the screenshot included in Defendant's Request for Judicial Notice dated *after* Plaintiffs filed the original complaint in this action. *See* ECF No. 33. However, even if it were proper for the Court to consider Defendant's extrinsic factual materials, this screenshot obviously does not support a finding that Plaintiffs affirmatively manifested their consent to Defendant's Terms of Use.

1. *The complaint does not allege that Plaintiffs had actual knowledge of Defendant's privacy policies.*

There can be no dispute that Plaintiffs do not allege that they had actual knowledge of Defendant's privacy policies. AC ¶¶ 246–71. Nevertheless, Defendant argues that *it* is entitled to an inference that because Plaintiffs allege that representations Defendant made "led patients like Plaintiffs" to believe that Defendant would not share their private health data, Plaintiffs *themselves* read the disclosures and formed those beliefs. Mot. at 8. But that is not all consistent with the complaint, which merely alleges that *if* a patient were able to locate Defendant's privacy policies, the patient would reasonably conclude that Defendant "does not share or disclose sensitive health-related information or Website Communications to third parties without *express* authorization." AC ¶ 245. In any event, it is Plaintiffs – not Defendants – who are entitled to reasonable inferences at the motion-to-dismiss stage. *Doc's Dream, LLC v. Dolores Press, Inc.*, 766 F. App'x 467, 471 (9th Cir. 2019). Indeed, even if Plaintiffs *now* have notice of the privacy policies, it does not follow that Plaintiffs had notice of the privacy policies when their private health data was first intercepted.

2. *The complaint does not allege that Plaintiffs had constructive knowledge of Defendant's privacy policies.*

To the extent Defendant argues that the Court should infer that Plaintiffs had "constructive knowledge" of Defendant's privacy policies based on a hyperlink at the bottom of Defendant's Website, that argument similarly fails. Setting aside the fact that Defendant's argument relies entirely on fact questions that cannot be resolved at the motion-to-dismiss stage, the Ninth Circuit has been clear that, as a matter of law, the presence of a hyperlink at the bottom of a website comes nowhere close to establishing constructive knowledge sufficient to establish consent. *See Nguyen*, 763 F.3d at 1177 ("Where the link to a website's terms of use is buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely

to see it, courts have refused to enforce the browsewrap agreement."). Courts throughout this Circuit have similarly found that inconspicuous browsewrap agreements do not establish constructive knowledge. *See*, *e.g.*, *In re Zappos, Inc.*, 893 F. Supp. 2d 1058, 1064 (D. Nev. 2012) ("The Terms of Use is inconspicuous, buried in the middle to bottom of every Zappos.com webpage among many other links, and the website never directs a user to the Terms of Use."); *Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1109 (S.D. Cal. 2025) (terms of use and privacy policy were not conspicuous when they required "scrolling down to the footer of the page"); *Close v. Penney OpCo LLC*, 787 F. Supp. 3d 1166, 1174 (W.D. Wash. 2025) (same).[3]

C. <u>Defendant's Consent Defense Fails Because Defendant's Privacy Policies Did Not Disclose the At-Issue Conduct</u>

Defendant's consent defense additionally fails because even if the Court were to consider Defendant's fact-based arguments at the motion-to-dismiss stage and take judicial notice of Defendant's privacy policies, those policies do not disclose the practices that Plaintiffs challenge. The Ninth Circuit imposes a high bar for establishing consent: for consent to exist, "[website] disclosures must 'explicitly notify' users of the conduct at issue." *Calhoun*, 113 F.4th at 1147 (quoting *In re Google Inc.*, No. 13-MD-02430, 2013 U.S. Dist. LEXIS 172784, at *13 (N.D. Cal. Sept. 26, 2013)). Further, "[c]onsent is only effective if the person alleging harm consented to the particular conduct, or to substantially the same conduct and if the alleged tortfeasor did not exceed the scope of that consent." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1149 (9th Cir.

[3] Further, even if a user *had* scrolled to the Website's footer, the text itself is not conspicuous. The font is the same size and color as the surrounding text, including non-hyperlinked text. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 854 (9th Cir. 2022) (finding links to terms of use and privacy not conspicuous when, *inter alia*, "they appeared in the same gray font as the rest of the sentence, rather than in blue, the color typically used to signify the presence of a hyperlink."); *see also Plata v. Lands' End, Inc.*, No. 24-cv-00723, 2024 U.S. Dist. LEXIS 237722, at *15 (C.D. Cal. Dec. 19, 2024) (finding link not reasonably conspicuous when it was located in website footer and surrounded "with the five other links in the footer of the same text and font").

2012) (cleaned up). Courts consider "whether the circumstances, considered as a whole, demonstrate that a reasonable person understood that an action would be carried out so that their acquiescence demonstrates knowing authorization." *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8 (9th Cir. 2018). "Since a court cannot resolve factual disputes on a motion to dismiss, if a plaintiff could have 'plausibly understood the disclosures as *not* disclosing that [the defendant] would engage in particular conduct,' their claims cannot be dismissed." *In re Meta Android Priv. Litig.*, No. 25-cv-04674, 2026 U.S. Dist. LEXIS 104066, at *16–17 (N.D. Cal. May 11, 2026) (quoting *Calhoun*, 113 F.4th at 1147).

Here, there can be no dispute that Defendant's privacy policies do *not* reveal that Defendant intercepts and discloses patients' PHI to third parties. *See* AC ¶¶ 242. Instead, and to the contrary, Defendant's "Notice of Privacy Practices" represents that Defendant "*never* share[s] [protected health] information about [users]" for "marketing purposes" without the user's written permission. AC Fig. 30. Based on this representation, a user would reasonably understand that Defendant will not disclose their PHI for marketing purposes without their written permission – which Plaintiffs allege Defendant did not obtain. Moreover, Defendant's reference to sections of its "Privacy Policy" does not change this conclusion, as Defendant's "Privacy Policy" states only that "non-identifiable information" will be shared with third-party service providers for marketing purposes. *Id*. Fig. 32. Taken together, Defendant's "Notice of Privacy Practices" and "Privacy Policy" would lead a reasonable user to understand that, while Defendant may at most disclose *non-identifiable* information to third parties for marketing purposes, Defendant will *not* disclose PHI without users' express written authorization.

A court in this Circuit recently considered markedly similar facts and declined to find, at the motion-to-dismiss stage, that the plaintiff had consented to the alleged conduct. *See Lynch v.*

*Express Scripts Holding Co.*, No. 23-cv-01170, 2026 U.S. Dist. LEXIS 135441, at *2–10 (N.D. Cal. June 17, 2026). There, the defendant argued that its privacy policy disclosed that user information might be shared with third parties for marketing purposes. *Id.* at *9. However, the defendant's website featured a separate notice concerning PHI, which stated that defendant's disclosure of PHI was constrained "by federal and state law." *Id.* at *8. The court concluded that these disclosures, taken together, could at most lead a reasonable user to interpret "these disclosures to mean that [defendant] may share data with third parties, but only within the constraints of applicable law that protects such data, particularly health information." *Id.* at *9. "Accordingly, because 'a reasonable . . . user could plausibly have interpreted the [disclosure] language as *not* disclosing that [defendant] would engage in particular conduct,'" the claim could not be dismissed on the basis of consent. *Id.* at *10 (quoting *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 789–90 (N.D. Cal. 2019)) (original emphasis).

Here, too, a reasonable user could at most conclude that *only* non-identifiable information is disclosed to third parties. *See* AC Fig. 24 (disclosure from Defendant representing that "service providers may collect *non-identifiable* information about your interactions with our Website") (emphasis added).

## II. Plaintiffs Plausibly State Claims Upon Which Relief Can Be Granted

### A. Plaintiffs State a Claim Under the Federal Wiretap Act

Plaintiffs plausibly allege that Defendant violated the ECPA by embedding tracking technologies on its Website and password-protected Portal that intercepted patients' private health information and transmitted it to third parties. AC ¶¶ 336–45.

#### 1. *Plaintiffs plausibly allege that the ECPA's crime-tort exception applies to their claims.*

Defendant insists that Plaintiffs' ECPA claim should be dismissed because the ECPA's

one-party consent rule means Defendant's consent to the interception of the at-issue communications bars Plaintiffs' claim. Mot. at 10–11. But the ECPA explicitly provides that the one-party consent rule does not apply if the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). Courts in this District have universally concluded that a violation of HIPAA is sufficient to give rise to the crime-tort exception. *See B.N. v. Or. Reprod. Med., LLC*, No. 25-cv-00202, 2026 U.S. Dist. LEXIS 73607, at *8–9 (D. Or. April 3, 2026) (HIPAA violation sufficient to invoke crime-tort exception); *Legacy Health*, 2024 U.S. Dist. LEXIS 206864, at *13–14 (same); *M.R. v. Salem Health Hosps. & Clinics*, No. 23-cv-01691, 2024 U.S. Dist. LEXIS 155513, at *14–15 (D. Or. Aug. 28, 2024) (same).[4] Because Defendant knowingly disclosed PHI to third parties in violation of HIPAA, the ECPA's crime-tort exception applies, and Defendants' consent does not bar Plaintiffs' claims. AC ¶¶ 319–21.

i. Plaintiffs allege that Defendant acted with a criminal or tortious purpose in disclosing their protected health information to Third-Party Vendors

Defendant insists that the crime-tort exception cannot apply to Plaintiffs' claims because Defendant's "purpose" in intercepting Plaintiffs' communications was its own financial gain, which, according to Defendant, cannot constitute a criminal or tortious purpose. Mot. at 13–14. But as the Ninth Circuit acknowledged in *Sussman v. ABC*, a case invoked by Defendant, *see* Mot. at 12, a "lawful purpose does not mean that the interception is not also for a tortious or

---

[4] Numerous other decisions in this Circuit are in accord. *See R.S. v. Prime Healthcare Servs.*, No. 24-00330, 2025 U.S. Dist. LEXIS 6338 (C.D. Cal. Jan. 13, 2025) (HIPAA violation can support crime-tort exception); *Castillo v. Costco Wholesale Corp.*, No. 23-01548, 2024 U.S. Dist. LEXIS 207197, at *17–19 (W.D. Wash. Nov. 14, 2024) (same); *I.T. v. ChoicePoint LLC*, No. C25-00193, 2025 U.S. Dist. LEXIS 169202, at *22–23 (W.D. Wash. Aug. 29, 2025) (same); *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 849 (E.D. Cal. June 9, 2025) (same).

unlawful purpose." 186 F.3d 1200, 1202 (9th Cir. 1999).[5] Accordingly, numerous courts in this Circuit have concluded that a defendant's knowing disclosure of PHI constitutes a criminal or tortious purpose, *even if* a defendant was also motivated by financial gain. *See*, *e.g.*, *B.N.*, 2025 U.S. Dist. LEXIS 222638 at *11–12 ("[T]his Court finds that a defendant's financial motivation does not insulate a health care provider from liability under the ECPA, where they intentionally disclosed individually identifiable patient health information in violation of HIPAA."); *Tenet Healthcare*, 789 F. Supp. 3d at 850 ("Plaintiffs' allegations that Defendants were financially motivated to disclose their [protected health] information to Meta do not immunize Defendants from liability under the ECPA."); *Prime Healthcare*, 2025 U.S. Dist. LEXIS 6338, at *18–19 ("Prime Healthcare's financial gain was contingent on disclosing HIPAA-protected information to third parties. Legitimate objectives, like increasing revenue, do not shield a party from liability for crimes or torts committed in the process."); *Castillo*, 2024 U.S. Dist. LEXIS 207197, at *6 ("[T]here is no bright-line rule insulating financial motives from the [ECPA's] crime-tort exception.").[6]

---

[5] Unlike Plaintiffs here, the plaintiffs in *Sussman* entirely failed to allege that the defendant had a criminal or tortious purpose and instead alleged that the *means* of recording was criminal or tortious. *See* 186 F.3d at 1202–03 ("Where the taping is legal, but is done for the purpose of facilitating some further impropriety, such as blackmail, section 2511 applies. Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere."). Here, Plaintiffs allege that Defendant had a criminal or tortious purpose – disclosing Plaintiffs' PHI in violation of HIPAA – when Defendant embedded the Tracking Technologies on its Website and Portal.

[6] *See also Ramirez v. Lasikmd USA, Inc.*, No. 24-cv-2221, 2026 U.S. Dist. LEXIS 14108, at *8 (S.D. Cal. Jan. 26, 2026) (crime-tort exception applied even where defendant was "arguably motivated by monetary gain" because the complaint "alleged that [the defendant] intentionally transferred Plaintiff's confidential, personally identifiable health information without Plaintiff's knowledge and consent"); *Gaige v. Exer Holding Co., LLC*, No. 24-cv-06099, 2025 U.S. Dist. LEXIS 17146, at *14–15 (C.D. Cal. Jan. 30, 2025) (similar); *Cheung v. Slickdeals, LLC*, No. 26-cv-00519, 2026 U.S. Dist. LEXIS 143937, at *48–49 (C.D. Cal. June 29, 2026) (similar); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1090 (N.D. Cal. 2025) ("Put simply,

In support of its position that a financial motivation somehow inoculates defendants from liability under the ECPA, Defendant quotes a Ninth Circuit opinion acknowledging that "an ECPA plaintiff 'must adequately allege that the interception was done for the purpose of facilitating some further impropriety, such as blackmail.'" Mot. at 14 (quoting *Weston v. Lefiti*, No. 24-541, 2024 U.S. App. LEXIS 27181, at *2 (9th Cir. Oct. 25, 2024) (cleaned up)). But under Defendant's own logic, even blackmail would not constitute a sufficient "criminal or tortious purpose" – because, after all, "mak[ing] money . . . is often the end goal of blackmail[.]" *Prime Healthcare*, 2025 U.S. Dist. LEXIS 6338, at *7. Thus, "[u]nder [Defendant's] reading, blackmail would rarely, if ever, violate the ECPA. This cannot be the case." *Id.*; *see also Stein v. Edward-Elmhurst Health*, No. 23-cv-14515, 2025 U.S. Dist. LEXIS 31273, at *16 (N.D. Ill. Feb. 21, 2025) ("The existence of an underlying financial motivation does not mean that the act lacked a criminal or a tortious purpose. That's like saying that a bank robber's purpose was not to commit a crime – it was to make money.").

Here, Plaintiffs allege that Defendant "'knowingly' disclos[ed] 'individually identifiable health information' to third parties" in violation of HIPAA. AC ¶ 318. Plaintiffs further allege that Defendant acted with the intent to commit an act that violated HIPAA. *Id.* Whether Defendant was *also* motivated by financial gain does not change the core fact that Defendant acted with the purpose of disclosing Plaintiffs' PHI in violation of HIPAA. *See Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 928 n. 4 (D. Minn. 2024) ("[T]he Court has serious doubts that a pecuniary purpose and an injurious purpose can always be so clearly distinguished. And it defies common sense that a clearly harmful act could escape liability as long as it was

---

committing a tort and seeking a profit are not mutually exclusive (if anything, the latter is often the reason for the former).").

done for profit.”).[7]

Separately, Defendant asserts that the ECPA’s crime-tort exception includes an atextual temporal requirement – according to Defendant, the criminal or tortious act must occur *after* the act of interception. *See* Mot. at 14. But in doing so, Defendant “conflates the crime-tort exception’s ‘separate and independent’ component with its ‘temporal’ component.” *Prime Healthcare*, 2025 U.S. Dist. LEXIS 6338, at *17. “It is irrelevant that [a defendant] allegedly disclosed the [p]rivate information at the same time as its interception.” *Id*. The only question is whether “the intercepting party . . . ‘ha[d] the independent criminal or tortious purpose *at the time* the [interception] was made.’” *Id*. (quoting *Planned Parenthood Fed’n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022)) (original emphasis); *see also Doe v. Wellstar Health Sys., Inc.*, 799 F. Supp. 3d 1268, 1278–79 (N.D. Ga. 2025) (similar). Plaintiffs’ allegations that Defendant intercepted their health information in order to disclose that information in violation of HIPAA for financial gain indisputably satisfies this requirement.

Indeed, several courts in this Circuit have recently found substantively identical allegations sufficient to invoke the crime-tort exception. *See*, *e.g.*, *ChoicePoint*, 2025 U.S. Dist. LEXIS 169202, at *23 (“Plaintiffs sufficiently allege that ChoicePoint's intent to disclose their

---

[7] Even if Plaintiffs were required to prove that Defendant’s primary motivation was to violate HIPAA – which they are not – that question cannot be decided on a motion to dismiss. *See Cheung*, 2026 U.S. Dist. LEXIS 143937, at *49 (“[T]o the extent that defendant may argue that the allegations demonstrate that defendant's purpose in intercepting plaintiffs’ communications was financial rather than tortious . . . the Court finds that such a determination is better made on a more complete factual record.”); *Doe v. Meta Platforms, Inc.*, No. 22-3580, 2023 U.S. Dist. LEXIS 158683, at *3 (N.D. Cal. Sept. 7, 2023) (“What [defendant’s] true intent is, what steps it actually took to prevent receipt of health information, the efficacy of its filtering tools, and the technological feasibility of implementing other measures to prevent the transfer of health information, all turn on disputed questions of fact that need development on a full evidentiary record.”).

information in violation of HIPAA is a separate act from the interception of their data."); *Prime Healthcare*, 2025 U.S. Dist. LEXIS 6338, at *6 ("R.S. asserts that the violation stems from Prime Healthcare's intentional *disclosure* of the collected Private Information, which constitutes a further impropriety independent and separate from Prime Healthcare's *interception*.") (internal quotations and citation omitted) (emphasis added); *Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709, 2025 U.S. Dist. LEXIS 149750, at *13 (Aug. 4, 2025) (plaintiffs alleged independent act when they alleged "that [defendant] intended to disclose its customers' personally identifiable communications—which it had promised not to collect or use—to third parties so that it could deliver targeted ads to its customers.").[8]

ii. Plaintiffs allege that Defendant disclosed their PHI in violation of HIPAA

The crime-tort exception also applies because Plaintiffs plainly allege that the information Defendant transmitted to third parties relates to their health conditions, the provision of health care, and/or payment for health care. Each Plaintiff alleges the precise way in which they used Defendant's Website and Portal:

- Plaintiff Debra McClellan used Defendant's Website and Portal "to review her private health information related to her treatment and payment for it." AC ¶ 36.
- Plaintiff Anthony Omer "used Defendant's Website to view his private health information, including in the MyChart portal," AC ¶ 37, and the screenshots in the AC reflect "his *actual browsing*, including . . . his search for an eye condition." *Id.* ¶ 38 (emphasis added).
- Plaintiff Elizabeth Jean Brady used both Defendant's Website and Portal, including the Portal's "Learn More" option "obtain additional information regarding her specific medical conditions" including "a digestion condition." *Id.* ¶¶ 39–42.

[8] *See also In re BetterHelp, Inc.*, No. 23-01033, 2024 U.S. Dist. LEXIS 124321, at *15 (N.D. Cal. July 15, 2024) ("Here, while the third-party interceptors presumably were only trying to make money, BetterHelp itself arguably was committing the tort/crime of disclosing its customer's sensitive mental health-related information in violation of HIPAA.").

- Plaintiff LaShante Taylor used Defendant's Website and Portal to, among other things, "check[] appointment times, schedul[e] appointments, messag[e] healthcare providers, refill[] prescriptions, review[] billing information, and send[] documents." *Id.* ¶¶ 44–48.

- Plaintiff Rebecca Major used Defendant's Portal "to review and manage healthcare-related information, including appointments, provider communications, prescription refills, diagnostic imaging, and hospital outpatient visits." *Id.* ¶ 49.

- Plaintiff Lisa Ebner used Defendant's Website and Portal "to review her private health information, message care providers, attend virtual office visits, and pay her bills," including for "genetic testing." *Id.* ¶¶ 55–56.

Plaintiffs further allege that the tracking technologies "load immediately on both public-facing pages of Defendant's Website and within purportedly secure portals" and track *every* interaction with Defendant's Website and Portal. *Id.* ¶ 10. Accordingly, Plaintiffs allege that each interaction related to their health conditions, health care, and payment for health care was tracked and transmitted to third parties. *Compare, e.g.*, *id.* ¶¶ 36 –56 *with* 45 C.F.R. § 160.103.

Moreover, Defendant does not, because it cannot, address Plaintiffs' allegations that patient status *itself* is protected by HIPAA, such that the mere act of logging into Defendants' patient portal constitutes PHI (since Plaintiffs' logins confirmed that they are receiving or have received care). AC ¶ 186. Presumably, Defendant ignores these allegations because courts consistently find that the act of clicking a "log in" button for a patient portal transmits patient status, which is PHI protected by HIPAA. *See Legacy Health*, 2024 U.S. Dist. LEXIS 206864, at *11–12 (act of logging into patient portal communicated patient status, which was PHI); *see also Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1081–82 (W.D. Wash. 2024) ("[T]he transmission of information submitted to a private patient portal—such as a user clicking on the 'log in' button on that webpage—reveals patient status, which in and of itself is PHI"); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022) (finding clicking log in button disclosed patient status); *see also Hartley v. Univ. of Chi. Med. Ctr.*, No. 22-cv-5891,

2025 U.S. Dist. LEXIS 194466, at *8 (N.D. Ill. Oct. 1, 2025) ("The act of logging into a healthcare provider's patient portal, when combined with individual identifiers such as an IP address or a Facebook ID, can reveal patient status."). Though Plaintiffs allege the interception and disclosure of far more PHI, Plaintiffs' act of logging into the patient portal, taken alone, constitutes PHI within the meaning of HIPAA.

Nevertheless, Defendant asserts that Plaintiffs' detailed, Plaintiff-specific factual allegations are insufficient because they do not identify, in extreme detail, every single webpage Plaintiffs visited and every single form of tracking that occurred on each individual webpage. This is baseless and far beyond what is required by the Federal Rules. *See* Fed. R. Civ. P. 8(a)(1) (a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief."). Plaintiffs allege that the Tracking Technologies were embedded throughout Defendant's Website and Portal, and Plaintiffs' complaint includes numerous screenshots substantiating Plaintiffs' allegations. AC ¶¶ 195–241. Making all reasonable inferences in Plaintiffs' favor, as the Court must do at this time, it is entirely reasonable to infer that the Tracking Technologies operated on every webpage visited by Plaintiffs and tracked information related to Plaintiffs' healthcare that Plaintiffs input on those pages, including appointment requests, prescription refills, messages to providers, and searches for medical conditions. *See Legacy Health*, 2024 U.S. Dist. LEXIS 206864, at *10–12 ("reasonable inference" to conclude that tracking technologies operated "throughout the Patient Portal" even though plaintiff only explicitly demonstrated presence of tracking technologies on the portal landing page); *see also Salem Health*, 2024 U.S. Dist. LEXIS 155513, at *3–4 (allegations that plaintiff "used Defendant's web portal and their website . . . to research medical symptoms, search for doctors, make appointments, and check medical records" sufficient to state transmission of PHI);

*ChoicePoint,* 2025 U.S. Dist. LEXIS 169202, at *22–23 (finding plaintiffs' allegations that they took surveys on website and made appointment requests sufficient to allege transmission of PHI).

Defendant's authorities are easily distinguished. Indeed, *K.L. v. Legacy Health*, upon which Defendant relies, Mot. at 25, involved materially identical allegations which a court in this District found sufficient to state a violation of the ECPA. No. 23-cv-1886, 2024 U.S. Dist. LEXIS 206864, at *12 (D. Or. Nov. 14, 2024). The plaintiff in *Legacy Health*, like Plaintiffs here, alleged that she used the defendant's website to research health conditions, communicate with providers, retrieve healthcare records, review prescriptions, and schedule appointments. *Id.* at *4. The court concluded, like every other court to consider the issue in this District, that this information constituted PHI and permitted the plaintiff's claim to proceed. *Id.* at *11.

Defendant's reliance on *B.N. v. Or. Reprod. Med., LLC*, No. 25-cv-00202-IM, 2025 U.S. Dist. LEXIS 222638 (D. Or. Nov. 12, 2025) is similarly misplaced. Mot. at 25. Though the court found that the plaintiff's original complaint alleged only that she browsed publicly available, "general interest" forms, 2025 U.S. Dist. LEXIS 222638, at *6–7, the plaintiff's amended complaint was sufficient to state a claim where, as here, she alleged she used the defendant's website to obtain treatment specific to her. *Or. Reprod. Med., LLC*, 2026 U.S. Dist. LEXIS 73607, at *11–12. Finally, the court in *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056 (C.D. Cal. Feb. 29, 2024) never reached the question of whether the plaintiffs alleged the transmission of their PHI. Instead, the court based its decision entirely on the party exception to the ECPA. 721 F. Supp. 3d at 1065.

iii. Plaintiffs' IP addresses are individually identifiable information within the meaning of HIPAA

Defendant's argument that Plaintiffs fail to allege the disclosure of PHI can be easily

brushed aside. For instance, Plaintiffs expressly and repeatedly allege that Defendant intercepted and disclosed their IP addresses, along with other PHI, to third parties in violation of HIPAA. AC ¶¶ 206, 215, 224, 234, 278. HIPAA expressly treats IP addresses as PHI, instructing covered entities that they "may determine that health information is not individually identifiable health information only if" certain listed identifiers are removed, 45 C.F.R. § 164.514(b)(2), which includes "Internet Protocol (IP) address numbers" and "[a]ny other unique identifying number, characteristic, or code[.]" 45 C.F.R. § 164.514(b)(2)(A-R). Accordingly, the transmission of IP addresses alongside healthcare-related information is PHI "under the plain language of the relevant HIPAA regulations." *Doe v. Google LLC*, No. 23-cv-02431, 2025 U.S. Dist. LEXIS 108376, at *9 (N.D. Cal. June 6, 2025); *see also R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 886 (C.D. Cal. 2024) (users could be individually identified via an IP address); *Gaige*, 2025 U.S. Dist. LEXIS 17146, at *11–12 (IP address when combined with health-related information could constitute IIHI); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 932 (N.D. Cal. 2024) (disclosure of IP addresses enabled third-party trackers to obtain "personally identifying, non-anonymized information") (cleaned up).[9]

iv. Defendant's demand that the Court draw inferences in its favor and conclude that unidentified business associate agreements immunize Defendant from liability is improper

Relying on materials outside the pleadings, Defendant additionally asserts that it cannot

---

[9] Defendant cites an out-of-Circuit opinion for the proposition that an IP address can never be individually identifiable. *See* Mem. at 19 (citing *AHA v. Becerra*, 738 F. Supp. 3d 780 (N.D. Tex. 2024)). But that decision addressed an unrelated issue: the court was considering general guidelines for public websites, *not* specific allegations regarding specific websites. *See Becerra* 738 F. Supp. 3d at 803. "Thus, its holding that information collected from public healthcare websites does not *always* amount to individually identifiable health information does not also mean that information from public websites can *never* amount to such information." *Hartley*, 2025 U.S. Dist. LEXIS 194466, at *11; *see also Google*, 2025 U.S. Dist. LEXIS 108376, at *9 n. 3 (C.D. Cal. June 6, 2025) (distinguishing *Becerra*'s procedural posture).

have violated HIPAA because any disclosures to the Third-Party Vendors occurred pursuant to business associate agreements. Mot. at 19–20. Defendant's argument is baseless. As an initial matter, even if business associate agreements *did* exist, Defendant would still have been required to obtain written authorizations from Plaintiffs prior to disclosing their PHI to business associates for marketing. *See* 45 C.F.R. § 164.508(a)(3) ("[A] covered entity must obtain an authorization for any use or disclosure of protected health information for marketing[.]"). Because Plaintiffs allege Defendant never obtained their written authorizations, *see* AC ¶ 279, Defendant was not entitled to disclose Plaintiffs' PHI.

Moreover, as Defendant itself concedes, qualifying as a "business associate" within the meaning of HIPAA requires "the covered entity [to] obtain[] satisfactory assurances – documented in *a business associate agreement* – that the information will be safeguarded." *Id*. at 20 (citing 45 C.F.R. § 164.502(e)(1)(i)) (emphasis added). Plaintiffs' 353-paragraph AC does not contain a single reference to any such agreements, and a court "may not consider material outside the pleadings when assessing the sufficiency of a [pleading] under Rule 12(b)(6)." *Khoja*, 899 F.3d at 998. Nevertheless, Defendant inexplicably insists that the Court should draw an inference in *its* favor and conclude that HIPAA-compliant business associate agreements exist because "the [AC] never alleges that any Third-Party Vendor lacked a business associate agreement, was not a business associate, or received PHI outside the scope of one." Mot. at 20. But Plaintiffs "generally need not plead around affirmative defenses." *Ploof*, 2023 U.S. App. LEXIS 8837, at *1. And it is axiomatic that pleadings must be construed "in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). At the motion-to-dismiss stage, Defendant cannot ask for the Court to draw inferences in its favor and conclude that agreements exist that entirely immunize

Defendant from liability.

2. *Plaintiffs plausibly allege that Defendant intercepted the "contents" of their electronic communications.*

Plaintiffs plausibly allege that Defendant violated the ECPA by embedding tracking technologies on its Website that intercepted all of Plaintiffs' interactions with the Website – including typed entries, names of pages visited, appointment requests, and search queries – and transmitted them to Third-Party Vendors in real time. AC ¶¶ 183–252. Relying largely on *In re Zynga*, 750 F.3d 1098 (9th Cir. 2014), Defendant insists that "URLs of pages visited" cannot constitute "contents" within the meaning of the ECPA. Mot. at 21. Setting aside that Plaintiffs plainly allege far more than just the "URLs of pages visited," Defendant is incorrect as a matter of law. The court in *Zynga* recognized "that an individual's identity and a webpage address are not categorically 'record' information." *Castillo*, 2024 U.S. Dist. LEXIS 207197, at *14. For example, "a user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to disclosure of the contents of a communication." *Zynga*, 750 F.3d at 1108–09.

In the wake of *Zynga*, courts in this Circuit have found that URLs can, in fact, constitute "contents." *See In re Meta Pixel*, 647 F. Supp. 3d at 795 ("[T]he log-in buttons and . . . descriptive URLs . . . are 'contents' within the meaning of the [ECPA]."); *Google LLC*, 2025 U.S. Dist. LEXIS 108376, at *15 (similar); *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022) (finding URLs cataloguing pages visited to be "contents"). A court in this District recently found that descriptive URLs could constitute "contents" where the URLs recorded the specific title of a healthcare page the plaintiff visited. *See Or. Reprod. Med*, 2026 U.S. Dist. LEXIS 73607, at *15 ("Here, Plaintiff has pleaded that she navigated through ORM's IVF-specific treatment page . . . and clicked the 'Schedule Your Consult' button, which

was transmitted to LinkedIn.") (internal quotations and citation omitted).

Plaintiffs allege that the Third-Party Vendors obtained detailed and descriptive URLs, which are "contents" within the meaning of the ECPA. For example, Plaintiffs include in their complaint screenshots demonstrating that Google obtains specific searches for specific conditions such as "shingles vaccine," "tobacco dependence," and "chronic iridocyclitis." AC Figs. 20, 21, 22. Plaintiffs also expressly allege that the Third-Party Vendors track "keystrokes (text entered into a search box or information box)" and "clicks," enabling the Third-Party Vendors to track everything a user does on Defendant's Website. AC ¶ 10. This includes Plaintiffs' prescription refill requests, appointment requests, searches, and messages with providers. *See* AC ¶¶ 36–56.

Courts have consistently found similar allegations constitute "contents." *See, e.g.*, *Gray v. Luxottica of Am., Inc.*, No. 24-cv-00160, 2024 U.S. Dist. LEXIS 243633, at *17–18 (C.D. Cal. Dec. 16, 2024) ("Here, Plaintiff alleges that the Meta Pixel transmitted not just the URL and basic metadata, but also the fact that the patient was booking an eye exam . . . . The PageView event generated by Meta Pixel contains a full-string, detailed URL with the terms 'eye-exam' and 'reschedule.' . . . [T]he Court finds that Plaintiff has plausibly conveyed contents.") (cleaned up); *see also Doe v. Microsoft Corp.*, No. 23-0718, 2023 U.S. Dist. LEXIS 226041, at *20 (W.D. Wash. Dec. 19, 2023) ("Plaintiff alleges Microsoft collects URLs containing search queries that could divulge a user's medical conditions, allergies, and immunizations. Accordingly, Plaintiff has adequately pled that Microsoft intercepted the contents of her communication.").[10] At this stage, construing all allegations in the light most favorable to Plaintiffs, Plaintiffs far more than

[10] Defendant's reliance on *Gutierrez v. Converse Inc.*, No. 23-cv-06547, 2023 U.S. Dist. LEXIS 231056 (C.D. Cal. Oct. 27, 2023), is misplaced, as that case did not concern information subject to HIPAA.

sufficiently allege the interception of the "contents" of their communications.

B. Plaintiffs' Plausibly Allege Common Law Claims for Relief

1. *Plaintiffs plausibly state a claim for breach of confidence.*

Contrary to Defendant's assertions, Mot. at 22–23, Plaintiffs more than adequately state a claim for breach of confidence. AC ¶¶ 322–32. Breach of confidence is "the unauthorized and unprivileged disclosure of confidential information obtained in a confidential relationship." *Humphers v. First Interstate Bank of Or.*, 298 Ore. 706, 717, 696 P.2d 527 (1985). The duty to maintain confidentiality must arise from a "legal source external to the tort claim itself." *A.B. v. Or. Clinic*, 321 Or. App. 60, 70, 515 P.3d 387 (2022) (cleaned up). A healthcare provider's obligation to maintain the confidentiality of health information is a paradigmatic example of such a duty. *See*, *e.g.*, *Salem Health*, 2024 U.S. Dist. LEXIS 155513, at *9–11 (HIPAA imposes duty to maintain confidentiality of health information); *see also Humphers*, 298 Ore. at 720 ("A physician's duty to keep medical and related information in confidence is beyond question. It is imposed by statute.").

In contending that Plaintiffs fail to state a claim for breach of confidence, Defendant repeats baseless arguments made elsewhere in its Motion. Mot. at 23. *First*, Defendant repeats its assertion that Plaintiffs fail to allege the disclosure of their specific health information, even though Plaintiffs' AC is replete with numerous allegations of *precisely* how Plaintiffs used Defendant's Website and Portal, all while Tracking Technologies operated across Defendant's Website and Portal, tracking Plaintiffs' every interaction. This is more than sufficient to allege transmission of Plaintiffs' specific information. *See*, *e.g.*, *Legacy Health*, 2024 U.S. Dist. LEXIS 206864, at *11 (transmission of PHI occurred when "Plaintiff allege[d] that the compromised information on her Patient Portal included, among other things, her status as Defendant's patient, prescription information, and her specific treatment plans from her physical therapists"). *Second*,

Defendant reiterates its argument that any such information was not individually identifiable, which is plainly belied by Plaintiffs' allegations that, among other things, Defendant disclosed their IP addresses – which constitute PHI under the plain meaning of HIPAA – alongside their health information. *Third*, Plaintiffs allege that they did not consent to the disclosure of their PHI for marketing purposes, meaning any disclosure of their PHI to third parties could not have been "authorized." Like every other court in this District to consider breach of confidence claims in the wiretapping context, the Court should permit Plaintiffs' breach of confidence claim to proceed. *See Salem Health*, 2024 U.S. Dist. LEXIS 155513, at *9–11 (permitting breach of confidence claim against healthcare provider to proceed when healthcare provider embedded third party tracking tools on its website); *Legacy Health*, 2024 U.S. Dist. LEXIS 206864, at *11 (same); *B.N.*, 2026 U.S. Dist. LEXIS 73607, at *19–20 (same).

2. *Plaintiffs plausibly state a claim for intrusion upon seclusion.*

Plaintiffs plausibly state a claim for intrusion upon seclusion. AC ¶¶ 333–44. Intrusion upon seclusion requires "(1) an intentional intrusion, physical or otherwise, (2) upon the plaintiff's solitude or seclusion or private affairs or concerns, (3) which would be highly offensive." *Reed v. Toyota Motor Credit Corp.*, 301 Or App 825, 830–31 (2020).

*First*, while Defendant baselessly asserts that Plaintiffs have not alleged that Defendant "intruded" upon Plaintiffs, Mot. at 24, the AC contains dozens of paragraphs of allegations that Defendant embedded tracking technologies on its Website and Portal that secretly captured Plaintiffs' health-related searches, bill payments, searches for providers, and viewing histories, and transmitted them to Third-Party Vendors. AC ¶¶ 182–252. Defendant's contention that Plaintiffs "voluntarily" transmitted their information to *Defendant* is simply irrelevant. Plaintiffs had no idea that their PHI was "being sent to third parties" and therefore "could not make an informed choice to disclose information to unknown parties." *Salem Health*, 2024 U.S. Dist.

LEXIS 155513, at *15–16 ("Plaintiff alleges that she voluntarily disclosed PHI to Defendant as a part of the patient-physician relationship, but never intended Google and Facebook to receive it. Therefore, Plaintiff has plausibly alleged an intentional intrusion.").

*Second*, Plaintiffs' communications on Defendant's Website and Portal were clearly intended to be private. As the court in *Salem Health* acknowledged, "personal medical information is among the most sensitive information that could be collected about a person, and the existence of many statutes like HIPAA and ORS § 192.553 regulating its disclosure supports this idea." 2024 U.S. Dist. LEXIS 155513, at *16.

*Third*, Defendant's disingenuous assertion that "deploying analytic tools" cannot be highly offensive is entirely without merit. Mot. at 25. Initially, Plaintiffs allege that Defendant did much more than merely "deploy[] analytic tools." Instead, Plaintiffs allege that Defendant systematically embedded Tracking Technologies in its Website and Portal to track and disclose patient data for marketing purposes in violation of HIPAA, all while promising patients that it would safeguard their health information. "It is likely that disclosure of such personal and sensitive information would be highly offensive to a reasonable person." *Salem Health*, 2024 U.S. Dist. LEXIS 155513, at *16; *see also Perez-Denison v. Kaiser Found. Health Plan of the Nw.*, 868 F. Supp. 2d 1065, 1090 (D. Or. 2012) ("HIPAA suggests Congress has determined reasonable people want their medical records private and strongly object to those records being inappropriately accessed").[11]

3. *Plaintiffs plausibly state a claim for unjust enrichment.*

Plaintiffs plausibly state a claim for unjust enrichment. AC ¶¶ 345–53. To state a claim

[11] Neither of the cases Defendant cite in which courts found disclosure of "browsing data" was not highly offensive took place in the healthcare context. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069 (N.D. Cal. 2022) (no allegations that health data was disclosed); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012) (same).

for unjust enrichment, a plaintiff must show: "(1) a benefit conferred, (2) awareness by the recipient that she has received the benefit, and (3) it would be unjust to allow the recipient to retain the benefit without requiring her to pay for it." *Cron v. Zimmer*, 255 Or. App. 114, 130 (2013).

As an initial matter, Defendant's contention that Plaintiffs cannot maintain a claim for unjust enrichment because Plaintiffs *may* have an adequate remedy has no basis in the law. *See* Mot. at 26. As Defendant acknowledges, *see id.*, pleading in the alternative is permitted and a "plaintiff 'need not use particular words to plead in the alternative' as long as 'it can be reasonably inferred that this is what [he was] doing.'" *Coleman v. Standard Life Ins. Co.*, 288 F. Supp. 2d 1116, 1119–20 (E.D. Cal. 2003) (quoting *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir.)). Indeed, courts have found that an unjust enrichment claim is properly pled in the alternative even if "the complaint . . . does not explicitly designate" that the claim is pled in the alternative. *Cash Depot, Ltd. v. Commercial ATM Servs., LLC*, No. 15-cv-0065, 2015 U.S. Dist. LEXIS 141660, at *18 (D. Alaska Oct. 19, 2015) (permitting unjust enrichment claim to proceed even though it was not explicitly pled in the alternative); *see also Franke v. Greene*, No. 11-1860, 2012 U.S. Dist. LEXIS 108796, at *5 (E.D. Mo. Aug. 2, 2012) ("The Court will not require hypertechnicality in pleading these claims in the alternative, and will not dismiss [plaintiff's] quantum meruit/unjust enrichment claim based on his failure to use more precise wording."). And Defendant concedes that if Plaintiffs' request for equitable relief is understood as pleading in the alternative, Defendant's argument about the absence of adequate remedy at law is moot, Mot. at 26 n.6 (noting that *Legacy Health,* 2024 U.S. Dist. LEXIS 206864, "this Court permitted an unjust enrichment claim to proceed in an analogous wiretapping action only because Plaintiff, . . ., pled her unjust enrichment claim in the alternative").

Moreover, Defendant concedes that "medical information of patients can be a benefit conferred," Mot. at 26, necessarily meaning Plaintiffs, in alleging that Defendant transmitted their PHI for its own monetary gain, allege a benefit conferred on Defendant. *See* AC ¶¶ 347–48. Plaintiffs also allege that their private medical information – including their patient status, health conditions, prescriptions, and appointment requests – was disclosed to third parties in order for Defendant to obtain financial benefits, such as using that information for advertising and marketing purposes, an allegation to which Defendant entirely fails to respond. *See* AC ¶¶ 18–19, 182, 186, 348. And because patient status is PHI, Plaintiffs allege that their medical information was disclosed for profit, which, as Defendants concede, is a benefit conferred. Accordingly, Plaintiffs satisfy this element. *See Legacy Health*, 2024 U.S. Dist. LEXIS 206864, at *20–21 (finding that medical information constituted a "benefit"); *Salem Health*, 2024 U.S. Dist. LEXIS 155513, at *19–20 (same).

Finally, Defendant contends that Plaintiffs fail to allege that the retention of the benefit is "unjust." Mot. at 27. But "the key question" in determining whether retention of a benefit is unjust is whether "it is more unjust for the benefit to stay with Defendant without payment to Plaintiff (and the putative class)." *Legacy Health*, 2024 U.S. Dist. LEXIS 206864, at *21–22 (Plaintiffs "adequately alleged that it was unjust for [defendant] to retain profits from the plaintiffs' personal data") (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599-600 (9th Cir. 2020)).[12] Because Plaintiffs allege that Defendant wrongfully profited from the unlawful collection of their private health date, Plaintiffs adequately allege unjust enrichment.

[12] To be clear, Plaintiffs are pleading a quasi-contractual claim, which Oregon courts have recognized. *See Salem Health*, 2024 U.S. Dist. LEXIS 155513, at *19 (permitting materially identical allegations to proceed on quasi-contractual theory of unjust enrichment); *Legacy Health*, 2024 U.S. Dist. LEXIS 206864, at *20–21 (same).

*Legacy Health*, 2024 U.S. Dist. LEXIS 206864, at *21–22

## CONCLUSION

This Court should deny Defendants' motion to dismiss.[13]

Dated: July 17, 2026

s/ Andrew D. Schlichter
Andrew D. Schlichter (*pro hac vice*)
Alexander L. Braitberg (*pro hac vice*)
Chen Kasher (*pro hac vice*)
SCHLICHTER BOGARD LLC
100 South Fourth Street, Suite 1200
St. Louis, MO 63102
(314) 621-6115
(314) 621-5934 (fax)
aschlichter@uselaws.com
abraitberg@uselaws.com
ckasher@uselaws.com

Zoe E. Seaman-Grant
SCHLICHTER BOGARD LLC
33 N Dearborn, Suite 1170
Chicago, IL 60602
(630) 919-9301
zseamangrant@uselaws.com

*Lead Counsel for Plaintiffs*

Paul Bovarnick, Bar No. 791654
ROSE, SENDERS, & BOVARNICK LLC
1205 N.W. 25th Avenue
Portland, OR 97210
503-227-2486
pbovarnick@rsblaw.net

*Local Counsel for Plaintiffs*

[13] Defendant's request that the complaint be dismissed with prejudice is improper. "Under Rule 15(a)(2), courts should freely give leave to amend when justice so requires." *Schwartz v. D Miller, P.A.*, 153 F.4th 918, 932 (9th Cir. 2025). As the Ninth Circuit explained, "it is generally our policy to permit amendment with 'extreme liberality.'" *Chodos v. W. Publ. Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (citation omitted).

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of July, 2026, a true and correct copy of the foregoing document was filed via the Court's CM/ECF filing system and will be available to all counsel of record upon their appearance.

s/ Andrew D. Schlichter
Andrew D. Schlichter