David B. Schwartz (*pro hac vice*)
david.schwartz@arnoldporter.com
Jami Vibbert (*pro hac vice*)
jami.vibbert@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel: 212-836-8000

Jason Ross, OSB No. 231074
jason.ross@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Tel: 202-942-5000

Daniel E. Raymond (*pro hac vice*)
daniel.raymond@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
300 N. LaSalle Dr.
Suite 3500
Chicago, IL 60654
Tel: 312-583-2379

*Attorneys for Defendant Providence Health & Services*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| DEBRA MCCLELLAN, ELIZABETH JEAN BRADY, REBECCA MAJOR, ANTHONY OMER, LASHANTE TAYLOR, and LISA EBNER, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>PROVIDENCE HEALTH & SERVICES,<br><br>*Defendant*. | Case No. 3:26-cv-00540-MTK<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** |

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........................................................................................................1

ARGUMENT ............................................................................................................3

I. PLAINTIFFS CONSENTED TO THE ALLEGED DATA PRACTICES, WHICH BARS ALL CLAIMS. ........................................................................3

II. PLAINTIFFS' ECPA CLAIM (COUNT I) SHOULD BE DISMISSED. ..........................8

A. THE CRIME-TORT EXCEPTION DOES NOT APPLY. ..........................................8

***1. Plaintiffs Plead No "Separate and Independent" Criminal or Tortious Purpose, as Required by Binding Ninth Circuit Law. ........................................8***

***2. Plaintiffs Do Not Plausibly Allege a Criminal Violation of HIPAA. ..........................................................12***

a. The Amended Complaint Does Not Allege the Disclosure of Any Plaintiff's Identifiable Health Information. .......................12

b. Plaintiffs' Generic IP-Address Allegations Do Not Supply the Missing Disclosure. ...............................................14

c. Any Disclosure to the Third-Party Vendors Was a Permitted Disclosure to Business Associates. ...............................14

B. PLAINTIFFS FAIL TO ALLEGE THE INTERCEPTION OF THE "CONTENTS" OF ANY COMMUNICATION. ...............................................16

III. PLAINTIFFS' COMMON LAW CLAIMS (COUNTS II-IV) SHOULD BE DISMISSED. ......................................................................................17

A. PLAINTIFFS' BREACH OF CONFIDENCE CLAIM (COUNT II) FAILS. ..........................17

B. PLAINTIFFS' INTRUSION UPON SECLUSION CLAIM (COUNT III) FAILS. ..........................................................................................20

C. PLAINTIFFS' UNJUST ENRICHMENT CLAIM (COUNT IV) FAILS. ..............................21

CONCLUSION .........................................................................................................23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Hosp. Ass'n v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ....................12, 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................10, 13

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ....................9, 14, 22

*B.N. v. Or. Reprod. Med., LLC*,
No. 3:25-cv-00202-IM, 2025 WL 3165965 (D. Or. Nov. 12, 2025)....................14, 18

*Beard v. PayPal, Inc.*,
No. 09-cv-1339-JO, 2010 WL 654390 (D. Or. Feb. 19, 2010) ....................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................13

*Calhoun v. Google LLC*,
113 F.4th 1141 (9th Cir. 2024) ....................6

*Camplisson v. Adidas Am., Inc.*,
809 F. Supp. 3d 1095 (S.D. Cal. 2025)....................5

*Cash Depot, Ltd. v. Com. ATM Servs., LLC*,
No. 3:15-cv-0065-HRH, 2015 WL 6131056 (D. Alaska Oct. 19, 2015)....................22

*Close v. Penney OpCo LLC*,
787 F. Supp. 3d 1166 (W.D. Wash. 2025)....................5

*Doe I v. Google LLC*,
No. 23-cv-02431-VC, 2025 WL 1616720 (N.D. Cal. June 6, 2025)....................14

*Doe v. Microsoft Corp.*,
No. C23-0718-JCC, 2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) ....................16

*Easterbrook v. LinkedIn Corp.*,
No. 6:22-cv-01108-MC, 2023 WL 3022497 (D. Or. Apr. 20, 2023) ....................22

*Gray v. Luxottica of Am., Inc.*,
No. 8:24-cv-00160-MRA-DFM, 2024 WL 5689566 (C.D. Cal. Dec. 16, 2024)....................16

*Gutierrez v. Converse Inc.*,
No. 2:23-cv-06547-RGK-MAR, 2023 WL 8939221 (C.D. Cal. Oct. 27, 2023) ....................17

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........................................................................21

*Hartley v. Univ. of Chi. Med. Ctr.*,
No. 22-cv-5891, 2025 WL 2802317 (N.D. Ill. Oct. 1, 2025) ...............................................14

*Humphers v. First Interstate Bank of Or.*,
298 Or. 706 (1985)...........................................................................................19, 20, 21

*I.T. v. ChoicePoint LLC*,
No. C25-00193, 2025 WL 2495079 (W.D. Wash. Aug. 29, 2025) .......................................11

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ..........................................................................9

*In re Zappos, Inc.*,
893 F. Supp. 2d 1058 (D. Nev. 2012)...........................................................................5

*K.L. v. Legacy Health*,
No. 3:23-cv-1886-SI, 2024 WL 4794657 (D. Or. Nov. 14, 2024) ................................ *passim*

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ..........................................................................9

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ........................................................................3

*Leggett v. First Interstate Bank of Or., N.A.*,
86 Or. App. 523 (1987).............................................................................................21

*Leyden v. J. Crew Grp., LLC*,
No. 3:25-cv-01448-AB, 2026 WL 895702 (D. Or. Apr. 1, 2026) ..........................................4

*Lindsay v. Shree Enter., LLC*,
No. 2:21-cv-00299-WBS-CKD, 2021 WL 2711225 (E.D. Cal. July 1, 2021).........................5

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........................................................................21

*Lynch v. Express Scripts Holding Co.*,
No. 23-cv-01170-AMO, 2026 WL 1749550 (N.D. Cal. June 17, 2026) .................................8

*M.R. v. Salem Health Hosps. & Clinics*,
No. 6:23-cv-01691-AA, 2024 WL 3970796 (D. Or. Aug. 28, 2024) ..............................18, 23

*Martin v. Sephora USA, Inc.*,
No. 1:22-cv-01355-JLT-SAB, 2023 WL 2717636 (E.D. Cal. Mar. 30, 2023)....5

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ....5

*Nichols v. Peacehealth Networks on Demand LLC*,
No. 2:25-cv-01831-JHC, 2026 WL 607763 (W.D. Wash. Mar. 4, 2026) ....10, 11

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)....11

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ....5

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ....9, 10

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ....14, 21

*R.S. v. Prime Healthcare Servs., Inc.*,
No. 24-cv-00330, 2025 WL 103488 (C.D. Cal. Jan. 13, 2025)....11

*Schneider v. Cal. Dep't of Corrs.*,
151 F.3d 1194 (9th Cir. 1998) ....6

*Silver v. Stripe Inc.*,
No. 4:20-cv-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021) ....3, 5

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ....3, 7

*Stevens v. First Interstate Bank of Cal.*,
167 Or. App. 280 (2000)....3, 17, 19

*Sussman v. Am. Broad. Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999) ....10

*Tsao v. Desert Palace, Inc.*,
698 F.3d 1128 (9th Cir. 2012) ....7

*Weizman v. Talkspace, Inc.*,
705 F. Supp. 3d 984 (N.D. Cal. 2023) ....5

**Statutes**

18 U.S.C. § 2510(8) ....17

18 U.S.C. § 2511(2)(d) ....................2, 8, 9

42 U.S.C. § 1320d(6) ....................10, 12, 14

**<u>Other Authorities</u>**

45 C.F.R. § 160.103 ....................15

45 C.F.R. § 164.501 ....................7, 15, 20

45 C.F.R. § 164.502(e)....................15

## INTRODUCTION

Recognizing their Amended Complaint as written cannot withstand this dismissal motion, Plaintiffs' Opposition reads allegations into the Amended Complaint that are not there. Plaintiffs' non-existent allegations cannot save their complaint, which fails both because the allegations that do exist defeat their claims and because the dearth of allegations cannot support their claims.

On the first point, Plaintiffs' Amended Complaint expressly invokes Providence's Terms of Use and Privacy Policy in no fewer than a dozen separate paragraphs.[1] When confronted with the full Terms and Privacy Policy, which disclose the very data practices Plaintiffs challenge, they retreat. Plaintiffs invoked and incorporated the Terms and Privacy Policy, but they now claim the Court cannot consider the very same Privacy Policy from the exact URL cited as support for their claims in the Amended Complaint. That is not the law. The same is true for the Portal pages Plaintiffs cite in the Amended Complaint but only selectively excerpt. When considering the entirety of these documents, as is proper since Plaintiffs decided to incorporate them by reference into their complaint, it is clear that Plaintiffs consented to the activity they now sue over.

On the second point, the Amended Complaint lacks the one fact that every count requires. ***Across 353 paragraphs, no Plaintiff pleads facts showing that his or her own sensitive identifiable information (e.g., name, email address, medical record number, or date of birth) was actually disclosed to any third party***. In its place, the Amended Complaint offers only a lengthy description of what tracking technology is capable of doing. But allegations about what technology is capable of doing are not a substitute for allegations about what was actually done to anyone. This pleading failure also defeats all of Plaintiffs' claims.

---

[1] Defined terms have the same meaning as in Providence's Motion (Dkt. 32) unless otherwise defined.

Because Plaintiffs consented and because they fail to allege any Plaintiff-specific disclosure is each independently sufficient to dismiss the entirety of the Amended Complaint. In addition, the individual claims fail for other reasons. The ECPA claim fails because Providence was an undisputed party to the communications and therefore no liability attaches under 18 U.S.C. § 2511(2)(d), and Plaintiffs' reliance on the crime-tort exception to avoid that reality does not apply. Plaintiffs plead neither the predicate HIPAA crime nor any criminal or tortious purpose "separate and independent" from the act of interception, as binding Ninth Circuit law requires. Nor could an alleged disclosure supply a HIPAA predicate in any event: any disclosure to the Third-Party Vendors was a permitted disclosure to business associates, and because the alleged disclosures are for the purpose of promoting Providence's own health-related products and services, they could not be "marketing" as HIPAA defines that term, which is limited to the use of data to promote a third party's products. And Plaintiffs never allege interception of the "contents" of any communication. The common-law claims fail for reasons courts in this District have repeatedly recognized: the breach-of-confidence claim (Count II) fails because not one of the six named Plaintiffs identifies any affirmative disclosure of their information to a third party; the intrusion-upon-seclusion claim (Count III) fails because Plaintiffs allege a failure to keep a confidence rather than an offensive prying into private affairs—a theory that, under Oregon law, sounds in breach of confidentiality, not intrusion; and the unjust-enrichment claim (Count IV) fails because it is mispled and wholly derivative of the other theories.

Plaintiffs have already amended once, with the benefit of Providence's first motion to dismiss, and still cannot state a claim—and their Opposition identifies no additional facts that would cure these defects. The Court should dismiss it in its entirety and with prejudice.

## ARGUMENT

### I. PLAINTIFFS CONSENTED TO THE ALLEGED DATA PRACTICES, WHICH BARS ALL CLAIMS.

Providence's Motion, citing the Amended Complaint and the exhibits to its Request for Judicial Notice, explains that Plaintiffs explicitly consented to the complained-of conduct when they created their Patient Portal accounts. Mot. at 4–9. In response, Plaintiffs raise three arguments. First, Plaintiffs make the claim that consent is a fact issue that cannot be decided on a motion to dismiss despite case law saying otherwise. Second, despite invoking the Terms and Privacy Policy in the Amended Complaint, Plaintiffs now claim that they did ***not*** agree to the Terms and Privacy Policy. Third, Plaintiffs claim the clear and explicit disclosures in the Terms and Privacy Policy they invoke and cite to in the Amended Complaint are, somehow, confusing or unclear. None of these arguments save them from dismissal.

*First*, it is neither premature for this Court to consider consent nor should the Court ignore the overwhelming documentary evidence that Plaintiffs consented to the very same activities about which they now sue. Opp. at 5–7. Contrary to Plaintiffs' representations, courts in this Circuit routinely dismiss such claims on the basis of consent. *See, e.g.*, *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (affirming motion to dismiss based on consent); *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1054–60 (N.D. Cal. 2025) (granting with prejudice motion to dismiss based on consent); *Silver v. Stripe Inc.*, No. 4:20-cv-08196-YGR, 2021 WL 3191752, at *2 (N.D. Cal. July 28, 2021) ("Consideration of consent is appropriate on a motion to dismiss where lack of consent is an element of the claim.").

Moreover, Plaintiffs provide no compelling reason for this Court to ignore the judicially noticed materials. *See* Providence's Request for Judicial Notice ("RJN") Reply. Plaintiffs claim that Providence's judicially noticed materials are not accurate depictions of the Terms, Privacy

Policy, or the account-creation page at the time that Plaintiffs accessed the Website. But ***Plaintiffs extensively cite and quote from the very same Terms and Privacy Policy*** in the Amended Complaint. *See* Am. Compl. ¶¶ 65 & n.9, 66 & n.10, 242–44 & nn.105–07, 260 & nn.115–16. These are the identical Terms and Privacy Policy at the very same URL that Providence submitted in its entirety in its Request for Judicial Notice. Nowhere do Plaintiffs allege that the very language that they quote and rely on in their Amended Complaint differs from what they encountered when they visited the Website and Portal.[2] Indeed, Plaintiffs do not allege at all ***when*** they visited the Website and Portal. The same is true for the Portal account-creation page. They cite it (Am. Compl. ¶ 60 & n.6), and then screen shot the landing page repeatedly (*id.*, Figs. 5 & 17) while ***omitting*** the account-creation checkbox through which each Plaintiff must acknowledge that they "read, understand, and agree to the Privacy Policy and the Terms of Use." Plaintiffs cannot invoke the portions of these documents that serve their narrative while ignoring or omitting the portions that undermine and, in fact, defeat their claims. That is precisely why the incorporation by reference doctrine exists. *See* *Leyden v. J. Crew Grp., LLC*, No. 3:25-cv-01448-AB, 2026 WL 895702, at *4 (D. Or. Apr. 1, 2026) (the incorporation by reference doctrine "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims" (quotation marks omitted)).[3]

Indeed, the cases Plaintiffs invoke to resist judicial notice of the documents they cite and rely on are readily distinguishable because plaintiffs in those cases alleged both when they visited

---

[2] Plaintiffs claim they allege they encountered "*different* features" on the Website (Opp. at 6–7), but as support they cite to a paragraph of the Amended Complaint that merely says Providence's Website does not display a pop-up banner (Am. Compl. ¶ 247). That paragraph says nothing about what Plaintiffs encountered and does not support Plaintiffs' proposition.

[3] In any event, as set forth in Providence's RJN, the two exhibits are exactly the type of webpages of which courts take judicial notice. *See* RJN, ECF No. 33 at 2.

the website and that the website was different from the submitted exhibits when they visited it. *See* *Weizman v. Talkspace, Inc.*, 705 F. Supp. 3d 984, 987 (N.D. Cal. 2023) (plaintiff alleged that she visited the website in October 2022); *Lindsay v. Shree Enter., LLC*, No. 2:21-cv-00299-WBS-CKD, 2021 WL 2711225, at *2–3 (E.D. Cal. July 1, 2021) (plaintiff alleged that she visited the website on January 19, 2021); *Martin v. Sephora USA, Inc.*, No. 1:22-cv-01355-JLT-SAB, 2023 WL 2717636, at *4 (E.D. Cal. Mar. 30, 2023) (plaintiff alleged that she visited the website within the year before filing her complaint), *report and recommendation adopted*, No. 1:22-cv-01355-JLT-SAB, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023). And in *D'Angelo v. FCA US, LLC*, the court *took judicial notice* of the website screenshots as to their existence on the date they were last accessed. 726 F. Supp. 3d 1179, 1190–91 (S.D. Cal. 2024). The Court should do the same here.

*Second*, Plaintiffs had actual knowledge of, and affirmatively assented to, the Terms and Privacy Policy. Plaintiffs do not dispute that each of them alleges accessing and using the Portal. And to create a Portal account, each Plaintiff had to check a box confirming that he or she "ha[s] read, understand, and agree to the Privacy Policy and Terms of Use," with both documents hyperlinked in blue text immediately adjacent to the box. RJN, Ex. 2. That is a clickwrap agreement. *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515–16 (9th Cir. 2023) (enforceable agreement where user clicked a confirmation button with adjacent hyperlinked terms); *Silver*, 2021 WL 3191752, at *3. Thus, Plaintiffs' browsewrap authorities are beside the point. Each addresses a situation not present here: a footer link that a user could bypass without ever encountering it. *See* *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (distinguishing "actual notice of the agreement" from mere constructive notice); *In re Zappos, Inc.*, 893 F. Supp. 2d 1058, 1064 (D. Nev. 2012); *Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1109 (S.D. Cal. 2025); *Close v. Penney OpCo LLC*, 787 F. Supp. 3d 1166, 1173–74 (W.D. Wash. 2025).

Plaintiffs' response is the curious argument that they did not "themselves" read or understand the Terms and Privacy Policy. Opp. at 9. But a user who clicks "agree" is bound whether or not she read the terms. *Beard v. PayPal, Inc.*, No. 09-cv-1339-JO, 2010 WL 654390, at *2 (D. Or. Feb. 19, 2010) ("Absent a showing of fraud, failure to read an enforceable clickwrap agreement, as with any binding contract, will not excuse compliance with its terms." (quotation marks and alteration omitted)). In any event, Plaintiffs cannot rewrite the Amended Complaint in their Opposition. The Amended Complaint expressly ***invokes*** the Terms and Privacy Policy. Plaintiffs cite the Terms' forum-selection clause to establish appropriate jurisdiction and rely on the choice-of-law provision. Am. Compl. ¶ 66. They also quote extensively from the Privacy Policy's substantive disclosures. *Id.* ¶¶ 66, 242–44, 260. They even allege that "representations [in the Privacy Policy] led patients like Plaintiffs to reasonably believe that Defendant does not share or disclose sensitive health-related information or Website Communications to third parties without *express* authorization." *Id.* ¶ 245. Plaintiffs argue that the Amended Complaint "merely alleges that ***if*** a patient were able to locate Defendant's privacy policies, the patient would reasonably conclude" that Defendant did not share or disclose such data. Opp. at 9. But that is not what they have alleged, and the Amended Complaint governs Plaintiffs' claims. *See* *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Thus, Plaintiffs had actual knowledge of the Terms and Privacy Policy and unambiguously manifested their consent.

*Third*, Providence's Motion shows that its Privacy Policy and Terms of Use disclosed all the data practices that Plaintiffs challenge. Mot. at 8–9. Plaintiffs invoke *Calhoun* for the rule that a disclosure must "explicitly notify" users of the conduct at issue, and that a claim survives where a plaintiff "could have plausibly understood the disclosures as not disclosing" the challenged conduct. Opp. at 10–11 (quoting *Calhoun v. Google LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024)).

That standard defeats Plaintiffs rather than saving them. The Privacy Policy fully discloses that Providence will use the Third-Party Vendors to serve "interest-based advertisements for Providence products and services across the Internet." Am. Compl. ¶ 243, Fig. 24. This is precisely what Providence is alleged to have done. Specifically, Providence is alleged to have used the Third-Party Vendors and the tracking technology to collect data "to identity groups or segments among its patients and refine marketing to increase enrollment and revenue." *Id.* ¶ 183. This is exactly what Providence disclosed it was doing and tracks exactly the conduct alleged in Amended Complaint. Mot. at 9. This satisfies the requirements for consent articulated by Plaintiffs. Opp. at 10–11 (*see, e.g.*, *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1149 (9th Cir. 2012)); *Smith v. Facebook*, 745 F. App'x 8, 8 (9th Cir. 2018). As such, Plaintiffs all consented to this conduct, and Providence is not alleged to have exceeded the scope of that consent.

Plaintiffs attempt to create ambiguity in the disclosures by misciting and mischaracterizing statements about "marketing" in the Privacy Policy and "Notice of Privacy Practices," Opp. at 11–12, but the disclosures are clear and consistent that Providence will not disclose personal information or PHI for ***a third-party's*** marketing purposes. *See* Am. Compl. ¶ 242; RJN, Ex 2 (Privacy Policy states that "Providence will not disclose any personal information obtained through the Providence site ***for any third party*** marketing purposes" (emphasis added)); Am. Compl. ¶ 257, Fig. 30 (Notice of Privacy Practices states that Providence will not share PHI with third parties without authorization for "marketing purposes ***(to the extent that an activity is defined as 'marketing' under . . . HIPAA***)" (emphasis added)); *see also* 45 C.F.R. § 164.501 (explicitly exempting communications "describ[ing] a health-related product or service . . . that is provided by . . . the covered entity making the communication," *i.e.*, a covered entity's promotion of its own

products and services, from HIPAA's definition of "marketing").[4] Plaintiffs have only alleged data practices of which they had actual knowledge and to which they consented, and the Court should dismiss all their claims on this basis.

## II. PLAINTIFFS' ECPA CLAIM (COUNT I) SHOULD BE DISMISSED.

Plaintiffs' Opposition confirms that their ECPA claim cannot survive. Plaintiffs concede (as they must) that Providence is a party to the communications and thereby exempt from liability. As a result, Count I is only available if the crime-tort exception applies. It does not. There is no criminal or tortious purpose alleged that is separate and apart from the interception: the only plausibly pled purpose is commercial (website analytics and profit). Further, Plaintiffs fail to adequately allege a HIPAA violation: they concede the public Website data is not IIHI, they fail to plausibly allege that their identifiable Portal activity was transmitted to any third party, and the Amended Complaint demonstrates that many of the alleged Portal "disclosures" occurred on public Website pages after Plaintiffs were redirected ***out of the Portal***. Even had Plaintiffs cleared the crime-tort hurdle, the claim would independently fail: the Amended Complaint alleges the interception of routing and address data—"record information"—not the "contents" of a communication that the statute protects. Either defect requires dismissal of Count I.

### A. THE CRIME-TORT EXCEPTION DOES NOT APPLY.

#### *1. Plaintiffs Plead No "Separate and Independent" Criminal or Tortious Purpose, as Required by Binding Ninth Circuit Law.*

To avail themselves of the crime-tort exception, Plaintiffs must plead facts that Providence intercepted communications "for the purpose of committing any criminal or tortious act." 18

[4] This is fundamentally different from *Lynch v. Express Scripts Holding Co.*, No. 23-cv-01170-AMO, 2026 WL 1749550, at *1 (N.D. Cal. June 17, 2026), relied on by Plaintiffs, *see* Opp. at 11–12, where the court found the language in defendant's notice of privacy practice could be interpreted as limiting the language in its privacy policy. 2026 WL 1749550, at *3–4.

U.S.C. § 2511(2)(d). Under binding Ninth Circuit precedent, this statutory text creates two independent pleading requirements: (1) Plaintiffs must show that the alleged offender had a ***criminal or tortious purpose*** at the time of interception; and (2) Plaintiffs must plead that the intended crime or tort is ***separate and independent*** of the act of interception itself. *See Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022). As Providence explained in its Motion, Plaintiffs plead neither. *See* Mot. at 12–15.

In their Opposition, Plaintiffs make two arguments. First, they contend that a "financial motivation" does not "inoculate[]" Providence from liability, and they marshal a series of decisions holding that a profit motive alone does not defeat the exception. Opp. at 13–15. Second, they contend that Providence seeks an "atextual temporal requirement" that the crime or tort occur after the interception. *Id.* at 16. Both arguments miss the point.

The financial-motivation argument is a classic strawman. The Motion made a single, limited point about purpose: that a bare desire for "commercial advantage" or "monetary profit" is not, without more, a criminal or tortious purpose. Mot. at 12–13 (citing *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065–66 (C.D. Cal. 2024), *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023), and *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022)). Providence does not argue that a financial motive "inoculates" a defendant that has committed a crime or tort, so Plaintiffs' cited authorities rebutting an argument that was not made are irrelevant. Plaintiffs ignore the point Providence actually made: the only purposes the Amended Complaint ***adequately pleads*** are ordinary and commercial—analytics, patient "segment[ation]," marketing, "enrollment," and "reve[nue]." Am. Compl. ¶¶ 10, 18, 182–83. None are improper, much less "criminal or tortious" as the statute requires. 18 U.S.C. § 2511(2)(d).

The Amended Complaint does not supply the missing purpose by labeling the disclosure a crime. Plaintiffs' affirmative case rests on a single paragraph: they read paragraph 318 of the Amended Complaint as alleging that Providence "'knowingly' disclos[ed] 'individually identifiable health information'" in violation of HIPAA, and so acted with a criminal purpose. Opp. at 15. But paragraph 318 does not allege that Providence intercepted the communications for the purpose of violating HIPAA; it labels the alleged disclosure a federal crime and cites the criminal statute. Am. Compl. ¶ 318 (citing 42 U.S.C. § 1320d-6(a)). That the disclosure was "knowing" is beside the point—knowledge is the mental state of the HIPAA offense itself, not the purpose the crime-tort exception requires. A conclusory legal label is not a factual allegation of purpose and is not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Peacehealth* rejected this exact tactic and dismissed the ECPA claim where the complaint asserted the defendant "'intended to violate' HIPAA" but "d[id] not plead any facts to support these conclusory statements." *Nichols v. Peacehealth Networks on Demand LLC*, No. 2:25-cv-01831-JHC, 2026 WL 607763, at *4 (W.D. Wash. Mar. 4, 2026).[5]

Plaintiffs' second argument—that Providence demands an "atextual temporal requirement," Opp. at 16—misunderstands binding Ninth Circuit law. While there is no "temporal" requirement, the Ninth Circuit has held that the ECPA requires that a predicate criminal or tortious act be "***separate and independent***" of the act of interception itself. *Newman*, 51 F.4th at 1136 (emphasis added); *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis added). If the disclosure is the interception, simultaneity matters only because it

[5] Plaintiffs' blackmail and bank-robber hypotheticals, Opp. at 15, prove the distinction rather than defeat it: what brings blackmail within the exception is not that the blackmailer wants money, but that he acquires the communication for the purpose of a further crime—extortion. Here there is no further crime, only the disclosure that is the interception.

confirms the absence of a separate act. *Nienaber* holds precisely that—where a plaintiff alleges "the simultaneous transmission of communications to third parties," there is no independent criminal or tortious act. *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1095–96 (W.D. Wash. 2024). So too does *Peacehealth*, which found no separate act where the complaint failed to allege that the data was "criminally and tortiously used, accessed, or otherwise implicated after the initial disclosure." 2026 WL 607763, at *4.

The decisions Plaintiffs invoke do not hold otherwise; each turned on allegations the Amended Complaint lacks. In *Prime Healthcare* and *ChoicePoint*, the courts applied the exception because the complaints pled a HIPAA violation supported by facts—not the conclusory allegations pled here. *R.S. v. Prime Healthcare Servs., Inc.*, No. 24-cv-00330, 2025 WL 103488, at *5–6 (C.D. Cal. Jan. 13, 2025); *I.T. v. ChoicePoint LLC*, No. C25-00193, 2025 WL 2495079, at *7 (W.D. Wash. Aug. 29, 2025). Indeed, the court that decided *ChoicePoint* later dismissed a materially identical claim in *Peacehealth*, explaining that the cases' "divergent outcomes are based on differences in the parties' actual pleadings, particularly with respect to whether the complaint pleads a HIPAA violation." 2026 WL 607763, at *3. And *Smith v. Rack Room Shoes, Inc.* involved an additional and further use of the intercepted data—consumer profiles "provided by the third party back to" the defendant and "used . . . to guide its targeted advertisements"—conduct occurring after and apart from the interception. No. 24-cv-06709, 2025 WL 2210002, at *4 (N.D. Cal. Aug. 4, 2025). The Amended Complaint pleads no such use; it pleads only the simultaneous disclosure that is the interception, undertaken for a commercial purpose.

### *2. Plaintiffs Do Not Plausibly Allege a Criminal Violation of HIPAA.*

a. The Amended Complaint Does Not Allege the Disclosure of Any Plaintiff's Identifiable Health Information.

Plaintiffs do not dispute that, to plead a criminal violation of HIPAA, they must allege the disclosure of "individually identifiable health information"—information that both "relates to" an individual's health condition and "identifies the individual" or could reasonably be used to do so. 42 U.S.C. § 1320d(6). Providence explained in its Motion why the Amended Complaint fails to make this showing from any source—whether the Website, the Portal, or the redirected public pages that Portal users reach by clicking "Learn More." *See* Mot. at 15–18.

Starting with the Website, Providence explained that any data collected on the publicly facing Website cannot plausibly be IIHI because the Amended Complaint lacks allegations that Plaintiffs were identified and that the transmitted data related to Plaintiffs' health condition. Mot. at 16, citing *Am. Hosp. Ass'n v. Becerra* ("*Becerra*"), 738 F. Supp. 3d 780, 801–04 (N.D. Tex. 2024) ("Simply put, **Identity** (Person A) + **Query** (Condition B) ≠ **IIHI** (Person A has Condition B)."). Plaintiffs do not dispute this or respond to this argument in their Opposition. Instead, they claim that ***patient status*** is protected by HIPAA and cite a string of cases about logging into a patient portal. Opp. at 18–19. The Portal, however, is not the Website. It seems Plaintiffs are conceding that any data collected on the Website is not IIHI and not sufficient to support their crime-tort argument.

As to the Portal, Plaintiffs' argument also falters. Plaintiffs claim that logging into the Portal is sufficient to carry the day. Opp. at 18–19. But, unlike the cases Plaintiffs cite, here no Plaintiff plausibly alleges that their authenticated Portal identity or activity tied to their specific health condition was transmitted to a Third-Party Vendor. Plaintiffs' own best examples prove the gap. Plaintiff Major alleges the Portal displayed a neurological condition and that network traffic

went to tealiumiq.com—but she never pleads that the transmitted data revealed that *she* was the person with that condition. Am. Compl. ¶¶ 51, 53; *see* Mot. at 16–17. And Plaintiff Omer, the only Plaintiff who ties specific browsing to specific figures, is refuted by those very same figures: they show a Google Analytics beacon fired from a ***public*** StayWell page bearing no name, login, medical-record number, or other identifier connecting the search to Omer. Am. Compl. ¶¶ 37–38, 238–41 & nn.101–04, Figs. 19–22. Critically, the "Learn More" click that generated those figures took the unidentified user out of the Portal onto a public page, so it falls with the Website analysis above. *Id.* ¶¶ 187–88, Fig. 2. Because no Plaintiff plausibly alleges disclosure of their own IIHI, Plaintiffs cannot plead a HIPAA criminal predicate, and the crime-tort exception fails.

According to Plaintiffs, Providence is demanding too much from the pleading: they invoke Rule 8 of the Federal Rules of Civil Procedure and state that they are entitled to all reasonable inferences. Opp. at 19. The problem is two-fold. First, it is *Twombly* and *Iqbal*—not Providence—that demand factual content to support a plausible claim. *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Second, Plaintiffs are not seeking reasonable inferences from allegations of fact—they are asking this Court to credit speculation and excuse their pleading deficiencies. Plaintiffs allege that the tracking technology "load[s] immediately" and tracks "every interaction" on the Website and Portal, and, thus, reason that "[a]ccordingly," each interaction relating to their health conditions, care, and payment "was tracked and transmitted to third parties." Opp. at 18. But that conclusion does not follow: a technology that loads and records that an interaction occurred does not establish that any Plaintiff's IIHI was actually disclosed to a third party. Despite the length of the Amended Complaint, and for all its unnecessary wind-up cataloging the capabilities of tracking technology vendors not at issue in this case and what Plaintiffs saw displayed on the Website and Portal, Plaintiffs have failed to allege facts

demonstrating plaintiff-specific disclosure of IIHI to a third party—which is fatal to their ECPA claim. *See, e.g.*, *K.L. v. Legacy Health*, No. 3:23-cv-1886-SI, 2024 WL 4794657, at *5–6 (D. Or. Nov. 14, 2024); *B.N. v. Or. Reprod. Med., LLC*, No. 3:25-cv-00202-IM, 2025 WL 3165965, at *6–7 (D. Or. Nov. 12, 2025); *B.K.*, 721 F. Supp. 3d at 1065.

b. Plaintiffs' Generic IP-Address Allegations Do Not Supply the Missing Disclosure.

Plaintiffs' Opposition does not save their fallback theory that an IP address transmitted "alongside healthcare-related information" is PHI. Opp. at 21. The authorities they cite involved an IP address ***paired*** with a specific item of a ***Plaintiff's*** own health information. *See* *Doe I v. Google LLC*, No. 23-cv-02431-VC, 2025 WL 1616720, at *3–4 (N.D. Cal. June 6, 2025); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 886 (C.D. Cal. 2024). This connection is exactly what is lacking in the Amended Complaint. *See* Am. Compl. ¶¶ 206, 215, 224, 234, 278. No Plaintiff alleges that her own IP address was transmitted in connection with any item of her own health information. Simply put, a bare device address, plus the fact that someone visited a public hospital website, is not IIHI. *See* *Becerra*, 738 F. Supp. 3d at 801–04.[6]

c. Any Disclosure to the Third-Party Vendors Was a Permitted Disclosure to Business Associates.

Even if the Amended Complaint adequately alleged the disclosure of a Plaintiff's IIHI (it does not), that disclosure could not supply the criminal predicate. That is because the provision Plaintiffs invoke only reaches a disclosure made "knowingly and in violation of" HIPAA rules, 42 U.S.C. § 1320d-6(a), and as explained in the Motion, HIPAA's Privacy Rule affirmatively allows

---

[6] Plaintiffs criticize Providence for relying on *Becerra* because it is "out-of-Circuit" and then rely and quote from an out-of-Circuit case to try to distinguish it. *See* Opp. at 21 & n.9 (quoting *Hartley v. Univ. of Chi. Med. Ctr.*, No. 22-cv-5891, 2025 WL 2802317, at *1 (N.D. Ill. Oct. 1, 2025)). In any event, *Hartley* involved the plaintiff-specific allegations that are missing in this case. 2025 WL 2802317, at *3–4. The same is true for *Doe I v. Google*, 2025 WL 1616720, at *2 n.3.

a covered entity (like Providence) to disclose PHI to a business associate that performs functions on its behalf. Mot. at 20 (citing 45 C.F.R. §§ 160.103, 164.502(e)).

Plaintiffs' principal retort is that Providence asks the Court to draw an inference in its favor that the Third-Party Vendors are business associates. Opp. at 22. Not so. Providence only asks that the Court read the Amended Complaint as Plaintiffs wrote it. Plaintiffs ***allege*** that the Third-Party Vendors are HIPAA-compliant (Am. Compl. ¶¶ 199, 226), and describe them performing the very same functions that define a business associate (*id.* ¶¶ 197, 200, 225–27). To be clear, nowhere in the 353-paragraph Amended Complaint do Plaintiffs allege that any vendor at issue lacked a business associate agreement, was not a business associate, or received PHI from Providence outside the scope of that relationship. Plaintiffs bear the burden to plead a knowing disclosure "in violation of" HIPAA. They have failed to do this.[7]

Recognizing this, Plaintiffs misconstrue the Privacy Rule. Plaintiffs claim that, even if the Third-Party Vendors are business associates, Providence would still need consent "for marketing." Opp. at 22. But "marketing" as noted above, is a defined term under HIPAA, and a covered entity's communications about its own health-related products and services are not "marketing." 45 C.F.R. § 164.501. An authorization is required only where the data is being used to promote a third party's products. *Id.*; *id.* § 164.508(a)(3). The Amended Complaint alleges that Providence used the Third-Party Vendors to help it "refine marketing to increase [its own] enrollment and revenue." Am. Compl. ¶ 183. Plaintiffs do not allege that Providence or any of the Third-Party Vendors promoted a third party's products.

---

[7] Plaintiffs' argument that they need not plead around affirmative defenses (Opp. at 22) misses the mark. Plaintiffs have the burden of pleading the crime-tort exception, not Providence.

In sum, Plaintiffs do not plausibly allege the disclosure of any Plaintiff's individually identifiable health information—from the public Website, the authenticated Portal, or the redirected public pages—and their IP-address and business-associate theories do not cure that deficiency. Without a HIPAA violation, Plaintiffs have no predicate for the crime-tort exception, the party exemption bars Count I, and Count I should be dismissed.

### B. Plaintiffs Fail To Allege the Interception of the "Contents" of Any Communication.

Independent of the crime-tort exception, Count I fails for a further reason: the Amended Complaint does not allege the interception of the "contents" of any communication, as ECPA requires.

In their Opposition, Plaintiffs point to "URLs," "keystrokes," and "clicks" to argue that courts have "consistently found similar allegations constitute 'contents.'" Opp. at 24. Actually, the two cases cited by Plaintiffs each involved the user's own typed query transmitted in a form tied to the user's identity. In *Gray*, the Meta Pixel transmitted a "full-string, detailed URL" reflecting "personal search queries" communicating that "the patient was booking an eye exam," linked to the user's Facebook profile. *Gray v. Luxottica of Am., Inc.*, No. 8:24-cv-00160-MRA-DFM, 2024 WL 5689566, at *7 (C.D. Cal. Dec. 16, 2024) (quotation marks omitted). And in *Doe v. Microsoft*, the defendant collected "URLs containing search queries that could divulge a user's medical conditions, allergies, and immunizations." *Doe v. Microsoft Corp.*, No. C23-0718-JCC, 2023 WL 8780879, at *9 (W.D. Wash. Dec. 19, 2023).

Here, unlike in the cases cited by Plaintiffs, not one Plaintiff alleges that any Third-Party Vendor intercepted the substantive ***message*** they sent or received, meaning the actual words typed into a message field, the text of a clinical note, or the specific query entered into a search box. Plaintiff Omer comes closest, alleging a "search for an eye condition," Am. Compl. ¶ 38, but

Omer's own figures show no search query at all. The figures show only a Google Analytics beacon fired from a public StayWell page outside of the authenticated Patient Portal, containing a topic label but no text Omer typed. *Id.* Figs. 19–22.

Plaintiffs' effort to set *Gutierrez* aside because it "did not concern" health information misapprehends the analysis. Opp. at 24 n.10 (citing *Gutierrez v. Converse Inc.*, No. 2:23-cv-06547-RGK-MAR, 2023 WL 8939221, at *3 (C.D. Cal. Oct. 27, 2023)). The line ECPA draws between "contents" and mere "record information" is statutory, and it turns on whether the data is the substance of a communication or a characteristic of it—not on the data's subject matter. 18 U.S.C. § 2510(8). Health-related record information is still record information. Because the Amended Complaint alleges the interception of addressing and routing data, and does not plausibly allege the interception of the substance of any Plaintiff's communication, the ECPA claim fails for this independent reason as well.

## III. PLAINTIFFS' COMMON LAW CLAIMS (COUNTS II-IV) SHOULD BE DISMISSED.

Plaintiffs' three common law claims depend on the same premise as their ECPA claim: that Providence disclosed Plaintiffs' individually identifiable health information to Third-Party Vendors without authorization. As explained above, the Amended Complaint does not plausibly allege that any such disclosure occurred. Each claim independently fails for that threshold reason, and Plaintiffs' Opposition offers nothing to change that result.

### A. PLAINTIFFS' BREACH OF CONFIDENCE CLAIM (COUNT II) FAILS.

Not one of the six Plaintiffs identifies any specific health information of theirs that was transmitted to a Third-Party Vendor in an individually identifiable form. That omission is dispositive. The "gravamen" of a breach of confidence claim is "the ***affirmative disclosure*** of information by a person to whom the confidential information has been entrusted," *Stevens v. First*

*Interstate Bank of Cal.*, 167 Or. App. 280, 286 (2000), and courts routinely require exactly that showing: plaintiff-specific allegations that identified health information was actually disclosed. *See* *K.L.*, 2024 WL 4794657, at *4–5 (claim survived because plaintiff alleged her prescription information and treatment plans were disclosed); *M.R. v. Salem Health Hosps. & Clinics*, No. 6:23-cv-01691-AA, 2024 WL 3970796, at *4 (D. Or. Aug. 28, 2024) (claim survived because plaintiff alleged six categories of PHI were disclosed); *B.N.*, 2025 WL 3165965, at *6–7 (claim dismissed where complaint did not "supply facts that connect any disclosure of PHI" to a third party). Plaintiffs allege what information they viewed on the Portal and that Tracking Technologies were present. They do not plead facts showing that any identified health information from their own sessions was actually transmitted to a Third-Party Vendor in a form that identified them.

Plaintiffs' Opposition does not dispute that this specificity is required. Instead, Plaintiffs assert that their claim is adequately pled because they allege (1) that they "used" the Website and Portal, (2) that Tracking Technologies operated across the Website and Portal, and (3) that every interaction was therefore tracked and transmitted. Opp. at 25–26. But that reasoning assumes its conclusion. Although certain Plaintiffs allege that network traffic was generated or that data was transmitted to a Third-Party Vendor's domain, none alleges facts showing that the transmitted data contained that Plaintiff's identified health information—as opposed to anonymous browsing metadata. *See* Am. Compl. ¶ 53 (alleges data transmitted to tealiumiq.com but does not plead that the transmitted data identified plaintiff or contained her health conditions). Plaintiffs attempt to analogize their allegations with those in the amended complaint in *B.N. v. Or. Reprod. Med., LLC*, but the claim there survived on amendment only after the plaintiff alleged she navigated through an IVF-specific treatment page, clicked "Schedule Your Consultation," entered identifying personal information, and that this specific data was transmitted to LinkedIn. No. 3:25-cv-00202-

IM, 2026 WL 915343, at *4 (D. Or. Apr. 3, 2026). Nothing comparable appears in the Amended Complaint here.

Nor does Plaintiffs' fallback argument that "patient status" alone constitutes protected health information cure the defect. Opp. at 25–26. A breach of confidence claim still requires the "***affirmative disclosure*** of information" that has been "entrusted" to the defendant. *Stevens*, 167 Or. App. at 286. As explained in Section II.A.2.a, *supra*, the Amended Complaint does not allege that any Plaintiff's patient status was actually transmitted to a Third-Party Vendor in a way that identifies that Plaintiff. Without factual allegations connecting a particular Plaintiff's patient status to a particular disclosure, the claim must fail.

Plaintiffs' reliance on IP addresses as individually identifiable health information fares no better. Plaintiffs have not pled that any Plaintiff's IP address was transmitted in connection with any specific item of their health information. More critically, the IP allegations are entirely generic: no Plaintiff alleges their own IP address was disclosed, no Plaintiff alleges that their IP address was transmitted in connection with any specific item of their health information, and no Plaintiff ties any figure in the Amended Complaint to an alleged disclosure of their IP address. This does not satisfy the specificity required to state a breach of confidence claim under Oregon law.

Additionally, Plaintiffs consented to the disclosures that underlie their breach of confidence claim. The tort extends only to "unauthorized" disclosures. *Humphers v. First Interstate Bank of Or.*, 298 Or. 706, 717 (1985). As set forth in Providence's Motion and above, Plaintiffs consented to Providence's data practices when they created their Portal accounts and acknowledged the Terms of Use and Privacy Policy. Mot. at 4–9. The Privacy Policy expressly discloses that third-party service providers "may collect non-identifiable information about your interactions with our

Web site through the use of these technologies." Am. Compl. ¶ 243, Fig. 24. Information shared with consent to disclose it to third parties is not "entrusted" within the meaning of the tort.

Plaintiffs respond that Providence's "Notice of Privacy Practices" states it will not disclose PHI for marketing purposes without written permission. Opp. at 11–12. But as explained in Section II.A.2.c, *supra*, the alleged conduct does not constitute "marketing" as HIPAA defines that term. This is because the Amended Complaint only alleges marketing related to Providence (Am. Compl. ¶ 184), not that Providence or any of the Third-Party Vendors promoted a third party's products. *See* 45 C.F.R. § 164.501. The Notice of Privacy Practices therefore aligns with what Plaintiffs consented to and what Providence allegedly did – it does not save Plaintiffs' claims.

Finally, even if the Amended Complaint could be read to allege a disclosure, Plaintiffs' breach of confidence claim depends on establishing an "unauthorized" disclosure in violation of a duty of confidentiality sounding in HIPAA, but Plaintiffs have not adequately alleged that it violated HIPAA. *See* Mot. at 15–20. For these reasons, Plaintiffs' breach of confidence claim should be dismissed with prejudice.

**B. PLAINTIFFS' INTRUSION UPON SECLUSION CLAIM (COUNT III) FAILS.**

As noted in the Motion, a court in this District has considered the question Plaintiffs' intrusion upon seclusion claim presents. Mot. at 23–24. In this instance, *K.L.*, applying *Humphers*, is dispositive. In that case, the court dismissed an intrusion upon seclusion claim against a healthcare provider that allegedly disclosed patient data through website tracking, holding that where the defendant is "a party to Plaintiff's confidential data and its custodian, not an unknown accessor or pilferer of data," the allegations are not sufficient to allege an intrusion upon seclusion. 2024 WL 4794657, at *7.

Plaintiffs' Opposition confirms that their claim should be dismissed. Indeed, they concede that they "'voluntarily' transmitted their information to" Providence. Opp. at 26. Providence, thus,

did not pry into any private domain to obtain Plaintiffs' information. Plaintiffs allege they provided it to Providence by using Providence's Website and Portal. Am. Compl. ¶¶ 36–56. This is not an intrusion upon seclusion. *Humphers*, 298 Or. at 717. Plaintiffs' only retort is that they "had no idea that their PHI was 'being sent to third parties.'" Opp. at 26. This is a complaint about downstream disclosure. They still ***knew*** and voluntarily provided their information to Providence.

Independently, no intrusion into a private matter is alleged. Plaintiffs do not wrestle with the fact that much of the allegedly tracked activity occurred on publicly accessible pages, such as the "Learn More" page, the "Find Help" tool, and the urgent care locator. Am. Compl. ¶¶ 187–90, 238–39 (Learn More), 191 (Find Help), 193–94 (urgent care locator). This activity on public webpages is not a private affair. *K.L.*, 2024 WL 4794657, at *4. Nor is the conduct alleged "highly offensive." Deploying website analytics is routine commercial practice. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). Plaintiffs respond that the healthcare setting transforms that conduct into something highly offensive, Opp. at 27 & n.11, but offensiveness turns on the disclosure of ***identified*** health information tied to ***specific*** individuals. *Cf. R.C.*, 733 F. Supp. 3d at 891–94 (medication and treatment tied to identified individuals). That is exactly what the Amended Complaint lacks: no identifiable health information linked to any specific Plaintiff. Finally, consent independently defeats the claim. Providence's Privacy Policy disclosed its tracking practices and offered an express opt-out; no Plaintiff alleges unawareness of those disclosures or any attempt to opt out. Am. Compl. ¶ 243, Fig. 24; *see Leggett v. First Interstate Bank of Or., N.A.*, 86 Or. App. 523, 528 (1987). Count III should be dismissed with prejudice.

### C. PLAINTIFFS' UNJUST ENRICHMENT CLAIM (COUNT IV) FAILS.

Plaintiffs acknowledge that their unjust enrichment claim is an equitable claim that is viable only as an alternative to their legal claims. Opp. at 28. The problem for Plaintiffs is that they did

not plead unjust enrichment in the alternative in the Amended Complaint and make no allegation that they have no adequate remedy at law. Indeed, Count IV expressly incorporates every preceding allegation (Am. Compl. ¶ 345) and the Request for Relief demands legal damages as well as (not in the alternative to) equitable damages (*id.*, Request for Relief, C–F). Plaintiffs belatedly try to fix this pleading failure in the Opposition by asking Providence and the Court to read their minds and assume their intent was to plead in the alternative, but there is no indication in the Amended Complaint that Plaintiffs intended to plead their unjust enrichment claim in the alternative. *Cf.* *Cash Depot, Ltd. v. Com. ATM Servs., LLC*, No. 3:15-cv-0065-HRH, 2015 WL 6131056 (D. Alaska Oct. 19, 2015) (finding it was "reasonably clear" that plaintiff "intended to plead its unjust enrichment claim in the alternative"). To maintain an equitable claim, Plaintiffs were required to plead that legal remedies would be insufficient. They did not. *See* *Easterbrook v. LinkedIn Corp.*, No. 6:22-cv-01108-MC, 2023 WL 3022497, at *4 (D. Or. Apr. 20, 2023).

Even if this Court considers the unjust enrichment claim in the alternative, it still fails because Plaintiffs do not allege a benefit unjustly retained. Plaintiffs have not plausibly alleged that their identified medical information was disclosed to Third-Party Vendors as part of the online activity they allege undertaking. Instead, Plaintiffs rely on allegations of what the online tracking tools are theoretically ***capable*** of disclosing and on generic assertions about network traffic that do not connect any specific health information to any specific Plaintiff. That same pleading failure is independently fatal to the unjust enrichment claim. *See* *B.K.*, 721 F. Supp. 3d at 1070 ("Without specific allegations about the underlying information that was allegedly disclosed, it is unclear to the Court how, if at all, Defendant was unjustly enriched. . . . [T]he Complaint does not include facts specific to unjust enrichment of Defendant resulting from Plaintiffs' information.").

Plaintiffs respond that they allege their private medical information was "disclosed to third parties in order for Defendant to obtain financial benefits." Opp. at 29. But, as set forth above, the Amended Complaint does not connect any identified health information to a specific Plaintiff's data and that such data was transmitted to a third party. Generalized allegations about capabilities of Tracking Technologies do not establish that a benefit was actually conferred on Providence from any particular Plaintiff's data.

Finally, even if Plaintiffs had adequately alleged that they conferred a benefit on Providence (which they have not), the retention of that benefit would not be "unjust" because Plaintiffs consented to the data practices at issue. Where, as here, plaintiffs knowingly convey information to a defendant under terms disclosed by the defendant and consented to by plaintiffs, retention is not "unjust"—it is exactly what the parties agreed to. Plaintiffs have not alleged that Providence's data practices exceeded the scope of the consent Plaintiffs gave when they agreed to the Privacy Policy.

Plaintiffs' reliance on *K.L.* and *M.R.* is misplaced. In *K.L.*, the court permitted an unjust enrichment claim to proceed only because the plaintiff pled her claim in the alternative and alleged that her specific health information—including prescription information and treatment plans—was disclosed. 2024 WL 4794657, at *9. In *M.R.*, the court similarly relied on the plaintiff's identification of six specific categories of PHI. 2024 WL 3970796, at *7. Neither condition is satisfied here: Plaintiffs have not properly pled in the alternative that they lack an adequate remedy at law, and they have not identified any specific health information disclosed. Accordingly, Plaintiffs' unjust enrichment claim fails as a matter of law and should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Providence respectfully requests that the Court dismiss Plaintiffs' Amended Complaint in its entirety and with prejudice.

**Dated**: August 7, 2026

/s/ David B. Schwartz
David B. Schwartz (*pro hac vice*)
david.schwartz@arnoldporter.com
Jami Vibbert (*pro hac vice*)
jami.vibbert@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel: 212-836-8000

Jason Ross, OSB No. 231074
jason.ross@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Tel: 202-942-5000

Daniel E. Raymond (*pro hac vice*)
daniel.raymond@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
300 N. LaSalle Dr.
Suite 3500
Chicago, IL 60654
Tel: 312-583-2379

*Attorneys for Defendant Providence Health & Services*