UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

DEBRA MCCLELLAN; ELIZABETH JEAN BRADY; REBECCA MAJOR; ANTHONY OMER; LASHANTE TAYLOR; LISA EBNER, *individually and on behalf of all others similarly situated*,

Plaintiffs,

v.

PROVIDENCE HEALTH & SERVICES,

Defendant.

Case No. 3:26-cv-00540-MTK

**OPINION AND ORDER**

**KASUBHAI,** United States District Judge:

Plaintiffs Debra McClellan, Elizabeth Jean Brady, Rebecca Major, Anthony Omer, LaShante Taylor, and Lisa Ebner ("Plaintiffs"), individually and on behalf of all others similarly situated, bring claims against Providence Health & Services ("Defendant") for violations of the Federal Wiretap Act, 18 U.S.C. § 2510 et seq., breach of confidence, intrusion upon seclusion, and unjust enrichment. Am. Class Action Compl. ("Am. Compl.") ¶ 1, ECF No. 24. Defendant requests judicial notice and moves to dismiss for failure to state a claim. For reasons below, Defendant's Request for Judicial Notice (ECF No. 33) and Motion to Dismiss (ECF No. 32) are denied.

## BACKGROUND

Plaintiffs are currently receiving care from Defendant. Am. Compl. ¶¶ 36-37, 39, 44, 48, 55. Plaintiffs allege that Defendant used tracking pixels on its website to collect "highly sensitive health-related information from its patients" to use for marketing purposes. Am. Compl. ¶¶ 2, 113, 183, 207, 225, 235. Third-party vendors supplied tracking technology to Defendant, which Defendant used to intercept protected health information ("PHI") on its public website, www.providence.org ("Website"), and its password-protected MyChart portal ("Portal"), which Plaintiffs used to manage their care. Am. Compl. ¶¶ 7, 9. The third-party vendors used tracking technologies to gather and record Plaintiffs' communications with Defendant, including Plaintiffs' keystrokes, web addresses of individual pages visited, Internet Protocol ("IP") addresses, mouse movements, mouse clicks, and other electronic communications in real time. Am. Compl. ¶ 10. The third-party vendors used the PHI they gathered to create advertising profiles of Defendant's patients, target advertisements to patients, and sell information about patients to other entities. Am. Compl. ¶ 12. Defendant also used the information to track visits to the Website and embedded code to replay patients' use of the Website. Am. Compl. ¶¶ 13, 14. Plaintiffs were not notified that Defendant was tracking and harvesting their private information, nor were they provided any opportunity to limit Defendant's actions. Am. Compl. ¶ 3.

Plaintiffs allege that Defendant invaded their privacy by collecting their personal health data through the Website and Portal. Am. Compl. ¶¶ 33, 137-38, 182. The Portal is a subpage of Defendant's Website that is password-protected and nonpublic, so Plaintiffs allege that patients expect that health information shared in the Portal will be confidential. Am. Compl. ¶¶ 176-79, 181. Plaintiffs allege that Defendant violated the Health Insurance Portability and Accountability Act ("HIPAA") by embedding tracking technologies inside the Portal and then disclosing PHI to third-party vendors. Am. Compl. ¶ 186.

Plaintiffs allege that they did not consent to Defendant's collection of their personal health data. Am. Compl. ¶ 271. Defendant's Website provides a privacy policy which states, "Providence will not disclose any personal information obtained through the Providence site for any third party marketing purposes." Am. Compl. ¶ 242. Fig. 23. Defendant's privacy policy also states, "[t]hese service providers may collect non-identifiable information about your interactions with our Web site through the use of these [tracking] technologies." Am. Compl. ¶ 243, 260, Fig. 24, Fig. 32. The privacy policy states that patients can opt out of data-sharing practices, but Plaintiffs allege that "[p]atients are offered only a limited option to restrict the disclosure of their medical information to other health care providers, not to prevent the Third-Party Vendors from tracking private medical information for marketing purposes." Am. Compl. ¶ 262. The privacy policy also states that Defendant is "committed to honoring the privacy of individuals who choose to use the Providence Web sites." Am. Compl. ¶ 244, Fig. 25. Plaintiffs allege that these representations led them "to reasonably believe that Defendant does not share or disclose sensitive health-related information or Website Communications to third parties without *express* authorization." Am. Compl. ¶ 245.

Plaintiffs allege they did not know that tracking technologies were being used on the Website and inside the Portal. Am. Compl. ¶ 250. Plaintiffs allege that "Defendant's Website does not display a pop-up, banner, or consent prompt when patients begin" using the Website or Portal. Am. Compl. ¶ 247. Instead, the privacy policy is in the footer of the homepage, written in the same font and size as the surrounding text, without any indication that it is hyperlinked text. Am. Compl. ¶¶ 253-254. The "Notice of Privacy Practices," which is also hyperlinked in the footer of the homepage, contains a list of "Uses and Disclosures" that does not include using

tracking technologies to share information for marketing purposes. Am. Compl. ¶¶ 255, 257, Fig. 29, Fig. 30.

As a result of Defendant's conduct, Plaintiffs allege they "have suffered significant harm[], including but not limited to a loss of privacy and control over their data, greatly increased vulnerability to identity theft and fraud, and the unauthorized use of their confidential information for the benefit of others." Am. Compl. ¶ 33.

Defendant moves to dismiss all claims on the grounds that Plaintiffs consented to the alleged data practices. Defendant also argues that Plaintiffs have failed to sufficiently plead their Federal Wiretap Act claims and their common law claims.

**STANDARDS**

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Id.* To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *L.A. Lakers*, 869 F.3d at 800. The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the

expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Generally, a court may not rely on matters outside the pleadings to resolve a 12(b)(6) motion to dismiss. Fed. R. Civ. P. 12(d). "There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). A court's review of a motion to dismiss under 12(b)(6) is therefore limited to "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Trader Joe's Co. v. Trader Joe's United*, 150 F.4th 1040, 1048 (9th Cir. 2025) (quoting *Abcarian v. Levine*, 972 F.3d 1019, 1022 (9th Cir. 2020)).

## DISCUSSION

The Court turns first to Defendant's request for judicial notice and incorporation by reference because its motion to dismiss is partially conditioned on the documents it asks the Court to consider. The Court then turns to Defendant's remaining arguments.

### I. Defendant's Request for Judicial Notice and Incorporation By Reference

Defendant relies on two exhibits to argue that Plaintiffs consented to Defendant's data sharing practices and asks the court to take notice of them. The first exhibit ("Exhibit 1") is Defendant's Terms of Use & Privacy Policy ("the Policy"). The second exhibit ("Exhibit 2") is a screenshot of Defendant's Portal account creation webpage, where users create an account and login to the Portal after checking a box that states they agree to the Policy. Relying on these two

documents, Defendant asks the Court to take judicial notice the fact that Plaintiffs consented to Defendant's data practices because, since Plaintiffs allege they used the Portal, they would have had to create an account and agree to the Policy in order to do so.

**A. Judicial Notice**

A court may take judicial notice of facts "not subject to reasonable dispute" because they are "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). This allows courts to take judicial notice of certain facts in public records such as court documents, public records of agencies, or transcripts submitted to the court. *Khoja*, 899 F.3d at 999, 1001. However, a court should not take judicial notice of facts that serve to raise a factual dispute at the pleading stage. *See id.* at 999.

Defendant argues that the Court may take judicial notice of Exhibits 1 and 2 because they are found on a "publicly accessible website" and thus can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1204-05 (N.D. Cal. 2014) (holding that "publicl[]y accessible websites" are proper subjects of judicial notice). Defendant points to cases from this Circuit where the court took judicial notice of privacy policies and terms of service available on websites. Def.'s Req. for Judicial Notice 3. *See, e.g.*, *Huber v. Biden*, No. 21-cv-06580, 2022 WL 827248, at *1 n.1 (N.D. Cal. Mar. 18, 2022) (taking judicial notice of Twitter's terms of service); *Garner v. Amazon.com, Inc.*, 603 F. Supp. 3d 985, 992-93 (W.D. Wash. 2022) (taking judicial notice of Amazon's Alexa terms of use and privacy notice); *Datel Holdings Ltd. V. Microsoft Corp.*, 712 F. Supp 2d 974, 983-84 (N.D. Cal. 2010) (taking judicial notice of Xbox's terms of use).

Here, Exhibits 1 and 2 are "subject to reasonable dispute" because they do not purport to reflect Defendant's Website during the relevant time period and are not authenticated to that

effect. *Cf. Huber*, 2022 WL 827248, at *1 n.1 (taking notice of Twitter's terms of service because the plaintiff did not oppose the motion and the policy was not in dispute).

Even if the documents themselves were subject to judicial notice, Defendant asks the Court to use the documents to take judicial notice that Plaintiffs consented to data-sharing practices in the Policy. This fact squarely contradicts the complaint. Plaintiffs specifically allege they did not consent. Am. Compl. ¶ 339. Consent is in dispute; the Court declines to take judicial notice of a material fact that is reasonably in dispute at this stage of proceedings. *See Khoja*, 899 F.3d at 999 (cautioning that District Court should not allow notice that permits defendants "to present their own version of the facts at the pleading stage" and "[undermine] . . . the usual pleading burdens.).

**B. Incorporation by Reference**

Under the doctrine of incorporation by reference, the Court may consider "certain documents as though they are part of the complaint itself. The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja*, 899 F.3d at 1002. In operation, the doctrine allows courts to take notice of documents referred to extensively in a complaint or documents that form the basis of a plaintiff's claim. *Id.* (citing *Unites States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). "[T]he mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). "[I]f the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint. *Khoja*, 899 F.3d at 1002. As with a judicially noticed document, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id.* at 1003.

Defendant argues that Plaintiffs have incorporated by reference Exhibits 1 and 2 because, in the Amended Complaint, Plaintiffs quote sections of the Policy that are identical to Exhibit 1 and cite to an URL that leads to Exhibit 2. At the outset, Plaintiffs allege the Portal is password-protected and allege Defendant monitored their actions taken *inside* the Portal. *See* Am. Compl. ¶¶ 7, 31, 185, 337. However, the Amended Complaint makes one reference to the webpage where a Portal account is created by citing a URL. *See* Am. Compl. ¶ 60 n.6. That URL leads to a login webpage that looks different than the one captured by Exhibit 2. Plaintiffs' sole citation to the URL is, at most, a "mere mention" of Exhibit 2. Incorporation by reference is also inappropriate because Plaintiffs raise a reasonable dispute over the authenticity of Exhibits 1 and 2. *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (holding "that a district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies") *as amended* (July 28, 1998), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676, 681 (9th Cir. 2006).

Incorporation by reference is further inappropriate because Defendant seeks notice to dispute Plaintiffs' specific allegation that they did not consent to the disclosure of their PHI. Although courts "are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), Defendant here asks the Court to draw an impermissible inference from the Policy and login page—that Plaintiffs must have consented because they used the Portal—to contradict Plaintiffs' specific allegation that they did not consent to Defendant's practices.

## II. Defendant's Motion to Dismiss

### A. Consent

Defendant's consent arguments fail because they rely on facts in and inferences from Exhibits 1 and 2 which are not properly subject to judicial notice or incorporation by reference. The Court at this stage accepts as true Plaintiffs' allegation that they did not consent to Defendant's data practices. *See L.A. Lakers*, 869 F.3d at 800. Defendant's citations to *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171 (9th Cir. 2014) and *Oberstein v. Live Nation Entertainment, Inc.*, 60 F.4th 505 (9th Cir. 2023) are unavailing. Those cases involved motions to compel arbitration, a procedural posture in which the Court may make factual findings and need not accept the allegations in a complaint as true. *Ngyuen*, 763 F.3d at 1175; *Oberstein*, 60 F.4th at 510; *see also Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 831 (9th Cir. 2022) (stating courts apply summary judgment standards to motions to compel arbitration).

### B. Federal Wiretap Act

Plaintiffs allege that Defendant violated the Federal Wiretap Act, as amended by the Electronic Communications Privacy Act ("ECPA"), by embedding tracking code on its Website, intercepting Plaintiffs' communications, and disclosing the communications to third-party vendors without Plaintiffs' knowledge or consent. Am. Compl. ¶ 316; *see* 18 U.S.C. § 2510 et seq.

The ECPA provides a civil cause of action to "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of [the Act]." 18 U.S.C. § 2520(a). "To state an ECPA claim, a plaintiff must show 'that the defendant (1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device.'" *Nichols v. Peacehealth Networks on Demand LLC*, No. 25-cv-1831, 2026 WL 607763, at *2

(W.D. Wash. March 4, 2026); 18 U.S.C. § 2511(1). The statute is generally inapplicable to a party to the communication. 18 U.S.C. § 2511(2)(d). Under the crime-tort exception, however, a party to the communication may be liable if "the communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State. *Id.*

The parties dispute (1) whether Plaintiffs have sufficiently alleged that the crime-tort exception applies to their claims and (2) whether Plaintiffs fail to plausibly allege that Defendant intercepted the contents of Plaintiffs' communications. The Court takes up each argument in turn.

1. The Crime-Tort Exception

As a party to the communication, Defendant is not liable under the ECPA unless it intercepted the communication "for the purpose of committing any criminal or tortious act." *Id.*

> A recording has a criminal or tortious purpose under § 2511(1) when "done for the purpose of facilitating some further impropriety, such as blackmail." This criminal or tortious purpose must be separate and independent from the act of the recording. Put another way, the independent purpose must be "essential to the actual execution of an illegal wiretap . . . [and] directly facilitate the criminal conduct." The recording party must also have the independent criminal or tortious purpose at the time the recording was made.

*Planned Parenthood Fed. of Am., Inc. v. Newman*, 51 F.4th 1125, 135-36 (9th Cir. 2022) (internal citations and quotations omitted, alteration in original). Defendant argues that Plaintiffs fail to invoke the crime-tort exception because they do not allege an underlying criminal or tortious act that is independent from the act of recording. The parties dispute turns on whether Plaintiffs' allegations give rise to a violation of HIPAA or another tort such that Defendant may be liable under the crime-tort exception.

a) Separate or Independent Purpose

Defendant argues that Plaintiffs fail to allege a criminal or tortious purpose that is independent from the act of the recording. Plaintiffs here allege that Defendant acted with financial motives and "knowingly disclos[ed] individually identifiable health information" in violation of HIPAA. Am. Compl. ¶¶ 316-18 (internal quotation marks omitted). Plaintiffs allege that Defendant committed torts by "intentionally disclosing [Plaintiffs'] private and personal health information." Am. Compl. ¶ 328.

Defendant argues that Plaintiffs' allegation that Defendant tracked their activity for monetary profit is insufficient to supply a criminal or tortious purpose or to allege a separate act. The Court acknowledges that Plaintiffs allege that Defendant acted with monetary motives, *see* Am. Compl. ¶ 18. Even so, such a motive does not immunize a defendant from liability under the crime-tort exception. *Sussman v. Am. Broadcasting Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) ("[T]he existence of a lawful purpose does not mean that the interception is not also for a tortious or unlawful purpose.").

Plaintiffs have pled that Defendant intentionally disclosed their private health information in violation of HIPAA to make money. "Courts around the country, including courts within this Circuit, are divided on the issue of whether a HIPAA violation may constitute an independent crime under ECPA." *K.L. v. Legacy Health*, No. 23-cv-1886, 2024 WL 4794657, at *6 & n.11 (D. Or. Nov. 14, 2024) (citing cases). Courts in this District have "concluded that alleged disclosure of information in violation of HIPAA can constitute an independent criminal act under the crime-tort exception, beyond the act of intercepting the information alone." *B.N. v. Or. Reproductive Medicine, LLC*, No. 25-cv-202, 2025 WL 3165965, at *3 (D. Or. Nov. 12, 2025) (citing cases). The Court agrees with the reasoning in these cases that explain and ultimately conclude that financial motivation does not preclude an ECPA claim alleging the intentional

disclosure of PHI in violation of HIPAA. *See B.N.*, 2025 WL 3165965, at *4 ("The appropriate inquiry is whether a defendant intercepted communications with the purpose of completing the *act*, [disclosing] HIPAA-protected information, which is 'criminal or tortious.'").

Nor does the fact that Plaintiffs allege Defendant's tracking technologies intercepted their communications in real time and simultaneously transmitted the communications to third-parties defeat their claim. Am. Compl. ¶¶ 316-317. Plaintiffs allege that the disclosure of their information to third-parties, not the interception itself, violated HIPAA. Am. Compl. ¶ 318.

For the same reasons, Plaintiffs' allegations' that Defendant intercepted PHI for the purpose of breaching Plaintiffs' confidence are sufficient to state a separate and independent purpose under the crime-tort exception. *Cf. Caro v. Weintraub*, 618 F.3d 94, 101 (2d. Cir. 2010) (recognizing that a claim that seeks liability only for the interception itself cannot satisfy the requirement of a separate criminal or tortious act).

The Court next considers whether Plaintiffs have adequately alleged a HIPAA violation.

b) HIPAA Violation

Plaintiffs allege Defendant violated HIPAA which penalizes "[a] person who knowingly . . . discloses individually identifiable health information to another person." 42 U.S.C. § 1320d-6(a)(3).

> The term "individually identifiable health information" means any information, including demographic information collected from an individual, that--
>
> (A) is created or received by a health care provider, health plan, employer, or health care clearinghouse; and
>
> (B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual, and--
>
> (i) identifies the individual; or
>
> (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual

42 U.S.C. § 1320d(6). The prohibition on disclosure of such information is not absolute; "[a] covered entity may disclose protected health information to a business associate . . . if the covered entity obtains satisfactory assurance that the business associate will appropriately safeguard the information." 45 C.F.R. § 164.502(e)(1)(i); *see also* 45 C.F.R. § 160.103 (defining covered entity). A business associate provides "data aggregation . . . , management, administrative, accreditation, or financial services to . . . [a] covered entity . . . where the provision of the service involves the disclosure of protected health information from such covered entity or arrangement." 45 C.F.R. § 160.103.

Defendant argues that Plaintiffs fail to allege a HIPAA claim because (1) they fail to allege that Defendant disclosed any individually identifiable health information and (2) they only allege disclosure to business associates.

The Amended Complaint makes the following allegations about individual Plaintiffs. Plaintiff Debra McClellan used the Website and Portal, "to review her private health information related to her treatment and payment for it." Am. Compl. ¶ 36. Plaintiff Anthony Omer receives care from Defendant and used Defendant's Website and Portal "to view his private health information" and "search for any eye condition." Am. Compl. ¶¶ 37-38. Plaintiff Elizabeth Jean Brady used Defendant's Website and Portal "to review her private health information" and to obtain information "regarding her specific medical conditions" including "a digestion condition" through the Portal and its "learn more" link. Am. Compl. ¶¶ 39-42. Plaintiff LaShante Taylor used the Website and Portal to check appointment times, schedule appointments, message healthcare providers, refill prescriptions, review bills, and send documents. Am. Compl. ¶ 45. Plaintiff Rebeca Major used Defendant's Portal to manage "appointments, provider communications, prescription refills, diagnostic imaging, and hospital outpatient visits"

including treatment with specific physicians and hospitals. Am. Compl. ¶¶ 49-50. Plaintiff Lisa Ebner used Defendant's Website and Portal "to review her private health information message care providers, attend virtual office visits, and pay her bills." Am. Compl. ¶ 55. Plaintiff Ebner used the Portal "in connection with serious and ongoing medical treatment, including genetic testing." Am. Compl. ¶ 56.

Health information is defined broadly and includes "any information . . . that . . . relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual." 45 C.F.R. § 160.103. Plaintiffs' allegations here are within that broad definition.

To receive HIPAA protection, the information must also be able to reasonably identify the individual. 42 U.S.C. § 1320d(6)(B). Plaintiffs allege that Defendant covertly and immediately tracked their keystrokes, websites, page visits, IP addresses, mouse movements, clicks, and electronic communications after they used the Website or Portal. Am. Compl. ¶ 10. Plaintiffs further allege that Defendant disclosed the IP address of all who visited Defendant's Website or Portal. Am. Compl. ¶¶ 206, 215, 224, 234, 278.

Viewing the complaint in the light most favorable to Plaintiffs, they plausibly allege that Defendant tracked and disclosed their IP addresses and activity on Defendant's Website and Portal. IP addresses may be "direct identifiers" of individuals under HIPAA. *See* 45 C.F.R. § 164.514(e)(1). The Amended Complaint plausibly connects specific health information like patient status, conditions, specific health providers, and appointment status to a specific individual.

Defendant contends that any connection between an IP address and Defendant's public facing Website is insufficient to establish that Defendant disclosed individually identifiable health information. But Plaintiffs allege Defendant disclosed communications from both its public Website and its private Portal. Plaintiffs have adequately alleged that Defendant disclosed individually identifiable information in violation of HIPAA.

Defendant argues Plaintiffs' HIPAA claim fails because they do not allege disclosure to anyone other than Defendant's business associates. Plaintiffs allege that Defendant disclosed their information to Third-Party vendors that generally provide data services, Am. Compl. ¶¶ 197, 234, marketing services, Am. Compl. ¶¶ 209, 225, 235, and analytics services, Am. Compl. ¶¶ 217, 235. Defendant asks the Court to infer that the Third-Party Vendors are Defendant's business associates under HIPAA because the Amended Complaint's description of those vendors' services is similar to how HIPAA describes the services of business associates. The Court may not draw that inference at this stage. To do so, the Court would need to assume that business associate agreements exist and that Plaintiffs authorized disclosure of PHI for marketing. *See* 45 C.F.R. §§ 164.502(e)(1)(2) (requiring business associates to give assurances of HIPAA compliance in a written agreement), 164.508(a)(3) (requiring authorization for disclosure of PHI for marketing). Such assumptions are procedurally improper and, in the case of authorization, contradict Plaintiffs' Amended Complaint. *See* Am. Compl. ¶ 279.

2. <u>Interception of Contents</u>

Returning to the requirements of an ECPA claim, Defendant argues that Plaintiffs fail to plausibly allege that Defendant intercepted the "contents" of their electronic communications. "[T]he term 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014).

The Ninth Circuit has recognized certain communications generally do not convey the contents of a communication like a webpage address linked to a Facebook ID, phone numbers associated with a phone call, or the collection of email addresses and IP addresses because they do not reveal information about the underlying message. *Id.* at 1107-09. But where record information and an underlying message are disclosed, a plaintiff may bring an ECPA claim. *Id.* at 1108-09 (stating "a user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third-party could amount to disclosure of the contents of a communication" in certain circumstances).

Defendant argues that Plaintiffs fail to allege the interception of any contents because they allege only the disclosure of URLs, IP addresses, cookies, clicks, and mouse movements. Plaintiffs also allege that Defendant intercepted their keystrokes and text entered into a search or information box. Am. Compl. ¶ 10. Plaintiffs' allegations here are sufficient. For example, Plaintiff Omer alleges he searched for an eye condition. Am. Compl. ¶ 39. Plaintiff Brady alleges that she clicked on Defendant's "learn more" feature to learn about specific medical conditions, including a digestive condition. Am. Compl. ¶¶ 40-42. These allegations are sufficient to allege that Defendant intercepted the contents of their messages because they allege Defendant tracked and disclosed search queries and clicks that conveyed specific health communications (e.g., a desire to learn more about specific conditions, schedule certain appointments, or meet with certain doctors.).

The Court finds that Plaintiffs have adequately plead an interception of contents under the ECPA.

**C. Common Law Claims**

Plaintiffs allege that Defendant committed breach of confidence, intrusion upon seclusion, and unjust enrichment. Defendant moves to dismiss each claim.

1. <u>Breach of Confidence</u>

To state a claim for breach of confidence, a plaintiff must allege the defendant committed an "unauthorized and unprivileged disclosure of confidential information obtained in a confidential relationship." *Humphers v. First Interstate Bank of Or.*, 298 Or. 706, 717 (1985). "The gravamen of the tort . . . is the affirmative disclosure of information by a person to whom the confidential information has been entrusted." *Stevens v. First Interstate Bank*, 167 Or. App. 280, 286 (2000). Plaintiffs allege that Defendant violated their duty of confidentiality under HIPAA and their fiduciary duties under Oregon law. *See* Am. Compl. ¶¶ 323-24.

Defendant argues that Plaintiffs failed to state a claim for breach of confidence because each Plaintiff does not allege that their personal health information was disclosed. Further, Defendant argues that even if there was a disclosure, Plaintiffs have failed to adequately plead that the disclosure violated HIPAA.

The Court agrees with Plaintiffs that Defendant has a statutory duty to keep Plaintiffs' PHI confidential. *See A.B. v. Or. Clinic*, 321 Or. App. 60, 70 (2022) (analyzing an Oregon breach of confidence claim where the parties agreed that the duty of confidentiality arose from HIPAA and ORS §§ 192.553-81); *Humphers*, 298 Or. at 720 ("A physician's duty to keep medical and related information about a patient in confidence is beyond question. It is imposed by statute.").

Next, the Court must consider whether Plaintiffs sufficiently alleged that their personal health information was disclosed and whether the alleged disclosure violated HIPAA. Plaintiffs allege that Defendant intercepted their PHI by using tracking technologies embedded in the Website and Portal and transmitted that information to third-parties for marketing purposes. As discussed above, the alleged disclosure of PHI is a violation of HIPAA. *See Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1081-82 (W.D. Wash. 2024) ("[a]s other

Courts within this Circuit have acknowledged, the transmission of information submitted to a ***private patient portal*** . . . reveals patient status, which in and of itself is protected health information."); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 792 (N.D. Cal. 2022) (finding that "patient status is protected health information" under HIPAA); *M.R. v. Salem Health Hosps. & Clinics*, No. 23-cv-01691, 2024 WL 3970796, at *4 (D. Or. Aug. 28, 2024) (finding that the plaintiff plausibly pled violations of HIPAA privacy requirements by alleging that the defendant's websites tracking tools revealed "the user's status as a patient").

The Court denies Defendant's motion to dismiss Plaintiffs' claim for breach of confidence because, taking Plaintiffs' allegations as true, Defendant disclosed Plaintiffs' PHI without authorization.

2. <u>Intrusion Upon Seclusion</u>

To state a claim for intrusion upon seclusion, a plaintiff must allege that (1) Defendant intentionally intruded, (2) upon their "solitude or seclusion or private affairs or concerns, (3) which would be highly offensive to a reasonable person." *Reed v. Toyota Motor Credit Corp.*, 301 Or. App. 825, 831 (2020) (citing *Mauri v. Smith*, 324 Or. 476, 482-83 (1996)).

Plaintiffs allege they had a reasonable expectation of privacy, as well as a specific right to confidentiality under HIPAA, in their interactions on Defendant's Website and within the Portal. Am. Compl. ¶¶ 335-337. Plaintiffs allege that Defendant "deliberately intruded into Plaintiffs' private affairs, in a way that a reasonable person would find highly offensive" because of Defendant's failure to disclose the full use of tracking technologies and because Defendant represented to Plaintiffs' that their information would remain confidential. Am. Compl. ¶ 340.

Defendant argues that Plaintiffs' claim fails because Plaintiffs fail to allege intrusion into a private matter. The Court finds Plaintiffs had a reasonable expectation of privacy regarding the PHI they disclosed in the Portal. *See K.L.*, 2024 WL 4794657, at *7. The Court also agrees that

the alleged disclosure of PHI would be highly offensive to a reasonable person. *Id.* ("Congress and courts have consistently noted that personal medical information is among the most sensitive information that could be collected about a person, and that the existence of many statutes like HIPAA and ORS § 192.553 regulating its disclosure supports this idea." (quoting *M.R.*, 2024 WL 3970796, at *6)). Whether Defendant intruded upon Plaintiffs' seclusion, however, warrants further consideration.

The Oregon Supreme Court has recognized a distinction between breach of confidence and intrusion upon seclusion. *See Humphers*, 298 Or. at 711. Breach of confidence occurs where a defendant fails to keep the confidence of the plaintiff while intrusion upon seclusion occurs where a defendant pries into the plaintiff's confidence. *Id.* at 717. The Court agrees with other courts in this District reasoning that where a defendant is the alleged custodian of a plaintiff's private data and is alleged to unlawfully have disclosed that information, the claim sounds in breach of confidence. *K.L.*, 2024 WL 4794657, at *7. Nevertheless, The Court will not dismiss the intrusion upon seclusion claim at this stage of the proceedings, but may consider evidence and argument on a later dispositive motion.

3. Unjust Enrichment

To state a claim for unjust enrichment, under Oregon law, a plaintiff must allege that (1) they conferred a benefit on the defendant; (2) the defendant is aware that it received the benefit; "and (3) it would be unjust to allow the [defendant] to retain the benefit without requiring [them] to pay for it." *Cron v. Zimmer*, 255 Or. App. 114, 130 (2013).

Defendant first argues that Plaintiffs' unjust enrichment claim fails because it seeks an equitable remedy and other causes of action provide an adequate legal remedy. Indeed, "[e]quitable relief does not lie if there is an adequate remedy at law" that is "practical, efficient, and adequate, as full a remedy as that which can be obtained in equity." *Alsea Veneer, Inc. v.*

*State*, 318 Or. 33, 36 (1993). The Court finds that it is premature to determine that Plaintiffs' legal remedies would meet that standard at this stage. *See K.L.*, 2024 WL 4794657, at *9. The Federal Rules, moreover, allow claims to be pled in the alternative. Fed. R. Civ. P. 8(d). Although the complaint does not explicitly identify Plaintiffs' unjust enrichment claim as an alternative claim, the Court finds it is reasonable to infer that Plaintiffs' unjust enrichment claim is pled in the alternative, and Plaintiffs have confirmed as much in their briefing. Pls.' Opp. Def.'s Mot. Dismiss 28, ECF No. 39.

Defendant's remaining arguments are premised on its belief that the Amended Complaint fails to allege that Defendant disclosed Plaintiffs' medical information and that Defendant's disclosure was criminal or tortious. The Court has already rejected those arguments above.

Plaintiffs allege that Defendant "obtained a significant financial benefit" and "generate[d] profits" by using or selling Plaintiffs' private health information. Am. Compl. ¶¶ 346-47. These allegations are sufficient to support a claim for unjust enrichment. *See K.L.*, 2024 WL 4794657, at *9 (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599-600 (9th Cir. 2020)).

**CONCLUSION**

For the reasons discussed above, Defendant's Request for Judicial Notice (ECF No. 33) and Motion to Dismiss (ECF No. 32) are DENIED.

DATED this 26th day of October 2026.

MUSTAFA T. KASUBHAI (he/him)
United States District Judge